# 21-1058-cr

**United States Court of Appeals
for the Second Circuit**

_____

Docket No. 21-1058-cr

_____

UNITED STATES OF AMERICA,

Appellee,

-against-

AKAYED ULLAH,

Defendant-Appellant.

_____

APPEAL FROM A JUDGMENT
OF THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**APPENDIX FOR DEFENDANT-APPELLANT AKAYED ULLAH
VOLUME I**

FEDERAL DEFENDERS OF NEW YORK, INC.
APPEALS BUREAU
52 Duane Street - 10th Floor
New York, New York 10007
Tel. No.: (212) 417-8742

Attorney for Defendant-Appellant
**AKAYED ULLAH**

**COLLEEN P. CASSIDY,**
Of Counsel

**A000001**

## TABLE OF CONTENTS TO THE APPENDIX
### VOLUME I

District Court Docket Sheet,
S.D.N.Y. 18 Cr. 16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A 0004

Indictment, filed January 10, 2018 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A 0021

Defendant's Motion to Dismiss Counts,
dated July 17, 2018 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A 0030

Memorandum in Support of Motion to Dismiss,
dated July 17, 2018 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A 0031

Government's Memorandum in Opposition to Motion to Dismiss,
dated August 17, 2018 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A 0046

Defendant's Reply in Support of Motion to Dismiss,
dated August 17, 2018 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A 0084

Court Order Denying Motions, dated October 4, 2018 . . . . . . . . . . . . . . . . . A 0104

Defendant's Motion in Limine, dated October 5, 2018 . . . . . . . . . . . . . . . . . A 0110

Defendant's letter to District Court regarding Rule 29 and Jury Charge
Issues, dated November 2, 2018 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A 0126

Government's letter to District Court regarding Jury Charge on Attempt,
dated November 3, 2018 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A 0133

Defense Letter in Support of Rule 29 Motion and in Opposition to
Government Charge Requests, dated November 3, 2018 . . . . . . . . . . . . . A 0135

Government's Letter re Jury Charge and Rule 29 Motion,
dated November 3, 2018 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A 0142

Defendant's Objections to Proposed Jury Instructions, dated November 4, 2018 . . . . . . A 0147

Trial Transcript, dated October 29, 2018 . . . . . . . . . . . . . . . . . . . . . . . . . . A 0151

Trial Transcript, dated October 30, 2018 . . . . . . . . . . . . . . . . . . . . . . . . . . A 0159

Trial Transcript, dated October 31, 2018 . . . . . . . . . . . . . . . . . . . . . . . . . . A 0325

Trial Transcript, dated November 1, 2018 . . . . . . . . . . . . . . . . . . . . . . . . . A 0575

Trial Transcript, dated November 2, 2018 . . . . . . . . . . . . . . . . . . . . . . . . . A 0833

**A000002**

Trial Transcript, dated November 5, 2018 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A 0925

Trial Transcript, dated November 6, 2018 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A 1136

Defendant's Post-trial Motion for Acquittal, dated December 6, 2018 . . . . . . . . . . . . . . . A 1154

Memorandum in Support of Motion, dated December 6, 2018 . . . . . . . . . . . . . . . . . . . . . A 1155

Government's Memorandum in Opposition to Motion for Acquittal,
        dated December 20, 2018 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A 1186

Reply Memorandum in Support of Motion for Acquittal,
        dated January 11, 2019 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A 1214

Court's Order for Supplemental Briefing,
        dated July 25, 2019 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A 1223

Defendant's Supplemental Memorandum in Support of Rule 29 Motion,
        dated September 13, 2019 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A 1224

Government Memorandum in Opposition to Supplemental Motion,
        dated October 22, 2019 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A 1248

Defendant's Reply Memorandum,
        dated November 5, 2019 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A 1275

District Court's Opinion & Order,
        filed January 4, 2021 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A 1295

Sentencing Memorandum with Exhibits A-I, dated March 25, 2021 . . . . . . . . . . . . . . . . A 1313

Pimentel Letter, dated September 18, 2018 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A 1370

Sentencing Transcript, dated April 22, 2021 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A 1375

Judgment in a Criminal Case, dated April 22, 2021 . . . . . . . . . . . . . . . . . . . . . . . . . . . A 1420

Notice of Appeal, dated April 23, 2021 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A 1428

Government Exhibit 918 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A 1429

Government Exhibit 1001-02 (Submitted in attached DVD) . . . . . . . . . . . . . . . . . . . . . . A 1430

**A000003**

CLOSED,APPEAL,ECF,PRIOR

# U.S. District Court
## Southern District of New York (Foley Square)
## CRIMINAL DOCKET FOR CASE #: 1:18–cr–00016–RJS–1

Case title: USA v. Ullah

Magistrate judge case number: 1:17–mj–09200–UA

Date Filed: 01/10/2018

Date Terminated: 04/23/2021

Assigned to: Judge Richard J. Sullivan

**Defendant (1)**

| | |
|---|---|
| **Akayed Ullah**<br>*TERMINATED: 04/23/2021* | represented by **Amy Gallicchio**<br>Federal Defenders of New York<br>52 Duane Street<br>New York, NY 10007<br>(212) 417–8728<br>Fax: (212) 571–0392<br>Email: Amy_Gallicchio@fd.org<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Designation: Public Defender or Community Defender Appointment* |
| | **Colleen P Cassidy**<br>Federal Defenders of New York Inc. (NYC)<br>52 Duane Street<br>10th Floor<br>New York, NY 10007<br>212–417–8700<br>Fax: 212–571–0392<br>Email: colleen_cassidy@fd.org<br>*ATTORNEY TO BE NOTICED*<br>*Designation: Public Defender or Community Defender Appointment* |
| | **Julia L. Gatto**<br>Federal Defenders of New York Inc. (NYC)<br>52 Duane Street<br>10th Floor<br>New York, NY 10007<br>(212) 417–8750<br>Fax: (212) 571–0392<br>Email: julia_gatto@fd.org<br>*ATTORNEY TO BE NOTICED*<br>*Designation: Public Defender or Community Defender Appointment* |

**Pending Counts**

18:2339B.F PROVIDING
MATERIAL SUPPORT OR
RESOURCES TO TERRORISTS
(1)

**Disposition**

IMPRISONMENT: Life imprisonment on
Counts 2, 3, and 5, and 20 years imprisonment
on Counts 1 and 4, to run concurrently, followed
by a term of 30 years imprisonment on Count 6,
to run consecutive to the sentences imposed on
Counts 1–5. SUPERVISED RELEASE: life on

# A000004

| | |
|---|---|
| | Counts 1–5 and five years on Count 6, to run concurrently. |
| 18:2332AA.F USE OF CERTAIN WEAPONS OF MASS DESTRUCTION (2) | IMPRISONMENT: Life imprisonment on Counts 2, 3, and 5, and 20 years imprisonment on Counts 1 and 4, to run concurrently, followed by a term of 30 years imprisonment on Count 6, to run consecutive to the sentences imposed on Counts 1–5. SUPERVISED RELEASE: life on Counts 1–5 and five years on Count 6, to run concurrently. |
| 18:2332F.F BOMBINGS OF PLACES OF PUBLIC USE (3) | IMPRISONMENT: Life imprisonment on Counts 2, 3, and 5, and 20 years imprisonment on Counts 1 and 4, to run concurrently, followed by a term of 30 years imprisonment on Count 6, to run consecutive to the sentences imposed on Counts 1–5. SUPERVISED RELEASE: life on Counts 1–5 and five years on Count 6, to run concurrently. |
| 18:844I.F PENALTIES – IF DEATH RESULTS (DESTRUCTION OF PROPERTY BY FIRE OR EXPLOSION) (4) | IMPRISONMENT: Life imprisonment on Counts 2, 3, and 5, and 20 years imprisonment on Counts 1 and 4, to run concurrently, followed by a term of 30 years imprisonment on Count 6, to run consecutive to the sentences imposed on Counts 1–5. SUPERVISED RELEASE: life on Counts 1–5 and five years on Count 6, to run concurrently. |
| 18:1992.F TRAIN WRECKING (TERRORIST ATTACK AGAINST MASS TRANSPORTATION) (5) | IMPRISONMENT: Life imprisonment on Counts 2, 3, and 5, and 20 years imprisonment on Counts 1 and 4, to run concurrently, followed by a term of 30 years imprisonment on Count 6, to run consecutive to the sentences imposed on Counts 1–5. SUPERVISED RELEASE: life on Counts 1–5 and five years on Count 6, to run concurrently. |
| 18:924C.F VIOLENT CRIME/DRUGS/MACHINE GUN/DESTRUCTIVE DEVICE IN FURTHERANCE OF VIOLENT CRIME (6) | IMPRISONMENT: Life imprisonment on Counts 2, 3, and 5, and 20 years imprisonment on Counts 1 and 4, to run concurrently, followed by a term of 30 years imprisonment on Count 6, to run consecutive to the sentences imposed on Counts 1–5. SUPERVISED RELEASE: life on Counts 1–5 and five years on Count 6, to run concurrently. |

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**                                        **Disposition**

None

**Highest Offense Level (Terminated)**

None

**Complaints**                                               **Disposition**

18:2339B.F PROVIDING
MATERIAL SUPPORT OR
RESOURCES TO TERRORISTS,
18:2332AA.F USE OF CERTAIN
WEAPONS OF MASS

**A000005**

DESTRUCTION , 18:2332F.F
BOMBING OF PLACES OF
PUBLIC USE , 18:844I.F
DESTRUCTION OF PROPERTY
BY MEANS OF FIRE OR
EXPLOSIVE , 18:924C.F USE OF A
DESTRUCTIVE DEVICE DURING
AND IN FURTHERANCE OF A
CRIME OF VIOLENCE

---

**Plaintiff**

**USA**                                      represented by  **George D. Turner**
United States Attorney's Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007
212−637−2562
Fax: 212−637−0097
Email: george.turner@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

**Rebekah Allen Donaleski**
United States Attorney's Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007
212−637−2423
Fax: 212−637−2443
Email: Rebekah.Donaleski@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

**Shawn Geovjian Crowley**
Kaplan, Hecker & Fink LLP
350 Fifth Avenue
Ste 7110
New York, NY 10118
212−763−0883
Email: scrowley@kaplanhecker.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/12/2017 | 1 | COMPLAINT as to Akayed Ullah (1). In Violation of 18 U.S.C. 2339b, 2332a, 2332f, 844 (i), 924 (c) & 2 (Signed by Magistrate Judge Katharine H. Parker) (dif) [1:17−mj−09200−UA] (Entered: 12/12/2017) |
| 12/12/2017 |  | Arrest of Akayed Ullah. (dif) [1:17−mj−09200−UA] (Entered: 12/13/2017) |
| 12/13/2017 | 3 | CJA 23 Financial Affidavit by Akayed Ullah. (Signed by Judge Magistrate Judge Katharine H. Parker) (Federal Defender Amy Gallicchio Appointed) (dif) [1:17−mj−09200−UA] (Entered: 12/13/2017) |
| 12/13/2017 | 4 | ORDER APPOINTING FEDERAL PUBLIC DEFENDER as to Akayed Ullah. Amy Gallicchio for Akayed Ullah appointed.. (Signed by Magistrate Judge Katharine H. Parker on 12/13/2017)(dif) [1:17−mj−09200−UA] (Entered: 12/13/2017) |
| 12/13/2017 | 5 | Minute Entry for proceedings held before Magistrate Judge Katharine H. Parker: Initial Appearance as to Akayed Ullah held on 12/13/2017., Defendant Appears with Federal Defender Amy Gallicchio and AUSA Shawn Crowley for the government. Detention on Consent w/o Prejudice; See Transcript; ( Preliminary Hearing set for |

**A000006**

| | | |
|---|---|---|
| | | 1/13/2018 at 10:00 AM before Judge Unassigned.) (dif) [1:17–mj–09200–UA] (Entered: 12/13/2017) |
| 01/10/2018 | 6 | INDICTMENT FILED as to Akayed Ullah (1) count(s) 1, 2, 3, 4, 5, 6. (jm) (Entered: 01/10/2018) |
| 01/10/2018 | | Case Designated ECF as to Akayed Ullah. (jm) (Entered: 01/10/2018) |
| 01/10/2018 | 7 | ORDER as to Akayed Ullah. The above–captioned matter has been assigned to my docket. IT IS HEREBY ORDERED that the arraignment and initial conference in the above–captioned matter shall take place on Thursday, January 11, 2018 at 3:00 p.m. in Courtroom 318 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York 10007. SO ORDERED. (Signed by Judge Richard J. Sullivan on 1/10/2018)(bw) (Entered: 01/10/2018) |
| 01/10/2018 | 8 | NOTICE OF ATTORNEY APPEARANCE Shawn Geovjian Crowley appearing for USA. (Crowley, Shawn) (Entered: 01/10/2018) |
| 01/10/2018 | 9 | NOTICE OF ATTORNEY APPEARANCE George D. Turner appearing for USA. (Turner, George) (Entered: 01/10/2018) |
| 01/11/2018 | 10 | NOTICE OF ATTORNEY APPEARANCE: Julia L. Gatto appearing for Akayed Ullah. Appearance Type: Public Defender or Community Defender Appointment. (Gatto, Julia) (Entered: 01/11/2018) |
| 01/11/2018 | | Minute Entry for proceedings held before Judge Richard J. Sullivan: Arraignment as to Akayed Ullah (1) Count 1,2,3,4,5,6 held on 1/11/2018. Plea entered by Akayed Ullah Not Guilty. Defendant Akayed Ullah present with attorneys Amy Gallicchio and Julia L. Gatto. AUSAs George D. Turner, Rebekah A. Donaleski, and Shawn G. Crowley present. Court reporter present. Marshals present. The Defendant entered a plea of not guilty to the six counts contained in the indictment. The Court scheduled a status conference for Friday, April 13, 2018 at 11:00 a.m. The Court excluded time from the speedy trial clock until April 13, 2018 pursuant to 18 U.S.C. § 3161(h)(7), determining that the interests of justice in providing Defendant and his counsel time to review evidence and determine whether to make motions outweighs the interest of the public and Defendant in a speedy trial. (Pretrial Conference set for 4/13/2018 at 11:00 AM before Judge Richard J. Sullivan.) (jbo) (Entered: 01/12/2018) |
| 01/12/2018 | 11 | LETTER by USA as to Akayed Ullah addressed to Judge Richard J. Sullivan from AUSAs Turner, Crowley, and Donaleski dated January 12, 2018 re: Proposed Protective Order Document filed by USA. (Turner, George) (Entered: 01/12/2018) |
| 01/16/2018 | 12 | TRANSCRIPT of Proceedings as to Akayed Ullah re: Arraignment held on 1/11/18 before Judge Richard J. Sullivan. Court Reporter/Transcriber: Paula Speer, (212) 805–0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 2/6/2018. Redacted Transcript Deadline set for 2/16/2018. Release of Transcript Restriction set for 4/16/2018. (McGuirk, Kelly) (Entered: 01/16/2018) |
| 01/16/2018 | 13 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Akayed Ullah. Notice is hereby given that an official transcript of a Arraignment proceeding held on 1/11/18 has been filed by the court reporter/transcriber in the above–captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 01/16/2018) |
| 01/16/2018 | 14 | ORDER as to Akayed Ullah: IT IS HEREBY ORDERED THAT, by Friday, January 19, 2018, the government shall submit a letter providing a basis for the representation quoted above. The letter may be filed under preliminary seal along with an application to seal pursuant to the Court's Individual Rule 3. SO ORDERED. (Signed by Judge Richard J. Sullivan on 1/16/2018) (lnl) (Entered: 01/17/2018) |
| 01/17/2018 | 15 | LETTER by USA as to Akayed Ullah addressed to Judge Richard J. Sullivan from AUSAs Turner, Crowley, and Donaleski dated January 17, 2018 re: Proposed Stipulated Protective Order Document filed by USA. (Turner, George) (Entered: 01/17/2018) |

**A000007**

| | | |
|---|---|---|
| 01/18/2018 | 16 | STIPULATED PROTECTIVE ORDER as to Akayed Ullah...regarding procedures to be followed that shall govern the handling of confidential material.... (Signed by Judge Richard J. Sullivan on 1/18/2018)(lnl) (Entered: 01/18/2018) |
| 02/23/2018 | | ***DELETED DOCUMENT. Deleted document number 17 Sealed Document, as to Akayed Ullah. The document was incorrectly filed in this case. (mps) (Entered: 02/26/2018) |
| 04/06/2018 | 17 | ORDER as to Akayed Ullah: Due to an unavoidable conflict on the Court's calendar, IT IS HEREBY ORDERED that the status hearing currently set for Friday, April 13, 2018 is adjourned to Tuesday, April 17, 2018 at 2:00 p.m. in Com1room 318 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York. SO ORDERED. (Pretrial Conference set for 4/17/2018 at 02:00 PM in Courtroom 318, 40 Centre Street, New York, NY 10007 before Judge Richard J. Sullivan) (Signed by Judge Richard J. Sullivan on 4/5/2018) (lnl) (Entered: 04/06/2018) |
| 04/16/2018 | 18 | ORDER as to Akayed Ullah: The parties are reminded that the Tuesday, April 17, 2018 status conference in this action will take place at 2:00 p.m. in Courtroom 318 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York. SO ORDERED. (Pretrial Conference set for 4/17/2018 at 02:00 PM in Courtroom 318, 40 Centre Street, New York, NY 10007 before Judge Richard J. Sullivan) (Signed by Judge Richard J. Sullivan on 4/16/2018) (lnl) (Entered: 04/17/2018) |
| 04/17/2018 | | Minute Entry for proceedings held before Judge Richard J. Sullivan:Pretrial Conference as to Akayed Ullah held on 4/17/2018 as to Akayed Ullah( Motions due by 7/17/2018., Replies due by 8/17/2018., Responses due by 8/7/2018, Pretrial Conference set for 8/30/2018 at 02:30 PM in Courtroom 318, 40 Centre Street, New York, NY 10007 before Judge Richard J. Sullivan.) Defendant Akayed Ullah present with attorneys Amy Gallichio and Julia L. Gatto. AUSAs George D. Turner and Shawn G. Crowley present. Court reporter present. The parties addressed the status of discovery in this case. As set out on the record, the Court ordered Defendant to file motions no later than July 17, 2018 with responses due on August 7, 2018 and replies due on August 17, 2018. The Court further ordered that it will hold a conference in this action on Thursday, August 30, 2018 at 2:30 p.m. in Courtroom 318 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York. The Court ordered that trial in this action will commence on October 29, 2018 in Courtroom 318 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York. The Court further excluded time under the Speedy Trial Act between April 17, 2018 and October 29, 2018. (jw) (Entered: 04/18/2018) |
| 04/19/2018 | 19 | ORDER as to Akayed Ullah. IT IS HEREBY ORDERED that the August 30, 2018 conference will be held in Courtroom 110 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York. SO ORDERED. (Signed by Judge Richard J. Sullivan on 4/19/2018)(bw) (Entered: 04/20/2018) |
| 07/17/2018 | 20 | MOTION to Dismiss . Document filed by Akayed Ullah. (Gallicchio, Amy) (Entered: 07/17/2018) |
| 07/17/2018 | 21 | MEMORANDUM in Support by Akayed Ullah re 20 MOTION to Dismiss .. (Gallicchio, Amy) (Entered: 07/17/2018) |
| 07/24/2018 | 22 | TRANSCRIPT of Proceedings as to Akayed Ullah re: Conference held on 4/17/18 before Judge Richard J. Sullivan. Court Reporter/Transcriber: Steven Greenblum, (212) 805–0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/14/2018. Redacted Transcript Deadline set for 8/24/2018. Release of Transcript Restriction set for 10/22/2018. (McGuirk, Kelly) (Entered: 07/24/2018) |
| 07/24/2018 | 23 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Akayed Ullah. Notice is hereby given that an official transcript of a Conference proceeding held on 4/17/18 has been filed by the court reporter/transcriber in the above–captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 07/24/2018) |

**A000008**

| 08/07/2018 | 24 | MEMORANDUM in Opposition by USA as to Akayed Ullah re 20 MOTION to Dismiss .. (Attachments: # 1 Exhibit A)(Turner, George) (Entered: 08/07/2018) |
|---|---|---|
| 08/17/2018 | 25 | REPLY MEMORANDUM OF LAW in Support as to Akayed Ullah re: 20 MOTION to Dismiss . . (Gallicchio, Amy) (Entered: 08/17/2018) |
| 08/30/2018 |  | Minute Entry for proceedings held before Judge Richard J. Sullivan:Oral Argument as to Akayed Ullah held on 8/30/2018 re: 20 MOTION to Dismiss filed by Akayed Ullah. Defendant Akayed Ullah present with attorney Amy Gallicchio. AUSAs George D. Turner, Rebekah A. Donaleski, and Shawn G. Crowley present. Court reporter present. Marshals present. The Court heard oral argument on Defendants motion to dismiss Count Six of the indictment. The Court reserved decision (jw) (Entered: 08/31/2018) |
| 09/07/2018 | 26 | TRANSCRIPT of Proceedings as to Akayed Ullah re: Arraignment held on 8/30/18 before Judge Richard J. Sullivan. Court Reporter/Transcriber: Pamela Utter, (212) 805–0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 9/28/2018. Redacted Transcript Deadline set for 10/9/2018. Release of Transcript Restriction set for 12/6/2018. (McGuirk, Kelly) (Entered: 09/07/2018) |
| 09/07/2018 | 27 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Akayed Ullah. Notice is hereby given that an official transcript of a Arraignment proceeding held on 8/30/18 has been filed by the court reporter/transcriber in the above–captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 09/07/2018) |
| 09/11/2018 | 28 | LETTER by USA as to Akayed Ullah addressed to Judge Richard J. Sullivan from AUSA Shawn Crowley dated 9/11/2018 re: Decision in United States v. Barrett Document filed by USA. (Crowley, Shawn) (Entered: 09/11/2018) |
| 09/11/2018 | 29 | ORDER as to Akayed Ullah: As stated on the record at the April 17, 2018 conference, IT IS HEREBY ORDERED THAT a jury trial shall commence on Monday, October 29, 2018 at 9:30 a.m. in Cou11room 318 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York. IT IS FURTHER ORDERED THAT the parties shall comply with the following schedule for pre–trial submissions: September 26, 2018, October 3, 2018, October 10, 2018. The government shall file any motions in limine, any Rule 404(b) notices, and its exhibit list and witness list. Defendant shall file a response to the government's motion(s) and his own motions in limine, if any. In addition, to the extent that Defendant intends to put on his own case–in–chief, he shall also file his exhibit list and witness list at this time. The government shall file a response to Defendant's motion(s) in limine, if any. In addition, the parties shall jointly submit their proposed voir dire, requests to charge, and verdict form to the Court via email at SullivanNYSDChambers@nysd.uscourts.gov. In preparing their proposed voir dire and requests to charge, the parties should refer to the Court's templates for these submissions, copies of which will be emailed to the pai1ies. IT IS FURTHER ORDERED THAT the parties shall appear for a final pretrial conference on Tuesday, October 23, 2018 at 3:00 p.m. in Courtroom 318 of the Thurgood Marshall United States Courthouse for argument on all pending motions in limine and to otherwise discuss the trial, which, as ordered above, will commence on the morning of October 29, 2018. Government's motion in limine due by 9/26/2018. Defendant's Motions in limine due by 10/3/2018. Responses due by 10/10/2018 Pretrial Conference set for 10/23/2018 at 03:00 PM in Courtroom 318, 40 Centre Street, New York, NY 10007 before Judge Richard J. Sullivan. Jury Trial set for 10/29/2018 at 09:30 AM in Courtroom 318, 40 Centre Street, New York, NY 10007 before Judge Richard J. Sullivan. (Signed by Judge Richard J. Sullivan on 9/10/2018)(ap) (Entered: 09/11/2018) |
| 09/11/2018 | 30 | ORDER as to Akayed Ullah: IT IS HEREBY ORDERED that, no later than Friday, September 14, 2018, Defendant shall submit a letter brief, not to exceed ten pages, addressing the impact of the Second Circuit's September 10, 2018 decision in United States v. Barrett, 14–2641–cr, on his pending motion to dismiss Count Six of the indictment in this case. (Doc. No. 20.) IT IS FURTHER ORDERED that the government shall submit a responsive letter brief, not to exceed ten pages, no later than Wednesday, September 19, 2018. (Signed by Judge Richard J. Sullivan on |

| | | |
|---|---|---|
| | | 9/10/2018)(ap) (Entered: 09/11/2018) |
| 09/14/2018 | 31 | LETTER MOTION addressed to Judge Richard J. Sullivan from Amy Gallicchio dated September 14, 2018 re: Supplemental letter brief . Document filed by Akayed Ullah. (Gallicchio, Amy) (Entered: 09/14/2018) |
| 09/19/2018 | 32 | LETTER by USA as to Akayed Ullah addressed to Judge Richard J. Sullivan from AUSAs Crowley, Donaleski, and Turner dated September 19, 2018 re: Barrett Document filed by USA. (Turner, George) (Entered: 09/19/2018) |
| 09/24/2018 | 33 | CONSENT LETTER MOTION addressed to Judge Richard J. Sullivan from Amy Gallicchio dated September 24, 2018 re: Adjournment . Document filed by Akayed Ullah. (Gatto, Julia) (Entered: 09/24/2018) |
| 09/25/2018 | 34 | ORDER as to Akayed Ullah (1) granting 33 CONSENT LETTER MOTION addressed to Judge Richard J. Sullivan from Amy Gallicchio dated September 24, 2018 re: Adjournment. SO ORDERED. (Signed by Judge Richard J. Sullivan on 9/25/2018) (lnl) (Entered: 09/26/2018) |
| 09/26/2018 | | Set/Reset Deadlines/Hearings as to Akayed Ullah: Motions due by 9/28/2018. Responses due by 10/5/2018. (lnl) (Entered: 09/26/2018) |
| 09/27/2018 | 35 | MOTION in Limine . Document filed by USA as to Akayed Ullah. (Attachments: # 1 Exhibit B, # 2 Exhibit C)(Donaleski, Rebekah) (Entered: 09/27/2018) |
| 10/04/2018 | 36 | ORDER denying 20 Motion to Dismiss as to Akayed Ullah (1); denying 31 LETTER MOTION as to Akayed Ullah (1). For the reasons set forth above, Counts One, Two, Three, Four, and Five are all capable of serving as the predicate offense for a conviction on Count Six. Thus, Defendant's motion to dismiss Count Six is DENIED and his alternative motion to limit the predicate offenses for Count Six is also DENIED. Because Counts Three and Five qualify under the elements clause as crimes of violence within the scope of Count Six (see Def. Supp. Br. 3–4; Gov't Supp. Br. 2–3), the Court will instruct the jury accordingly. Further, the Court will instruct the jury to determine whether the offenses charged in Counts One through Five qualify as crimes of violence under the residual clause. The parties shall prepare their proposed jury instructions and verdict fonns accordingly. The Clerk of Court is respectfully directed to terminate the motions pending at docket numbers 20 and 31. SO ORDERED. (Signed by Judge Richard J. Sullivan on 10/4/2018) (ft) (Entered: 10/04/2018) |
| 10/05/2018 | 37 | **FILING ERROR – WRONG EVENT TYPE SELECTED FROM MENU –** MOTION in Limine . Document filed by Akayed Ullah. (Attachments: # 1 Exhibit A)(Gallicchio, Amy) Modified on 10/5/2018 (ka). (Entered: 10/05/2018) |
| 10/05/2018 | | **NOTICE TO ATTORNEY TO RE–FILE DOCUMENT – EVENT TYPE ERROR as to Akayed Ullah: Notice to Attorney Gallicchio, Amy to RE–FILE Document 37 MOTION in Limine. Use the event type Memorandum in Opposition of Motion found under the event list Replies, Opposition and Supporting Documents. (ka)** (Entered: 10/05/2018) |
| 10/10/2018 | 38 | LETTER by USA as to Akayed Ullah addressed to Judge Richard J. Sullivan from AUSAs Crowley, Donaleski, and Turner dated October 10, 2018 re: Cover Letter for Joint Pretrial Filings Document filed by USA. (Donaleski, Rebekah) (Entered: 10/10/2018) |
| 10/10/2018 | 39 | Request To Charge by USA as to Akayed Ullah. (Donaleski, Rebekah) (Entered: 10/10/2018) |
| 10/10/2018 | 40 | PROPOSED EXAMINATION OF JURORS by USA as to Akayed Ullah. (Donaleski, Rebekah) (Entered: 10/10/2018) |
| 10/10/2018 | 41 | **FILING ERROR – ELECTRONIC FILING OF NON–ECF DOCUMENT –** LETTER by USA as to Akayed Ullah addressed to Judge Richard J. Sullivan from AUSAs Crowley, Donaleski, and Turner dated October 10, 2018 re: Proposed Verdict Form Document filed by USA. (Donaleski, Rebekah) Modified on 10/11/2018 (ka). (Entered: 10/10/2018) |

**A000010**

| 10/10/2018 | 42 | MEMORANDUM in Opposition by USA as to Akayed Ullah re 37 MOTION in Limine .. (Attachments: # 1 Exhibit A)(Donaleski, Rebekah) (Entered: 10/10/2018) |
|---|---|---|
| 10/11/2018 | | **\*\*\*NOTE TO ATTORNEY TO RE–FILE DOCUMENT – NON–ECF DOCUMENT ERROR. Note to Attorney Donaleski, Rebekah as to Akayed Ullah: to MANUALLY RE–FILE Document Document No. 41 Proposed Verdict Form. This document is not filed via ECF. (ka)** (Entered: 10/11/2018) |
| 10/23/2018 | | Minute Entry for proceedings held before Judge Richard J. Sullivan: Oral Argument as to Akayed Ullah held on 10/23/2018. Defendant Akayed Ullah present with attorneys Amy Gallicchio and Julia Gatto and paralegal Chiraayu Gosrani. AUSAs George D. Turner, Rebekah A. Donaleski, and Shawn G. Crowley present. Court reporter present. Marshals present. The Court and parties discussed the parties' motions in limine and proposed voir dire. The Court ruled as set out on the record. (bw) (Entered: 10/24/2018) |
| 10/26/2018 | 43 | ORDER as to Akayed Ullah: IT IS HEREBY ORDERED that by the close of business on Friday, October 26, 2018, the parties shall file a letter or letters explaining whether they intend to file the video with the Clerk of Court, and if not, why not. SO ORDERD. (Signed by Judge Richard J. Sullivan on 10/26/2018) (See ORDER as set forth) (lnl) (Entered: 10/26/2018) |
| 10/26/2018 | 44 | **FILING ERROR – WRONG EVENT TYPE SELECTED FROM MENU –** PROPOSED EXAMINATION OF JURORS by Akayed Ullah. (Gallicchio, Amy) Modified on 10/26/2018 (ka). (Entered: 10/26/2018) |
| 10/26/2018 | | **NOTICE TO ATTORNEY TO RE–FILE DOCUMENT – EVENT TYPE ERROR as to Akayed Ullah: Notice to Attorney Gallicchio, Amy to RE–FILE Document 44 Proposed Examination of Jurors. Use the event type Letter found under the event list Other Documents. (ka)** (Entered: 10/26/2018) |
| 10/26/2018 | 45 | LETTER by Akayed Ullah addressed to Judge Richard J. Sullivan from Amy Gallicchio dated October 26, 2018 re: Supplemental Voir Dire (Gallicchio, Amy) (Entered: 10/26/2018) |
| 10/26/2018 | 46 | LETTER MOTION addressed to Judge Richard J. Sullivan from Julia Gatto dated October 26, 2018 re: Response to 10/26/2018 Court Order . Document filed by Akayed Ullah. (Gatto, Julia) (Entered: 10/26/2018) |
| 10/26/2018 | 47 | LETTER by USA as to Akayed Ullah addressed to Judge Richard J. Sullivan from AUSAs Crowley, Donaleski, Turner dated 10/26/2018 re: Response to Court's Order re Video Document filed by USA. (Crowley, Shawn) (Entered: 10/26/2018) |
| 10/29/2018 | | Minute Entry for proceedings held before Judge Richard J. Sullivan:Voir Dire held on 10/29/2018 as to Akayed Ullah. Defendant Akayed Ullah present with attys Amy Gallicchio and Julia L. Gatto. AUSAs George D. Turner, Rebekah A. Donaleski and Shawn G. Crowley present. Court reporter present. Marshals present. The parties and court discussed voir dire questions. Jury selection commenced. (jw) (Entered: 11/13/2018) |
| 10/30/2018 | 48 | TRANSCRIPT of Proceedings as to Akayed Ullah re: Conference held on 10/23/18 before Judge Richard J. Sullivan. Court Reporter/Transcriber: Martha Martin, (212) 805–0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 11/20/2018. Redacted Transcript Deadline set for 11/30/2018. Release of Transcript Restriction set for 1/28/2019. (McGuirk, Kelly) (Entered: 10/30/2018) |
| 10/30/2018 | 49 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Akayed Ullah. Notice is hereby given that an official transcript of a Conference proceeding held on 10/23/18 has been filed by the court reporter/transcriber in the above–captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 10/30/2018) |
| 10/30/2018 | | Minute Entry for proceedings held before Judge Richard J. Sullivan:Jury Trial as to Akayed Ullah held on 10/30/2018. Defendant Akayed Ullah present with attys Amy |

**A000011**

| | | |
|---|---|---|
| | | Gallicchio, Julia L. Gatto and Colleen Cassidy. AUSAs George D. Turner, Rebekah A. Donaleski, and Shawn G. Crowley present. Court reporter present. Marshals present. Jury selection completed. The Court empaneled a jury. The parties presented their opening statements. The Court heard testimony from witnesses David Wall, Sean Gallagher, Stephen Fullington and Douglas Vetrano. (jw) (Entered: 11/13/2018) |
| 10/31/2018 | | Minute Entry for proceedings held before Judge Richard J. Sullivan:Jury Trial as to Akayed Ullah held on 10/31/2018. Defendant Akayed Ullah pesent with attys Amy Gallicchio, Julia L. Gatto and Colleen Cassidy. AUSAs George D. Turner, Rebekah A. Donaleski, and Shawn G. Crowley present. Court reporter present. Marshals present. The Court heard testimony from witnesses Douglas Vetrano, Daniel Byrne, Andrea Estok, Reginald Donaldson, and Aaron Zelin (jw) (Entered: 11/13/2018) |
| 11/01/2018 | | Minute Entry for proceedings held before Judge Richard J. Sullivan:Jury Trial as to Akayed Ullah held on 11/1/2018. Defendant Akayed Ullah present with attys Amy Gallicchio, Julia L. Gatto and Colleen Cassidy. AUSAs George D. Turner, Rebekah A. Donaleski and Shawn G. Crowley present. Court reporter present. Marshals present. The Court heard testimony from witnesses Aaron Zelin, Brian Murtagh, Andrew Mitchell, Andrew Bennett, Derrick McClarin, Rorbert Gillette, Christopher Rigopoulous, Gerard Quelch, Barry Greenblatt, and Veronica Chavez. The government rested. Defendant rested. (jw) (Entered: 11/13/2018) |
| 11/02/2018 | 50 | LETTER MOTION addressed to Judge Richard J. Sullivan from Amy Gallicchio dated November 2, 2018 re: Jury Charge . Document filed by Akayed Ullah. (Gallicchio, Amy) (Entered: 11/02/2018) |
| 11/02/2018 | | Minute Entry for proceedings held before Judge Richard J. Sullivan:Jury Trial as to Akayed Ullah held on 11/2/2018. Defendant Akayed Ullah present with attys Amy Gallicchio, Julia L. Gatto and Colleen Cassidy. AUSAs George D. Turner, Rebekah A. Donaleski and Shawn G. Crowley present. Court reporter present. Marshals present. The Court held a charge conference with the parties. (jw) (Entered: 11/13/2018) |
| 11/03/2018 | 51 | LETTER by USA as to Akayed Ullah addressed to Judge Richard J. Sullivan from AUSAs Turner, Crowley, and Donaleski dated November 3, 2018 re: Jury Charge Document filed by USA. (Turner, George) (Entered: 11/03/2018) |
| 11/03/2018 | 52 | **FILING ERROR – WRONG EVENT TYPE SELECTED FROM MENU –** MOTION for Directed Verdict *and Request to Charge*. Document filed by Akayed Ullah. (Gatto, Julia) Modified on 11/5/2018 (ka). (Entered: 11/03/2018) |
| 11/03/2018 | 53 | LETTER by USA as to Akayed Ullah addressed to Judge Richard J. Sullivan from AUSAs Crowley/Turner/Donaleski dated 11/3/2018 re: Defense Nov. 3 Letter regarding Count Five Document filed by USA. (Crowley, Shawn) (Entered: 11/03/2018) |
| 11/04/2018 | 54 | LETTER by USA as to Akayed Ullah addressed to Judge Richard J. Sullivan from AUSAs Turner, Crowley, and Donaleski dated November 4, 2018 re: Jury Charge Document filed by USA. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Turner, George) (Entered: 11/04/2018) |
| 11/04/2018 | 55 | LETTER MOTION addressed to Judge Richard J. Sullivan from Julia Gatto dated November 4, 2018 re: Objection to Jury Charge . Document filed by Akayed Ullah. (Gatto, Julia) (Entered: 11/04/2018) |
| 11/05/2018 | | **NOTICE TO ATTORNEY TO RE–FILE DOCUMENT – EVENT TYPE ERROR as to Akayed Ullah: Notice to Attorney Julia Gatto to RE–FILE Document 52 MOTION for Directed Verdict and Request to Charge. Use the event type Letter found under the event list Other Documents. (ka)** (Entered: 11/05/2018) |
| 11/05/2018 | 56 | ORDER as to Akayed Ullah: IT IS HEREBY ORDERED that the parties shall file a copy of the Exhibit, with the first three seconds excised, with the Clerk of Court no later than Tuesday, November 6, 2018. (Signed by Judge Richard J. Sullivan on 11/5/2018) (See ORDER set forth) (ap) (Entered: 11/06/2018) |
| 11/05/2018 | | Minute Entry for proceedings held before Judge Richard J. Sullivan:Jury Trial as to Akayed Ullah held on 11/5/2018. Defendant Akayed Ullah present with attys Amy Gallicchio, Julia L. Gatto and Colleen Cassidy. AUSAs George D. Turner, Rebekah A. |

**A000012**

| | | Donaleski and Shawn G. Crowley present. Court reporter present. Marshals present. The parties presented summations. The Court charged the jury. The jury commenced deliberations. (jw) (Entered: 11/13/2018) |
|---|---|---|
| 11/06/2018 | 57 | Jury Notes as to Akayed Ullah. (ap) (Entered: 11/07/2018) |
| 11/06/2018 | | Minute Entry for proceedings held before Judge Richard J. Sullivan:Jury Trial as to Akayed Ullah held on 11/6/2018. Defendant Akayed Ullah present with attys Amy Gallicchio, Julia L. Gatto, and Colleen Cassidy. AUSAs George D. Turner, Rebekah A. Donaleski and Shawn G. Crowley present. Court reporter present. Marshals present. The jury completed deliberations. The jury found the defendant guilty on all counts. (jw) (Entered: 11/13/2018) |
| 11/06/2018 | | JURY VERDICT as to Akayed Ullah (1) Guilty on Count 1,2,3,4,5,6. (jw) (Entered: 11/13/2018) |
| 11/15/2018 | 58 | TRANSCRIPT of Proceedings as to Akayed Ullah re: Trial held on 10/29/18 before Judge Richard J. Sullivan. Court Reporter/Transcriber: Khristine Sellin, (212) 805–0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/6/2018. Redacted Transcript Deadline set for 12/17/2018. Release of Transcript Restriction set for 2/13/2019. (McGuirk, Kelly) (Entered: 11/15/2018) |
| 11/15/2018 | 59 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Akayed Ullah. Notice is hereby given that an official transcript of a Trial proceeding held on 10/29/18 has been filed by the court reporter/transcriber in the above–captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 11/15/2018) |
| 11/15/2018 | 60 | TRANSCRIPT of Proceedings as to Akayed Ullah re: Trial held on 10/30/18 before Judge Richard J. Sullivan. Court Reporter/Transcriber: Thomas Murray, (212) 805–0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/6/2018. Redacted Transcript Deadline set for 12/17/2018. Release of Transcript Restriction set for 2/13/2019. (McGuirk, Kelly) (Entered: 11/15/2018) |
| 11/15/2018 | 61 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Akayed Ullah. Notice is hereby given that an official transcript of a Trial proceeding held on 10/30/18 has been filed by the court reporter/transcriber in the above–captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 11/15/2018) |
| 11/15/2018 | 62 | TRANSCRIPT of Proceedings as to Akayed Ullah re: Trial held on 10/31/18 before Judge Richard J. Sullivan. Court Reporter/Transcriber: Thomas Murray, (212) 805–0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/6/2018. Redacted Transcript Deadline set for 12/17/2018. Release of Transcript Restriction set for 2/13/2019. (McGuirk, Kelly) (Entered: 11/15/2018) |
| 11/15/2018 | 63 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Akayed Ullah. Notice is hereby given that an official transcript of a Trial proceeding held on 10/31/18 has been filed by the court reporter/transcriber in the above–captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 11/15/2018) |
| 11/15/2018 | 64 | TRANSCRIPT of Proceedings as to Akayed Ullah re: Trial held on 11/1/18 before Judge Richard J. Sullivan. Court Reporter/Transcriber: Thomas Murray, (212) 805–0300, Transcript may be viewed at the court public terminal or purchased through |

**A000013**

| | | |
|---|---|---|
| | | the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/6/2018. Redacted Transcript Deadline set for 12/17/2018. Release of Transcript Restriction set for 2/13/2019. (McGuirk, Kelly) (Entered: 11/15/2018) |
| 11/15/2018 | 65 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Akayed Ullah. Notice is hereby given that an official transcript of a Trial proceeding held on 11/1/18 has been filed by the court reporter/transcriber in the above–captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 11/15/2018) |
| 11/15/2018 | 66 | TRANSCRIPT of Proceedings as to Akayed Ullah re: Trial held on 11/2/18 before Judge Richard J. Sullivan. Court Reporter/Transcriber: Thomas Murray, (212) 805–0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/6/2018. Redacted Transcript Deadline set for 12/17/2018. Release of Transcript Restriction set for 2/13/2019. (McGuirk, Kelly) (Entered: 11/15/2018) |
| 11/15/2018 | 67 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Akayed Ullah. Notice is hereby given that an official transcript of a Trial proceeding held on 11/2/18 has been filed by the court reporter/transcriber in the above–captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 11/15/2018) |
| 11/15/2018 | 68 | TRANSCRIPT of Proceedings as to Akayed Ullah re: Trial held on 11/5/18 before Judge Richard J. Sullivan. Court Reporter/Transcriber: Khristine Sellin, (212) 805–0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/6/2018. Redacted Transcript Deadline set for 12/17/2018. Release of Transcript Restriction set for 2/13/2019. (McGuirk, Kelly) (Entered: 11/15/2018) |
| 11/15/2018 | 69 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Akayed Ullah. Notice is hereby given that an official transcript of a Trial proceeding held on 11/5/18 has been filed by the court reporter/transcriber in the above–captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 11/15/2018) |
| 11/15/2018 | 70 | TRANSCRIPT of Proceedings as to Akayed Ullah re: Trial held on 11/6/18 before Judge Richard J. Sullivan. Court Reporter/Transcriber: Thomas Murray, (212) 805–0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/6/2018. Redacted Transcript Deadline set for 12/17/2018. Release of Transcript Restriction set for 2/13/2019. (McGuirk, Kelly) (Entered: 11/15/2018) |
| 11/15/2018 | 71 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Akayed Ullah. Notice is hereby given that an official transcript of a Trial proceeding held on 11/6/18 has been filed by the court reporter/transcriber in the above–captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 11/15/2018) |
| 12/06/2018 | 72 | NOTICE OF ATTORNEY APPEARANCE: Colleen P Cassidy appearing for Akayed Ullah. Appearance Type: Public Defender or Community Defender Appointment. (Cassidy, Colleen) (Entered: 12/06/2018) |
| 12/06/2018 | 73 | MOTION FOR ACQUITTAL AND A NEW TRIAL. Document filed by Akayed Ullah. (Cassidy, Colleen) Modified on 12/6/2018 (ka). (Entered: 12/06/2018) |

**A000014**

| 12/06/2018 | 74 | MEMORANDUM in Support by Akayed Ullah re 73 MOTION FOR ACQUITTAL AND A NEW TRIAL (Cassidy, Colleen) Modified on 12/6/2018 (ka). (Entered: 12/06/2018) |
|---|---|---|
| 12/20/2018 | 75 | MEMORANDUM in Opposition by USA as to Akayed Ullah re 73 MOTION.. (Crowley, Shawn) (Entered: 12/20/2018) |
| 01/11/2019 | 76 | REPLY MEMORANDUM OF LAW in Support as to Akayed Ullah re: 73 MOTION. . (Cassidy, Colleen) (Entered: 01/11/2019) |
| 02/05/2019 | 77 | FINAL PRESENTENCE INVESTIGATION REPORT as to Akayed Ullah. The final version of the presentence report, including all revisions and the most recent addendum is now available for review. This version of the report will be used at the time of sentencing. **By order of the Board of Judges, effective (02/10/2014), all presentence reports will be electronically filed with the Court, and will be viewable by ONLY the attorney for the government, the attorney for the defendant, the presiding judge and all Court users. Any further dissemination is prohibited.** (Eugene, Angelique) (Entered: 02/05/2019) |
| 02/28/2019 | 78 | LETTER MOTION addressed to Judge Richard J. Sullivan from Amy Gallicchio dated February 28, 2019 re: Adjournment of sentencing . Document filed by Akayed Ullah. (Gallicchio, Amy) (Entered: 02/28/2019) |
| 02/28/2019 | 79 | MEMO ENDORSEMENT as to Akayed Ullah on re: 78 LETTER MOTION filed by Akayed Ullah addressed to Judge Richard J. Sullivan from Attorney Amy Gallicchio dated February 28, 2019 re: Adjournment of sentencing. ENDORSEMENT: IT IS HEREBY ORDERED THAT Defendant's sentencing is adjourned. Defendant shall appear for sentencing on June 14, 2019 at 3:00 PM. SO ORDERED. (Signed by Judge Richard J. Sullivan on 2/28/2019)(bw) (Entered: 03/01/2019) |
| 05/03/2019 | 80 | ORDER as to Akayed Ullah: IT IS HEREBY ORDERED THAT Defendant's June 14, 2019 sentencing shall take place in Courtroom 15A of the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York, 10007. The parties are reminded that Defendant's sentencing submission shall be filed no later than May 31, 2019, and the government's sentencing submission shall be filed no later than June 7, 2019. (Sentencing set for 6/14/2019 at 03:00 PM in Courtroom 15A, 500 Pearl Street, New York, NY 10007 before Judge Richard J. Sullivan) (Signed by Judge Richard J. Sullivan on 5/3/2019) (ap) (Entered: 05/03/2019) |
| 05/14/2019 | 81 | LETTER MOTION addressed to Judge Richard J. Sullivan from Amy Gallicchio dated May 14, 2019 re: Adjournment of Sentencing . Document filed by Akayed Ullah. (Gallicchio, Amy) (Entered: 05/14/2019) |
| 05/14/2019 | 82 | MEMO ENDORSEMENT as to Akayed Ullah (1) granting 81 LETTER MOTION addressed to Judge Richard J. Sullivan from Amy Gallicchio dated May 14, 2019 re: Adjournment of Sentencing. ENDORSEMENT: Defendant's request is granted. IT IS HEREBY ORDERED THAT Defendant's sentencing shall take place on September 10, 2019 at 3 :00 p.m. in Courtroom 15A of the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York, 10007. Defendant's sentencing submission shall be due no later than August 27, 2019, and the government's sentencing submission shall be due no later than September 3, 2019. (Signed by Judge Richard J. Sullivan on 5/14/2019) (ap) Modified on 5/20/2019 (ap). (Entered: 05/14/2019) |
| 05/14/2019 | | Set/Reset Hearings as to Akayed Ullah: Sentencing set for 9/10/2019 at 03:00 PM in Courtroom 15A, 500 Pearl Street, New York, NY 10007 before Judge Richard J. Sullivan. (ap) (Entered: 05/14/2019) |
| 07/08/2019 | 83 | REVISED FINAL PRESENTENCE INVESTIGATION REPORT as to Akayed Ullah. The revised final version of the presentence report, including all revisions and the most recent addendum is now available for review. This version of the report will be used at the time of sentencing. **By order of the Board of Judges, effective (02/10/2014), all presentence reports will be electronically filed with the Court, and will be viewable by ONLY the attorney for the government, the attorney for the defendant, the presiding judge and all Court users. Any further dissemination is prohibited.** (Eugene, Angelique) (Entered: 07/08/2019) |

**A000015**

| | | |
|---|---|---|
| 07/24/2019 | 84 | ORDER as to Akayed Ullah. IT IS HEREBY ORDERED THAT, no later than August 9, 2019, the parties shall file a joint letter addressing whether the Supreme Court's recent decision in United States v. Davis, 139 S. Ct. 2319 (2019) affects Defendant's pending Rule 29 motion, and if so, proposing a schedule for briefing on that issue. SO ORDERED. (Signed by Judge Richard J. Sullivan on 7/24/2019)(bw) (Entered: 07/24/2019) |
| 07/25/2019 | 85 | LETTER MOTION addressed to Judge Richard J. Sullivan from Amy Gallicchio dated July 25, 2019 re: Joint letter re US v. Davis . Document filed by Akayed Ullah. (Gallicchio, Amy) (Entered: 07/25/2019) |
| 07/25/2019 | 86 | ORDER as to Akayed Ullah. The Court is in receipt of a joint letter from the parties in which they propose a schedule for briefing regarding the application of United States v. Davis to Defendant's Rule 29 motion and request a corresponding adjournment of sentencing. (Doc. No. 85.) IT IS HEREBY ORDERED THAT Defendant shall submit a supplemental memorandum in support of his Rule 29 motion no later than September 13, 2019. IT IS FURTHER ORDERED THAT the government shall respond no later than October 15, 2019, and Defendant may reply no later than October 28, 2019. IT IS FURTHER ORDERED THAT Defendant's sentencing, previously scheduled for September 10, 2019, is adjourned until December 17, 2019 at 3:00 p.m. in Courtroom 15A of the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York, 10007. Defendant's sentencing submission shall be filed no later than December 3, 2019, and the government's sentencing submission shall be filed no later than December 10, 2019. SO ORDERED. (Signed by Judge Richard J. Sullivan on 7/25/19) (jbo) (Entered: 07/26/2019) |
| 09/13/2019 | 87 | MEMORANDUM in Support by Akayed Ullah re 73 MOTION.. (Cassidy, Colleen) (Entered: 09/13/2019) |
| 10/08/2019 | 88 | LETTER by USA as to Akayed Ullah addressed to Judge Richard J. Sullivan from Rebekah Donaleski dated October 8, 2019 re: Response Date Adjournment Document filed by USA. (Donaleski, Rebekah) (Entered: 10/08/2019) |
| 10/08/2019 | 89 | MEMO ENDORSEMENT as to Akayed Ullah re: To seek a one−week adjournment of the October 15, 2019 response deadline ( Defendant Replies due by 11/5/2019., Government Responses due by 10/22/2019)...ENDORSEMENT...In light of the fact that defendant consents to the government's adjournment request, it is hereby ORDERED that the government may file its response to Defendant's September 13, 2019 memorandum of law no later than October 22, 2019. It is FURTHER ORDERED that defendant may file his reply no later than November 5, 2019 (Signed by Judge Richard J. Sullivan on 10/8/2019)(jw) (Entered: 10/09/2019) |
| 10/22/2019 | 90 | MEMORANDUM OF LAW in Opposition by USA as to Akayed Ullah re: 87 Memorandum in Support of Motion filed by Akayed Ullah . (Crowley, Shawn) (Entered: 10/22/2019) |
| 11/05/2019 | 91 | REPLY MEMORANDUM OF LAW in Opposition as to Akayed Ullah re: 73 MOTION. . (Cassidy, Colleen) (Entered: 11/05/2019) |
| 11/07/2019 | 92 | LETTER MOTION addressed to Judge Richard J. Sullivan from Amy Gallicchio dated November 7, 2019 re: Adjournment of Sentencing . Document filed by Akayed Ullah. (Gallicchio, Amy) (Entered: 11/07/2019) |
| 11/07/2019 | 93 | MEMO ENDORSEMENT as to Akayed Ullah (1) granting 92 LETTER MOTION addressed to Judge Richard J. Sullivan from Amy Gallicchio dated November 7, 2019 re: Adjournment of Sentencing. ENDORSEMENT: IT IS HEREBY ORDERED THAT Defendant's sentencing is adjourned until February 19, 2020 at 3:00 p.m in Courtroom 238 of the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York. IT IS FURTHER ORDERED THAT Defendant shall file his sentencing submission no later than February 5, 2020, and the government shall files its sentencing submission no later than February 12, 2020. SO ORDERED. (Signed by Judge Richard J. Sullivan on 11/7/2019) (lnl) (Entered: 11/08/2019) |
| 11/07/2019 | | Set/Reset Hearings as to Akayed Ullah: Sentencing set for 2/19/2020 at 03:00 PM in Courtroom 23B, 500 Pearl Street, New York, NY 10007 before Judge Richard J. Sullivan. (lnl) (Entered: 11/08/2019) |

**A000016**

| 01/03/2020 | 94 | ORDER as to Akayed Ullah. Due to a scheduling conflict, IT IS HEREBY ORDERED THAT Defendant's February 19, 2020 sentencing shall be re–scheduled to February 24, 2020 at 10:30 a.m. in Courtroom 23B of the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York, 10007. SO ORDERED. (Signed by Judge Richard J. Sullivan on 1/3/20)(jbo) (Entered: 01/03/2020) |
|---|---|---|
| 01/03/2020 | | Set/Reset Hearings as to Akayed Ullah: Sentencing set for 2/24/2020 at 10:30 AM before Judge Richard J. Sullivan. (jbo) (Entered: 01/03/2020) |
| 01/24/2020 | 95 | ORDER as to Akayed Ullah: IT IS HEREBY ORDERED THAT Defendant's sentencing is adjourned to April 27, 2020 at 10:30 a.m. in Courtroom 23B of the Daniel Patrick Moynihan U.S. Courthouse, 500 Pearl Street, New York, New York, 10007. IT IS FURTHER ORDERED THAT Defendant's sentencing submission shall be filed no later than April 13, 2020, and the government's sentencing submission shall be filed no later than April 20, 2020. (Sentencing set for 4/27/2020 at 10:30 AM in Courtroom 23B, 500 Pearl Street, New York, NY 10007 before Judge Richard J. Sullivan) (Signed by Judge Richard J. Sullivan on 1/23/2020) (ap) (Entered: 01/24/2020) |
| 04/02/2020 | 96 | LETTER MOTION addressed to Judge Richard J. Sullivan from Amy Gallicchio dated April 2, 2020 re: Adjournment of Sentencing . Document filed by Akayed Ullah. (Gallicchio, Amy) (Entered: 04/02/2020) |
| 04/03/2020 | 97 | MEMO ENDORSEMENT as to Akayed Ullah on re: 96 LETTER MOTION filed by Akayed Ullah addressed to Judge Richard J. Sullivan from Attorney Amy Gallicchio dated April 2, 2020 re: Adjournment of Sentencing. ENDORSEMENT: IT IS HEREBY ORDERED THAT, Defendant's sentencing is adjourned to June 10, 2020 at 10:00 a.m. in Courtroom 23B of the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York 10007. IT IS FURTHER ORDERED THAT Defendant's sentencing submission shall be filed no later than May 27, 2020, and the government's sentencing submission shall be filed no later than June 3, 2020. SO ORDERED: (Signed by Judge Richard J. Sullivan on 4/2/2020)(bw) (Entered: 04/03/2020) |
| 05/19/2020 | 98 | LETTER MOTION addressed to Judge Richard J. Sullivan from Amy Gallicchio dated May 19, 2020 re: Adjournment of Sentencing . Document filed by Akayed Ullah. (Gallicchio, Amy) (Entered: 05/19/2020) |
| 05/20/2020 | 99 | ENDORSED LETTER as to Akayed Ullah addressed to Judge Richard J. Sullivan from Attorney Amy Gallicchio dated May 19, 2020 re: In light of the continuing restrictions on our legal representation of Mr. Ullah and on judicial operations in general related to the COVID–19 pandemic, we write with the consent of the Government, to request a further continuance of the sentencing hearing in the above captioned matter, currently scheduled for June 10, 2020. ENDORSEMENT: IT IS HEREBY ORDERED THAT Defendant's sentencing is adjourned to September 4, 2020 at 10:00 a.m. in Courtroom 11B of the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York 10007. IT IS FURTHER ORDERED THAT Defendant's sentencing submission shall be filed no later than August 21, 2020, and the government's sentencing submission shall be filed no later than August 28, 2020. SO ORDERED: (Signed by Judge Richard J. Sullivan on 5/20/2020)(bw) (Entered: 05/20/2020) |
| 08/07/2020 | 100 | LETTER MOTION addressed to Judge Richard J. Sullivan from Amy Gallicchio dated August 7, 2020 re: Adjournment of Sentencing . Document filed by Akayed Ullah. (Gallicchio, Amy) (Entered: 08/07/2020) |
| 08/10/2020 | 101 | ORDER as to Akayed Ullah. IT IS HEREBY ORDERED THAT Defendant's sentencing is adjourned to December 14, 2020 at 10:00 a.m. in Courtroom 11B of the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York 10007. In light of the flexibility required to accommodate the logistics and planning of in–person proceedings during the pandemic, the Court will reserve (and the parties shall calendar) December 15, 2020 at 10:00 a.m. as an alternate date for sentencing. IT IS FURTHER ORDERED THAT Defendant's sentencing submission shall be filed no later than November 30, 2020, and the government's sentencing submission shall be filed no later than December 7, 2020 ( Sentencing set for 12/14/2020 at 10:00 AM in Courtroom 11B, 500 Pearl Street, New York, NY 10007 before Judge Richard J. Sullivan.) (Signed by Judge Richard J. Sullivan on |

**A000017**

| | | |
|---|---|---|
| | | 8/10/20)(jw) (Entered: 08/10/2020) |
| 11/24/2020 | 102 | LETTER MOTION addressed to Judge Richard J. Sullivan from Amy Gallicchio dated November 24, 2020 re: Adjournment of Sentencing . Document filed by Akayed Ullah. (Gallicchio, Amy) (Entered: 11/24/2020) |
| 11/30/2020 | 103 | MEMO ENDORSEMENT as to Akayed Ullah (1) on 102 LETTER MOTION addressed to Judge Richard J. Sullivan from Amy Gallicchio dated November 24, 2020 re: Adjournment of Sentencing. ENDORSEMENT: IT IS HEREBY ORDERED THAT the sentencing scheduled for December 14, 2020 is adjourned. The Court will confer with the parties and the District Executive regarding appropriate dates for rescheduling the sentencing in light of the COVID–19 pandemic, after which the Court will issue a separate order setting new dates for sentencing and the filing of sentencing submissions. (Signed by Judge Richard J. Sullivan on 11/25/2020) (ap) (Entered: 11/30/2020) |
| 11/30/2020 | | Terminate Deadlines and Hearings as to Akayed Ullah. (ap) (Entered: 11/30/2020) |
| 01/04/2021 | 104 | OPINION AND ORDER 73 Motion re: 73 MOTION as to Akayed Ullah. For the foregoing reasons, Defendants motion for a judgment of acquittal is DENIED as to all counts of conviction. The Clerk of Court is respectfully directed to terminate the motion pending at Doc. No. 73. (Signed by Judge Richard J. Sullivan on 12/31/20) (jw) (Entered: 01/04/2021) |
| 01/11/2021 | 105 | ORDER as to Akayed Ullah: On consent of the parties, IT IS HEREBY ORDERED THAT Defendant's sentencing will take place on Thursday, April 8, 2021 at 10:00 a.m. at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York 10007. In light of the flexibility required to accommodate the planning of in−person proceedings during the pandemic, the Court will issue a separate order indicating the courtroom in which the sentencing will take place. IT IS FURTHER ORDERED THAT Defendant's sentencing submission shall be filed no later than March 25, 2021, and the government's sentencing submission shall be filed no later than April 1, 2021. (Sentencing set for 4/8/2021 at 10:00 AM before Judge Richard J. Sullivan) (Signed by Judge Richard J. Sullivan on 1/11/2021) (ap) (Entered: 01/11/2021) |
| 03/25/2021 | 106 | SENTENCING SUBMISSION by Akayed Ullah. (Attachments: # 1 Exhibit A to I)(Gallicchio, Amy) (Entered: 03/25/2021) |
| 03/31/2021 | 107 | ORDER as to Akayed Ullah: IT IS HEREBY ORDERED THAT Defendant's sentencing will take place on Thursday, April 8, 2021 at 10:00 a.m. in Courtroom 15A at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York 10007. An overflow courtroom will be made available in Courtroom 9C. Members of the public may monitor the proceedings via the Court's free audio line by dialing 1−888−363−4749 and using access code 3290725#. SO ORDERED. (Sentencing set for 4/8/2021 at 10:00 AM in Courtroom 15A, 500 Pearl Street, New York, NY 10007 before Judge Richard J. Sullivan) (Signed by Judge Richard J. Sullivan on 3/31/2021) (lnl) (Entered: 03/31/2021) |
| 04/01/2021 | 108 | SENTENCING SUBMISSION by USA as to Akayed Ullah. (Attachments: # 1 Exhibit A (Victim Impact Statements))(Donaleski, Rebekah) (Entered: 04/01/2021) |
| 04/06/2021 | 109 | LETTER MOTION addressed to Judge Richard J. Sullivan from Amy Gallicchio dated April 6, 2021 re: Adjournment of Sentencing . Document filed by Akayed Ullah. (Gallicchio, Amy) (Entered: 04/06/2021) |
| 04/06/2021 | 110 | MEMO ENDORSEMENT as to Akayed Ullah (1) granting 109 LETTER MOTION addressed to Judge Richard J. Sullivan from Amy Gallicchio dated April 6, 2021 re: Adjournment of Sentencing. ENDORSEMENT: Defense counsel's motion is granted. IT IS HEREBY ORDERED THAT Defendant Ullah's sentencing is adjourned to Thursday, April 22, 2021 at 10:00 a.m. in Courtroom 15A at the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, New York, New York 10007. (Signed by Judge Richard J. Sullivan on 4/6/2021) (ap) (Entered: 04/06/2021) |
| 04/06/2021 | | Set/Reset Hearings as to Akayed Ullah: Sentencing set for 4/22/2021 at 10:00 AM in Courtroom 15A, 500 Pearl Street, New York, NY 10007 before Judge Richard J. Sullivan. (ap) (Entered: 04/06/2021) |

# A000018

| 04/14/2021 | 111 | LETTER by USA as to Akayed Ullah addressed to Judge Richard J. Sullivan from AUSAs Donaleski and Turner dated April 14, 2021 re: Proposed Consent Restitution Order Document filed by USA. (Attachments: # 1 Exhibit Restitution Order)(Donaleski, Rebekah) (Entered: 04/14/2021) |
|---|---|---|
| 04/14/2021 | 112 | ORDER as to Akayed Ullah. As previously ordered (Doc. No. 110), Defendant's sentencing will take place on Thursday, April 22, 2021 at 10:00 a.m. in Courtroom 15A at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York 10007. An overflow courtroom will be made available in Courtroom 9C. Members of the public may monitor the proceedings via the Court's free audio line by dialing 1–888–363-4749 and using access code 3290725#. Per the SDNY Covid–19 Courthouse Entry Program, all parties must complete a mandatorytemperature screening and questionnaire upon entry into the Courthouse. See United States District Court, Southern District of New York, Response to COVID–19 (last visited March 30, 2021), https://nysd.uscourts.gov/covid–19–coronavirus (Signed by Judge Richard J. Sullivan on 4/14/21)(jw) (Entered: 04/14/2021) |
| 04/22/2021 | | Minute Entry for proceedings held before Judge Richard J. Sullivan: Sentencing held on 4/22/2021 for Akayed Ullah (1) Count 1,2,3,4,5,6. Defendant Akayed Ullah, in custody, present with attorney Amy Gallicchio. AUSAs George D. Turner and Rebekah A. Donaleski present. Court reporter present. Marshals present. The Court sentenced Defendant to life imprisonment on Counts 2, 3, and 5, and 20 years' imprisonment on Counts 1 and 4, to run concurrently, followed by a term of 30 years' imprisonment on Count 6, to run consecutive to the sentences imposed on Counts 1–5; the Court also imposed a term of supervised release of life on Counts 1–5 and five years on Count 6, to run concurrently, restitution in the amount of $7,380, and a special assessment of $600, as set forth in the separately docketed Order of Judgment. (lnl) (Entered: 04/22/2021) |
| 04/22/2021 | 113 | CONSENT ORDER OF RESTITUTION as to Akayed Ullah. (Signed by Judge Richard J. Sullivan on 4/22/2021) (ap) (Entered: 04/22/2021) |
| 04/23/2021 | 114 | JUDGMENT IN A CRIMINAL CASE as to Akayed Ullah (1). THE DEFENDANT: was found guilty on counts 1–6 after a plea of not guilty. IMPRISONMENT: Life imprisonment on Counts 2, 3, and 5, and 20 years imprisonment on Counts 1 and 4, to run concurrently, followed by a term of 30 years imprisonment on Count 6, to run consecutive to the sentences imposed on Counts 1–5. The court makes the following recommendations to the Bureau of Prisons: The Court recommends that Defendant be housed in a facility as close to New York City as possible so that his family may more readily visit him. SUPERVISED RELEASE: life on Counts 1–5 and five years on Count 6, to run concurrently. See SPECIAL CONDITIONS OF SUPERVISION. ASSESSMENT: $600.00. RESTITUTION: $7,380.00. The defendant must make restitution (including community restitution) to the following payees in the amount listed below. Name of Payee: (Sealed). The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g). Special instructions regarding the payment of criminal monetary penalties: See separately docketed restitution order. (Signed by Judge Richard J. Sullivan on 4/22/2021) (ap) Modified on 4/26/2021 (ap). (Entered: 04/23/2021) |
| 04/23/2021 | 115 | NOTICE OF APPEAL by Akayed Ullah from 114 Judgment. (tp) (Entered: 04/23/2021) |
| 04/23/2021 | | Appeal Remark as to Akayed Ullah re: 115 Notice of Appeal – Final Judgment. $505.00 Appeal Fee Waived. Federal Defenders of New York, Inc. (tp) (Entered: 04/23/2021) |
| 04/23/2021 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet as to Akayed Ullah to US Court of Appeals re: 115 Notice of Appeal – Final Judgment. (tp) (Entered: 04/23/2021) |
| 04/23/2021 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files as to Akayed Ullah re: 115 Notice of Appeal – Final Judgment were transmitted to the U.S. Court of Appeals. (tp) (Entered: 04/23/2021) |

**A000019**

| 05/12/2021 | 116 | TRANSCRIPT of Proceedings as to Akayed Ullah re: Conference held on 4/22/21 before Judge Richard J. Sullivan. Court Reporter/Transcriber: Pamela Utter, (212) 805–0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/2/2021. Redacted Transcript Deadline set for 6/14/2021. Release of Transcript Restriction set for 8/10/2021. (McGuirk, Kelly) (Entered: 05/12/2021) |
|---|---|---|
| 05/12/2021 | 117 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Akayed Ullah. Notice is hereby given that an official transcript of a Conference proceeding held on 4/22/21 has been filed by the court reporter/transcriber in the above–captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 05/12/2021) |

**A000020**



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA            :

   - v. -                          :          **INDICTMENT**

AKAYED ULLAH,                       :          **18 CRIM 016**

       Defendant.             :

- - - - - - - - - - - - - - - - x

<u>**COUNT ONE**</u>
(Provision of Material Support and Resources to a Designated
Foreign Terrorist Organization)

The Grand Jury charges:

1.  On or about December 11, 2017, in the Southern District of New York and elsewhere, AKAYED ULLAH, the defendant, did knowingly and intentionally provide, and attempt to provide, "material support or resources," as that term is defined in Title 18, United States Code, Section 2339A(b), namely, services and personnel (including himself), to a foreign terrorist organization, namely, the Islamic State of Iraq and al-Sham ("ISIS"), which at all relevant times was designated by the Secretary of State as a foreign terrorist organization pursuant to Section 219 of the Immigration and Nationality Act (the "INA"), and is currently designated as such as of the date of the filing of this Indictment, knowing that ISIS was a designated foreign terrorist organization (as defined in Title 18, United States Code, Section 2339B(g)(6)), that ISIS engages

JUDGE SULLIVAN

**A000021**

and has engaged in terrorist activity (as defined in section 212(a)(3)(B) of the INA), and that ISIS engages and has engaged in terrorism (as defined in section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989), to wit, ULLAH detonated and attempted to detonate an improvised explosive device ("IED") in the vicinity of the Port Authority Bus Terminal in New York, New York, for and in the name of ISIS.

(Title 18, United States Code, Section 2339B.)

## COUNT TWO
(Use of a Weapon of Mass Destruction)

The Grand Jury further charges:

2.    On or about December 11, 2017, in the Southern District of New York and elsewhere, AKAYED ULLAH, the defendant, acting without lawful authority, did use and attempt to use weapons of mass destruction, namely, destructive devices as defined by Title 18, United States Code, Section 921, against persons and property within the United States, and (a) the mail and facilities of interstate and foreign commerce, including mobile telephones, were used in furtherance of the offense, (b) such property was used in an activity that affects interstate and foreign commerce, (c) a perpetrator traveled in interstate and foreign commerce in furtherance of the offense, and (d) the offense and the results of the offense affected interstate and foreign commerce, to wit, ULLAH detonated and attempted to detonate an IED in the vicinity of the Port

2

**A000022**

Authority Bus Terminal in New York, New York.

(Title 18, United States Code, Sections 2332a(a)(2)(A), 2332a(a)(2)(B), 2332a(a)(2)(C), and 2332a(a)(2)(D).)

## COUNT THREE
(Bombing a Place of Public Use and a Public Transportation System)

The Grand Jury further charges:

3.     On or about December 11, 2017, in the Southern District of New York and elsewhere, AKAYED ULLAH, the defendant, did knowingly and unlawfully deliver, place, discharge, and detonate an explosive and other lethal device in, into, and against a place of public use and a public transportation system, and did attempt to do the same, with the intent to cause death and serious bodily injury, and with the intent to cause extensive destruction of such a place and system, and where such destruction resulted in and was likely to result in major economic loss, and the offense took place in the United States and a perpetrator is a national of another state, namely, Bangladesh, and the offense was committed in an attempt to compel the United States to do and abstain from doing any act, to wit, ULLAH detonated and attempted to detonate an IED in the

3

**A000023**

vicinity of the Port Authority Bus Terminal in New York, New York.

(Title 18, United States Code, Sections 2332f(a)(1)(A), 2332f(a)(1)(B), 2332f(b)(1)(B), and 2332f(b)(1)(E).)

## COUNT FOUR
(Destruction of Property by Means of Fire or Explosive)

The Grand Jury further charges:

4. On or about December 11, 2017, in the Southern District of New York and elsewhere, AKAYED ULLAH, the defendant, willfully and knowingly did maliciously damage and destroy, and attempt to damage and destroy, by means of fire and explosives, a building, vehicle, and other real and personal property used in interstate and foreign commerce, and in any activity affecting interstate and foreign commerce, to wit, ULLAH detonated and attempted to detonate an IED in the vicinity of the Port Authority Bus Terminal in New York, New York.

(Title 18, United States Code, Section 844(i).)

## COUNT FIVE
(Terrorist Attack Against Mass Transportation Systems)

The Grand Jury further charges:

5. On or about December 11, 2017, in the Southern District of New York and elsewhere, AKAYED ULLAH, the defendant, knowingly and without lawful authority and permission, through conduct engaged in, on, against, and affecting a mass transportation provider, (a) placed and attempted to place a

4

**A000024**

destructive substance and destructive device in, upon, and near a mass transportation vehicle -- which was carrying passengers and employees at the time of the offense -- with intent to endanger the safety of persons, and with a reckless disregard for the safety of human life; (b) placed and attempted to place a destructive substance and destructive device in, upon, and near a garage, terminal, structure, track, electromagnetic guideway, supply, and facility used in the operation of, and in support of the operation of, a mass transportation vehicle -- which was carrying passengers and employees at the time of the offense -- and with intent to, and knowing and having reason to know, such activity would likely derail, disable, and wreck a mass transportation vehicle used, operated, and employed by a mass transportation provider; and (c) committed, and attempted to commit, an act, including the use of a dangerous weapon, with the intent to cause death and serious bodily injury to persons who were on or in a garage, terminal, structure, track, electromagnetic guideway, supply, and facility used in the operation of, and in support of the operation of, a mass transportation vehicle, which mass transportation vehicle was carrying passengers and employees at the time of the offense, to wit, ULLAH detonated and attempted to detonate an IED in the vicinity of the Port Authority Bus Terminal in New York, New York, which terminal was then in use by subway cars and buses

5

**A000025**

that were carrying passengers and employees at the time of the offense.

(Title 18, United States Code, Sections 1992(a)(2),
1992(a)(4)(B), 1992(a)(7), 1992(a)(10), 1992(b)(1), and
1992(c)(1).)

## COUNT SIX
(Use of a Destructive Device During and
in Furtherance of a Crime of Violence)

The Grand Jury further charges:

6. On or about December 11, 2017, in the Southern District of New York and elsewhere, AKAYED ULLAH, the defendant, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, to wit, the offenses charged in Counts One through Five of this Indictment, willfully and knowingly did use and carry a destructive device, and, in furtherance of such crimes, did possess a destructive device, to wit, ULLAH detonated and attempted to detonate an IED in the vicinity of the Port Authority Bus Terminal in New York, New York.

(Title 18, United States Code, Sections 924(c)(1)(A) and
924(c)(1)(B)(ii).)

### FORFEITURE ALLEGATION

7. As a result of committing the offenses alleged in Counts One through Five of this Indictment, AKAYED ULLAH, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(G) and Title 28, United States Code, Section 2461(c), any and all assets, foreign

6

**A000026**

and domestic, of the defendant; any and all assets, foreign and domestic, affording the defendant a source of influence over any entity or organization engaged in planning or perpetrating said offenses; any and all assets, foreign and domestic, acquired or maintained with the intent and for the purpose of supporting, planning, conducting or concealing said offense; any and all assets, foreign and domestic, derived from, involved in, or used or intended to be used to commit said offenses, including but not limited to a sum of money in United States currency representing the total amount of the defendant's assets.

<u>Substitute Assets Provision</u>

8.   If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third person;

c.   has been placed beyond the jurisdiction of the Court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section  853(p) and Title 28, United States

7

**A000027**

Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

_____
FOREPERSON

GEOFFREY S. BERMAN
United States Attorney

8

A000028

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

AKAYED ULLAH,

Defendant.

INDICTMENT

18 Cr.

(18 U.S.C. §§ 844(i), 924(c), 1992,
2332a, 2332f, and 2339B.)

GEOFFREY S. BERMAN
United States Attorney.

A TRUE BILL

Foreperson.

A000029

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
UNITED STATES OF AMERICA,       :

      -against-              :        NOTICE OF MOTION
                                       18 Cr. 16 (RJS)

AKAYED ULLAH,              :

          Defendant.      :
----------------------------------------------------------x

      **PLEASE TAKE NOTICE**, that upon the accompanying Memorandum of Law, undersigned will move this Court, before the Honorable Richard J. Sullivan, United States District Judge for the Southern District of New York, at a date and time to be set by the Court, for an Order, dismissing Count Six of the indictment and granting such relief as this Court deems just and proper.

Dated:      New York, New York
            July 17, 2018

                                 Respectfully submitted,
                                 DAVID E. PATTON, Esq.
                                 Federal Defenders of New York

                By:     /s/ Amy Gallicchio
                             Amy Gallicchio
                             Julia Gatto
                             Assistant Federal Defenders
                             Attorneys for Defendant
                             **Akayed Ullah**
                             52 Duane Street, 10th Floor
                             New York, New York 10007
                             Tel.: (212) 417-8700

To:    Geoffrey S. Berman, Esq.
        United States Attorney
        Southern District of New York
        One St. Andrew's Plaza
        New York, New York 10007

Attn.:  Shawn Crowley, Esq.
        George Turner, Esq.
        Rebekah Donaleski, Esq.
        Assistant United States Attorneys

**A000030**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

UNITED STATES OF AMERICA,        :

         -against-              :         18 Cr. 16 (RJS)

AKAYED ULLAH,             :

         Defendant.         :

-------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF AKAYED ULLAH'S MOTION TO DISMISS THE 18 U.S.C. § 924(c) CHARGE

David E. Patton
Federal Defenders of New York, Inc.
Attorney for Defendant
  Akayed Ullah
52 Duane Street, 10th Floor
New York, New York 10007
Tel.: (212) 417-8700

Amy Gallicchio
Julia Gatto
*Of Counsel*

TO:   Geoffrey S. Berman
       United States Attorney
       Southern District of New York
       One St. Andrew's Plaza
       New York, New York 10007

          Attn.: Shawn Crowley
                George Turner
                Rebekah Donaleski
                Assistant United States Attorneys
                Southern District of New York

**A000031**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ii

PRELIMINARY STATEMENT ........................................................................ 1

FACTUAL BACKGROUND ............................................................................ 2

ARGUMENT .................................................................................................... 2

I.      Count Six, alleging a violation of
18 U.S.C. § 924(c), should be dismissed for failure
to state an offense .................................................................................... 2

        A.      Count One is not a crime of violence ........................................ 3

        B.      Section 924(c) requires proof of a separate crime of violence,
which is not alleged here.............................................................. 5

        C.      Count Six is based on a misreading of § 924(c) ...................................... 7

        D.      Count Six also conflicts with Congress's
intent in enacting § 924(c) ....................................................... 8

        E.      The rule of lenity further compels dismissal of Count Six ................... 10

CONCLUSION................................................................................................ 11

i

**A000032**

# TABLE OF AUTHORITIES

## Case(s)

*Adamo Wrecking Co. v. United States,*
  434 U.S. 275 (1978) ..................................................................... 10

*Castillo v. United States,*
  530 U.S. 120 (2000) ...................................................................... 5

*Corley v. United States,*
  556 U.S. 303 (2009) ................................................................... 8, 9

*Dean v. United States,*
  137 S. Ct. 1170 (2017) .................................................................. 5

*Descamps v. United States,*
  *133 S. Ct. 2276 (2013)*.................................................................. 4

*Ladner v. United States,*
  358 U.S. 169 (1958) .................................................................... 10

*Leocal v. Ashcroft,*
  543 U.S. 1 (2004) .......................................................................... 7

*Life Techs. Corp. v. Promega Corp.,*
  137 S. Ct. 734 (2017) .................................................................... 7

*Muscarello v. United States,*
  524 U.S. 125 (1998) ...................................................................... 8

*Rosemond v. United States,*
  134 S. Ct. 1240 (2014) .................................................................. 5

*Sessions v. Dimaya,*
  584 U.S. — , 138 S.Ct. 1204 (2018)................................................ 3

*Simpson v. United States,*
  435 U.S. 6 (1978) .......................................................................... 8

*United States v. Bushey,*
  617 F. Supp. 292 (D. Vt. 1985) .................................................... 5

*United States v. Canales,*
  *91 F.3d 363 (2d Cir. 1996)*.......................................................... *10*

ii

**A000033**

*United States v. Khalil,*
  *214 F.3d 111 (2d Cir. 2000)*.................................................................... 5, 7

*United States v. Margiotta,*
  *688 F.2d 108 (2d Cir. 1982)* ............................................................... 10, 11

*United States v. Powell,*
  *894 F.2d 895 (7th Cir. 1990)* ................................................................. 8

*United States v. Rodriguez-Moreno,*
  *526 U.S. 275 (1999)* .............................................................................. 5

*United States v. Salas,*
  *889 F.3d 681 (10th Cir. 2018)*.............................................................. 3

*United States v. Shah,*
  *474 F. Supp.2d 492  (S.D.N.Y. 2007)* ................................................... 4

*Wyeth v. Levine,*
  *555 U.S. 555 (2009)* ............................................................................. 9

**<u>Constitutional Provisions, Statutes & Rules</u>**

*18 U.S.C. § 924*.................................................................................. *passim*

*18 U.S.C. § 16(b)* ............................................................................... 3,7

*18 U.S.C. § 844*................................................................................ 1,6,8,9

*18 U.S.C. § 1992*............................................................................... 1,6,8,9

*18 U.S.C. § 2332(a)* ......................................................................... 1,6,8,9

*18 U.S.C. § 2332(f)* .......................................................................... *1,6,8,9*

*18 U.S.C. § 2339A* ............................................................................ *1,4*

*18 U.S.C. §2339B*............................................................................ 1,3,4

*Fed.R.Crim. P. 12(b)(3)(B)(v)*............................................................ 1,2

iii

**A000034**

## PRELIMINARY STATEMENT

On December 11, 2017, Akayed Ullah was arrested and subsequently charged in a six count indictment alleging violations of 18 U.S.C. §§ 2339B, 2332(a), 2332(f), 844(i), 1992(a), and 924(c),

Count Six should be dismissed because it fails to state an offense under 18 U.S.C. § 924(c), which requires proof of the use of a bomb "during and in relation to," or "in furtherance of," a separate crime of violence. *See* Fed. R. Crim. P. 12(b)(3)(B)(v). No such separate crime is alleged here. *See* Dkt. 6.

A000035

**FACTUAL BACKGROUND**

On December 11, 2017, an improvised explosive device detonated inside a subway terminal at the New York Port Authority. *Id.* Law enforcement personnel observed Mr. Ullah lying on the ground near the explosion and discovered on his person and in the surrounding area, what appeared to be the components of a pipe bomb. *Id.* Mr. Ullah was arrested and taken to Bellevue Hospital for medical treatment.

**ARGUMENT**

**I.    Count Six, alleging a violation of 18 U.S.C. § 924(c), should be dismissed for failure to state an offense.**

Count Six charges a violation of 18 U.S.C. § 924(c): using, carrying and possessing a destructive device in relation to the crimes of violence alleged in Counts One through Five, each of which concern Mr. Ullah's alleged detonation of a device in Port Authority. Count Six of the indictment, charging a violation of 18 U.S.C. § 924(c), should be dismissed because it "fail[s] to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). First, Count One, charging provision of material support and resources to a designated foreign terrorist organization is not a crime of violence. Second, in essence, Count Six alleges Mr. Ullah's use of a bomb while using a bomb. This does not state an offense under 18 U.S.C. § 924(c), which requires the use of a bomb "during and in relation to" or "in furtherance of" a separate crime of violence. No separate crime of violence is alleged here.

2

**A000036**

## A.      Count One is not a crime of violence.

Count One charges Mr. Ullah with knowingly and intentionally providing and attempting to provide "material support and resources . . . namely, services and personnel (including himself), to a foreign terrorist organization," in violation of 18 U.S.C. § 2339B.  Dkt. 6.

A crime of violence in 18 U.S.C. § 924(c) is defined in as a felony that:

(A)      has an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

§ 924(c)(3)(B).  The latter provision is known as the residual clause.

Recently, in *Sessions v. Dimaya*, 584 U.S. —, 138 S.Ct. 1204, (2018), the Supreme Court held that the definition of "crime of violence" in 18 U.S.C. § 16(b) was unconstitutionally vague in light of its reasoning in *Johnson v. United States*, 135 S.Ct. 2551 (2015).  The language of the § 16(b)  clause is identical to that of the residual clause in §924(c)(3)(B).  Therefore, there should be no disagreement that §924(c)(3)(B) is, likewise, unconstitutionally vague and no longer valid.  *See United States v. Salas*, 889 F.3d 681 (10th Cir. 2018) (holding that §924(c)(3)(B) is unconstitutionally vague in light of the binding authority of *Dimaya*).  As a result, for Count One to qualify as a crime of violence, it must fit in the remaining provision of §924(c)(3)(A), known as the elements clause.

3

**A000037**

To determine if an offense is a "crime of violence," under the elements clause, courts use the categorical approach and "may 'look only to the statutory definitions' – *i.e.*, the elements" of the offense. *Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013) (emphasis in original; citation omitted). Count One does not have as an element "the use, attempted use, or threatened use of physical force against the person or property of another." §924(c)(3)(A). The offense can be committed without force of any kind. "Material support or resources" is defined as:

> any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials.

18 U.S.C. §2339A(b)(1). *See United States v. Shah,* 474 F.Supp.2d 492 (S.D.N.Y. 2007) (ruling that §2339B was not unconstitutionally vague or overbroad and upholding the application of "personnel" to a doctor alleged to have provided medical support to wounded Al Qaeda jihadists knowing that Al Qaeda engaged in terrorism or terrorist activity).

Since Count One is not a "crime of violence," it cannot form the basis upon which to charge a violation of 18 U.S.C. § 924(c).

4

**A000038**

**B.**     **Section 924(c) requires proof of a separate crime of violence, which is not alleged here.**

As relevant here, § 924(c)(1) applies to "any person who, during and in relation to any crime of violence . . . , uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." A "firearm" includes a bomb. *See* §§ 924(c)(1)(B)(ii), 921(a)(4)(A)(i). If a bomb is used, the defendant is subject to a 30-year mandatory minimum that must run consecutive to the sentence for the underlying crime of violence. *See* §§ 924(c)(1)(B)(ii), (D)(ii).

The Supreme Court has repeatedly held the use of a firearm under § 924(c) is an act separate from the crime of violence. "[T]he statute contains two distinct conduct elements— as is relevant to this case, the 'using and carrying' of a [bomb] and the commission of a [crime of violence]." *United States v. Rodriguez-Moreno*, 526 U.S. 275, 280 (1999). These elements are discrete: "§ 924(c) establishes a separate, freestanding offense that is distinct from the underlying [crime]." *Rosemond v. United States*, 134 S. Ct. 1240, 1247 (2014) (internal punctuation and citation omitted). Section 924(c) "describes a firearm offense that is distinct from the underlying crime of violence. . . . Congress obviously did not intend the crime of violence to be merged into the firearm offense." *United States v. Khalil*, 214 F.3d 111, 120-21 (2d Cir. 2000). *See also Dean v. United States*, 137 S. Ct. 1170, 1174 (2017) ("Congress has made it a separate offense to use or possess a firearm in connection with a violent or drug trafficking crime."); *accord Castillo v. United States*, 530 U.S. 120, 125 (2000); *United States v. Bushey*, 617 F.Supp. 292, 294 n.3 (D. Vt. 1985) ("[T]he plain language of § 924(c) . . . limits its application to instances where a person

5

**A000039**

uses or carries a firearm '*during and in relation to* any crime of violence,' implying that the 'crime of violence' must be considered as an act separate and distinct from the use or carrying of the firearm.") (emphasis in original; citation omitted).

Violating § 924(c) is thus an "offense distinct from any that might apply just to using a gun— say, for discharging a firearm in a public park." *Rosemond*, 134 S. Ct. at 1248. Rather, it is a "combination crime. It punishes the temporal and relational conjunction of two separate acts," namely using a firearm to further a crime distinct from "just [] using" a firearm. *Id.*

Here, however, using a bomb and committing the charged crimes of violence are not "two separate acts." *Id.* They are the same thing. Sections 2332a, 2332f, 844(i), and 1992(a) have various mens rea and jurisdictional elements, but the "conduct element," *Rodriguez-Moreno*, 526 U.S. at 280, of each charged violation is, simply, using a bomb. *See* Count Two (alleging Mr. Ullah "did knowingly use a weapon of mass destruction"); Count Three (alleging he "did knowingly and unlawfully deliver, place, discharge and detonate an explosive and other lethal device"); Count Four (alleging he "did knowingly and maliciously damage and destroy, and attempt to damage and destroy, by means of fire and an explosive"); Count Five (alleging he "knowingly and unlawfully. . . placed and attempted to place a destructive substance and destructive device"). As such, there is no conduct "distinct," *Rodriguez-Moreno*, 526 U.S. at 280, from using a bomb and thus no distinct offense to support a charge under § 924(c).

6

**A000040**

### C.     Count Six is based on a misreading of § 924(c).

Count Six also cannot withstand scrutiny because it reads out of § 924(c) the words "during and in relation to any crime of violence . . . or . . . in furtherance of any such crime."  Because a crime "separate" and "distinct" from "just [] using" a bomb is not alleged, *Rosemond*, 134 S. Ct. at 1248, the charges here rewrite the statute to apply to "any person who . . . uses or carries a firearm, or who . . . possesses a firearm." Besides that not being what § 924(c) says, courts "should favor an interpretation that gives meaning to each statutory provision." *Life Techs. Corp. v. Promega Corp.*, 137 S. Ct. 734, 740 (2017).  The "during and in relation to . . . or. . . in furtherance of" provision means nothing if using a bomb may, by itself, satisfy the requirement of there being a separate and distinct crime of violence.

"Congress obviously did not intend the crime of violence to be merged into the firearm offense," *Khalil*, 214 F.3d at 121, yet the charges here do just that.  *See also Leocal v. Ashcroft*, 543 U.S. 1, 12 (2004) ("Congress' separate listing of the DUI-causing-injury offense from the definition of 'crime of violence' in § 16 is revealing. Interpreting § 16 to include DUI offenses, as the Government urges, would leave [8 U.S.C.] § 101(h)(3) practically devoid of significance.  As we must give effect to every word of a statute wherever possible, the distinct provision for these offenses under § 101(h) bolsters our conclusion that § 16 does not itself encompass DUI offenses.") (citation omitted).

7

**A000041**

**D.** **Count Six also conflicts with Congress's intent in enacting §924(c).**

To sustain the using-a-bomb-while-using-a-bomb charges here would also violate the rule that "a more specific statute will be given precedence over a more general one." *Corley v. United States*, 556 U.S. 303, 316 (2009). Section 924(c) was written generally "'to persuade the man who is tempted to commit a Federal felony to leave his gun at home.'" *Muscarello v. United States*, 524 U.S. 125, 132 (1998) (citation omitted). *See also Simpson*, 435 U.S. at 10 n.4 ("[T]he overriding purpose of § 924(c) was to combat the increasing use of *guns* to commit federal felonies.") (emphasis maintained); *United States v. Powell*, 894 F.2d 895, 900 (7th Cir. 1990) (Section 924(c) aims "'to persuade the man who was tempted to commit a federal felony to leave his gun at home.'"). In contrast to § 924(c), which generally aims to deter someone's using a firearm to commit a crime that does not require one, §§ 2332a, 2332f, 844(i), and 1992 specifically address the bombing offenses alleged here. These offenses cannot be made worse by the use of a bomb because they already require it; as such, they are not the kinds of crimes § 924(c) was written to address. Indeed, they cannot be committed by a man who "leave[s] his [bomb] at home." *Muscarello*, 524 U.S. at 132.

In crafting §§ 2332a and 2332f, Congress determined that someone who uses a bomb "shall be imprisoned for any term of years or for life, and if death results, shall be punished by death or imprisoned for any term of years or for life." § 2332a(a). *See also* § 2332f(c) ("Whoever violates this section shall be punished as provided under section 2332a(a) of this title."). Similarly, § 844(i) provides for a sentence of 5-20

8

**A000042**

years for a bomb that damages property; 7-40 years for a bomb that injures someone; and "imprisonment for any term of years, or to the death penalty or to life imprisonment," for a bomb that kills someone. Finally, § 1992 provides for a sentence of not more than 20 years and "if the offense results in the death of any person, shall be imprisoned for any term of years or for life, or subject to death." Significantly, all of these provisions—which specifically address the crimes alleged here—were written *after* § 924(c) was changed to mandate 30 years (and life imprisonment for a second conviction) for using a bomb in the course of a separate crime of violence.[1] Thus, if Congress had wanted to import § 924(c)'s 30-year mandatory minimum (and mandatory-life provision for a second conviction) into the punishment schemes for the bombing offenses here, it would have done so. *See, e.g., Wyeth v. Levine*, 555 U.S. 555, 574 (2009).

Though mandatory 30 years imprisonment is the punishment Congress chose for someone convicted of using a bomb in the course of committing a separate and distinct crime of violence, it is not what Congress ordained for someone who breaks the law solely by using a bomb. Sections 2332a, 2332f, 844(i), and 1992 specifically address such an offender, and "'a more specific statute will be given precedence over a more general one.'" Corley, 556 U.S. at 316 (citation omitted). This is especially so where, as here, the more general one does not properly apply.

---

[1] This change was made in 1990, *see* P.L. 101-647 § 1101(2), 104 Stat. 4789, whereas § 2332a was enacted in 1994, *see* P.L. 103-222 § 60023, 108 Stat. 1796, § 2332f was enacted in 2002, *see* P.L. 107-197 § 102, 116 Stat. 721, § 844(i) was given its current penalty provisions in 1996, *see* P.L. 104-132 § 708, 110 Stat. 1214, and § 1992 was enacted in 2006, *see* P.L. 109-177 § 110(a), 120 Stat. 205.

**A000043**

Section 924(c) requires an underlying crime of violence "separate" from "just []
using" a firearm. *Rosemond*, 134 S. Ct. at 1248. "Congress obviously did not intend
the crime of violence to be merged into the firearm offense," *Khalil*, 214 F.3d at 121,
as § 924(c) is a "combination crime," *Rosemond*, 134 S. Ct. at 1248, punishing not the
simple *use of* a firearm but rather the commission of a discrete underlying offense
when *aggravated by* the use of a firearm. Section 924(c) was not written for crimes
that cannot be committed without a firearm, and if Congress had wanted to adopt
§ 924(c)'s punishments when it enacted the provisions that specifically address the
bombing offenses alleged here, it would have done so.

### E. The rule of lenity further compels dismissal of Count One.

If there were doubt, the rule of lenity would require a construction of § 924(c)
in Mr. Ullah's favor—especially given the possibility of a 30-year mandatory
minimum sentence. *See Adamo Wrecking Co. v. United States*, 434 U.S. 275, 285
(1978) (If "the issue is subject to some doubt," courts "adhere to the familiar rule that,
'where there is ambiguity in a criminal statute, doubts are resolved in favor of the
defendant.'") (citation omitted); *Ladner v. United States*, 358 U.S. 169, 178 (1958)
("This policy of lenity means that the Court will not interpret a federal criminal
statute so as to increase the penalty that it places on an individual when such an
interpretation can be based on no more than a guess as to what Congress intended.");
*United States v. Canales*, 91 F.3d 363, 367 (2d Cir. 1996) ("The rule of lenity 'requires
the sentencing court to impose the lesser of two penalties where there is an actual
ambiguity over which penalty should apply.'") (citation omitted); *United States v.*

10

**A000044**

*Margiotta*, 688 F.2d 108, 120 (2d Cir. 1982) (noting "the time-honored tenet of statutory construction that ambiguous laws which impose penal sanctions are to be strictly construed against the Government").

Thus, because Count Six fails to allege a crime of violence distinct from using a bomb, it "fail[s] to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v).

## CONCLUSION

For the foregoing reasons, the Court should dismiss Count Six.

Dated:  New York, New York
     July 17, 2018

Respectfully submitted,

Federal Defenders of New York

By:   /s/ Amy Gallicchio
       Amy Gallicchio
       Julia Gatto
       Attorneys for Defendant
        Akayed Ullah
       52 Duane Street - 10th Floor
       New York NY 10007
       Tel:  (212) 417-8700

**A000045**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

                                       :

UNITED STATES OF AMERICA

                                       :

    - v. -                                      18 Cr. 16 (RJS)

                                       :

AKAYED ULLAH,

                                       :

           Defendant.

                                       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# **MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS COUNT SIX OF THE INDICTMENT**

 

                                      GEOFFREY S. BERMAN
                                        United States Attorney for the
                                        Southern District of New York
                                        One Saint Andrew's Plaza
                                        New York, New York 10007

Shawn G. Crowley
Rebekah Donaleski
George D. Turner
Assistant United States Attorneys
    *Of Counsel*

**A000046**

**TABLE OF CONTENTS**

BACKGROUND ............................................................................................................... 1

I.   Offense Conduct.................................................................................................... 1

II.  The Charges........................................................................................................... 3

DISCUSSION................................................................................................................... 4

I.   Legal Standard for Motions to Dismiss Indictments............................................ 4

II.  Count Six Is Properly Alleged and Legally Sound .............................................. 4

    A.   The Defendant's Challenge to Count Six Fails as a Matter of
       Well-Established Law…………………………………………………………5

        1.   Applicable Law ........................................................................................... 6

           a.   The Double Jeopardy Clause and Multiplicity.................................... 6

           b.   Text and Legislative History of § 924(c) ........................................... 7

        2.   Argument..................................................................................................... 8

           a.   The Court Need Not Reach the Question of Whether Count One Is a Crime of
               Violence to Resolve the Defendant's Motion ....................................... 8

           b.   Count Six Properly Alleges a Violation of § 924(c) ......................... 10

           c.   Congress Intended § 924(c) to Impose Sentences Separate from and Consecutive
               to Predicate Crimes of Violence........................................................... 10

           d.   Non-Binding Interpretive Canons Afford No Basis for Relief ........... 13

           e.   The Predicate Crimes of Violence Involved "Separate Acts"............. 13

           f.   A Nearly Identical Motion Was Recently Rejected by Another Court in This
               District ................................................................................................. 15

    B.   Count One Is a Crime of Violence and, in Any Event, the Court Need Not Reach
       That Issue………………………………………………………………….16

        1.   Background: § 924(c), § 2339B, and *Dimaya* .......................................... 16

        2.   Count One Qualifies as a Crime of Violence Pursuant to the "Underlying-Conduct"
           Approach Properly Applied to § 924(c)(3)(B) After *Dimaya*, But the Court Need
           Not Reach That Issue to Resolve the Defendant's Motion................................... 19

CONCLUSION................................................................................................................. 25

**A000047**

# TABLE OF AUTHORITIES

**Cases**

*Apprendi* v. *New Jersey*, 530 U.S. 466 (2000)..................................................... 22

*Blockburger* v. *United States*, 284 U.S. 299 (1932) ............................................. 6

*Chapman* v. *United States*, 2018 WL 3470304 (E.D. Va. 2018)........................... 25

*Chickasaw Nation* v. *United States*, 534 U.S. 84 (2001)..................................... 13

*Corley* v. *United States*, 556 U.S. 303 (2009) ..................................................... 13

*Garrett* v. *United States*, 471 U.S. 773 (1985) ..................................................... 7

*Hamling* v. *United States*, 418 U.S. 87 (1974) ................................................ 4, 10

*In re Irby*, 858 F.3d 231 (4th Cir. 2017) ............................................................ 21

*In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93 (2d Cir. 2008) ............... 10

*INS* v. *St. Cyr*, 533 U.S. 289 (2001)..................................................................... 22

*Johnson* v. *United States*, 135 S. Ct. 2551 (2015) ............................................ 18, 20, 21

*Lamie* v. *U.S. Trustee*, 540 U.S. 526 (2004)....................................................... 13

*Missouri* v. *Hunter*, 459 U.S. 359 (1983) ........................................................... 12

*Ovalles* v. *United States*, 861 F.3d 1257 (11th Cir. 2017).................................... 21

*Rosemond* v. *United States*, 134 S. Ct. 1240 (2014)............................................ 11

*Sessions* v. *Dimaya*, 138 S. Ct. 1204 (2018)............................................... passim

*Shi Liang Lin* v. *U.S. Dep't of Justice*, 494 F.3d 296 (2d Cir. 2007)..................... 24

*Simpson* v. *United States*, 435 U.S. 6 (1978)....................................................... 23

*United States* v. *Acosta*, 470 F.3d 132 (2d Cir. 2006) ......................................... 17

*United States* v. *Arline*, 835 F.3d 277 (2d Cir. 2016) ........................................... 7

*United States* v. *Barrett*, No. 14-2641 (2d Cir. 2014)........................................... 23

*United States* v. *Chacko*, 169 F.3d 140 (2d Cir. 1999).......................................... 6

*United States* v. *Chavez*, 2018 WL 3609083 (N.D. Cal. 2018) .............................. 24

*United States* v. *Correia*, 2017 WL 80245 (D. Mass. 2017) ................................. 21

*United States* v. *Cravens*, 2017 WL 6559798 (10th Cir. 2017).............................. 21

*United States* v. *De la Pava*, 268 F.3d 157 (2d Cir. 2001) ..................................... 4

*United States* v. *Doctor*, 842 F.3d 306 (4th Cir. 2016)......................................... 23

*United States* v. *Doe*, 145 F. Supp. 3d 167 (E.D.N.Y. 2015) ................................ 17

*United States* v. *Eshetu*, 863 F.3d 946 (D.C. Cir. 2017)....................................... 21

ii

**A000048**

*United States* v. *Galati*, 844 F.3d 152 (3d Cir. 2016)..................................................... 21

*United States* v. *Gaudin*, 515 U.S. 506 (1995) .............................................................. 22

*United States* v. *Genovese*, 409 F. Supp. 2d 253 (S.D.N.Y. 2005).................................. 4

*United States* v. *Gill*, 748 F.3d 491 (2d Cir. 2014).......................................................... 24

*United States* v. *Goba*, 240 F. Supp. 2d 242 (W.D.N.Y. 2003)...................................... 18

*United States* v. *Goldberg*, 756 F.2d 949 (2d Cir. 1985)................................................. 4

*United States* v. *Guevara*, 408 F.3d 252 (5th Cir. 2005) ................................................. 9

*United States* v. *Henderson*, 2017 WL 3820960 (M.D. Ga. 2017)................................. 21

*United States* v. *Hernandez*, 228 F. Supp. 3d 128 (D. Me. 2017) .................................. 21

*United States* v. *Hill*, 890 F.3d 51, 2018 WL 2122417 (2d Cir. 2018).................................. 16, 17

*United States* v. *Holdridge,* 30 F.3d 134, 1994 WL 399526 (6th Cir. 1994) .............................. 12

*United States* v. *Ivezaj*, 568 F.3d 88 (2d Cir. 2009)........................................................ 17

*United States* v. *Khalil*, 214 F.3d 111 (2d Cir. 2000) ........................................... 7, 11, 12

*United States* v. *Laurent*, 861 F. Supp. 2d 71 (E.D.N.Y. 2011) ...................................... 4

*United States* v. *Lindh*, 212 F. Supp. 2d 541 (E.D. Va. 2002).......................................... 18

*United States* v. *Martoma*, 869 F.3d 58 (2d Cir. 2017) .................................................. 24

*United States* v. *Mathews*, 36 F.3d 821 (9th Cir. 1994)............................................ 12, 14

*United States* v. *Mohammed*, 27 F.3d 815 (2d Cir. 1994) ....................................... passim

*United States* v. *Quigley*, 798 F. Supp. 451 (W.D. Mich. 1992) .................................... 12

*United States* v. *Rahimi*, 16 Cr. 760 (RMB) (S.D.N.Y.) ........................................... 5, 15

*United States* v. *Rahimi*, 2017 U.S. Dist. LEXIS 96686 (S.D.N.Y. 2017)...................... 10, 15, 16

*United States* v. *Reid*, 369 F.3d 619 (1st Cir. 2004) ...................................................... 10

*United States* v. *Rodriguez*, 2018 WL 1744734 (M.D. Pa. 2018) ................................. 21

*United States* v. *Rodriguez-Moreno*, 526 U.S. 275 (1999).............................. 10, 11, 21

*United States* v. *Salameh*, 261 F.3d 271 (2d Cir. 2001) ................................... 10, 11, 14

*United States* v. *Salas*, 889 F.3d 681 (10th Cir. 2018) .................................................. 9

*United States* v. *St. Hubert*, 883 F.3d 1319 (11th Cir. 2018)........................................ 21

*United States* v. *Tsarnaev*, 157 F. Supp. 3d 57 (D. Mass. 2016)................................... 10

*United States* v. *Valle*, 807 F.3d 508 (2d Cir. 2015).................................................... 13

*United States* v. *Viglakis*, 2013 U.S. Dist. LEXIS 118919 (S.D.N.Y. 2013) ............................ 18

*United States* v. *Walker*, 473 F.3d 71 (3d Cir. 2007).................................................... 23

iii

**A000049**

*United States* v. *Yousef*, 327 F.3d 56 (2d Cir. 2011) ......................................................... 10, 12

**Statutes**

18 U.S.C. § 16(b) ............................................................................................ 17, 18, 20

18 U.S.C. § 1992 ......................................................................................................... passim

18 U.S.C. § 2 .............................................................................................................. 11

18 U.S.C. § 2119 ........................................................................................................ 11

18 U.S.C. § 2332a ..................................................................................................... passim

18 U.S.C. § 2332f ......................................................................................... 4, 8, 9, 14

18 U.S.C. § 2339A .................................................................................................... 17

18 U.S.C. § 2339B .............................................................................................. 4, 17

18 U.S.C. § 844(i) ................................................................................... 4, 9, 12, 14

18 U.S.C. § 921(a) ................................................................................................... 16

18 U.S.C. § 924(c) ................................................................................................ passim

18 U.S.C. § 924(e) ................................................................................................... 18

8 U.S.C. § 1101(a) .................................................................................................. 18

**Other Authorities**

S. Rep. No. 225, 98th Cong., 2d Sess. 313 (1983) ...................................................... 8

U.S.S.G. § 4B1.2(a)(1) ............................................................................................ 9

**Rules**

Fed. R. Crim. P. 12(b) ............................................................................................. 5

Fed. R. Crim. P. 7(c) ........................................................................................... 4, 10

A000050

The Government respectfully submits this memorandum of law in opposition to the defendant's pretrial motion filed on July 17, 2018 (Dkt. No. 20), which seeks dismissal of Count Six of Indictment 18 Cr. 16 (RJS) (the "Indictment"). As set forth below, the defendant's motion is meritless and foreclosed by controlling Second Circuit precedent. The motion should be denied without a hearing.

## BACKGROUND

### I. Offense Conduct

The defendant bombed a crowded subway terminal in the heart of New York City for and in the name of the Islamic State of Iraq and al-Sham ("ISIS"). In the early morning hours of Monday, December 11, 2017, the defendant strapped a homemade pipe bomb to his body and traveled by subway from Brooklyn, where he lived, to a subway terminal (the "Subway Terminal") underneath the Port Authority Bus Terminal at West 42nd Street and Eighth Avenue in Manhattan. (Complaint (Dkt. No. 1) ¶ 9(a)). At approximately 7:20 a.m., during the Monday morning rush hour, the defendant detonated the pipe bomb inside the Subway Terminal. (*Id.*). Surveillance footage from cameras in the Subway Terminal shows the defendant walking through the crowded tunnel, detonating the pipe bomb, and falling to the ground after the explosion. (*Id.* ¶ 10). The footage also shows dozens of commuters in the Subway Terminal scattering as the bomb explodes.

Shortly after the blast, responding law enforcement officers discovered the defendant lying on the ground inside the tunnel, and the defendant was taken into custody. (*Id.* ¶¶ 9(b)-(c)). Law enforcement officers discovered the remnants of the pipe bomb on the defendant's body, including a nine-volt battery in the defendant's pocket, wires connected to the battery running underneath his jacket, and pieces of Christmas tree lightbulbs attached to the wires. (*Id.* ¶ 9(c)).

**A000051**

The battery, wires, and Christmas tree lightbulbs functioned as the power source and trigger for the device. Law enforcement also recovered fragments of the pipe bomb's components—including shards of metal pipe, a metal end cap, metal screws, and wires and wire connectors—scattered throughout the tunnel. (*Id.*).

The defendant waived his *Miranda* rights and agreed to speak with law enforcement officers following his arrest. (*Id.* ¶ 11). The defendant stated, in substance and among other things, that he had been inspired by ISIS to carry out the bombing, that he "did it for the Islamic State," and that he had carried out the attack in part because of the United States' policies in the Middle East. (*Id.* ¶¶ 11(b), (e)). The defendant described posting a statement on his Facebook page, as he traveled to the Subway Terminal to carry out the attack, that read, "Trump you failed to protect your nation," along with a statement intended to convey that he had carried out the attack in the name of ISIS. (*Id.* ¶ 11(g)). The defendant further admitted that he had chosen a busy weekday morning for his attack in order to terrorize as many people as possible. (*Id.* ¶ 11(e)). To that end, the defendant had filled the pipe bomb—which he had built in his Brooklyn apartment about one week prior to the attack—with metal screws, which he believed would cause maximum damage. (*Id.* ¶¶ 11(c)-(d)). The defendant's radicalization began in 2014, when he started viewing pro-ISIS materials online, including a video instructing that if supporters of ISIS were unable to travel overseas to join ISIS, they should carry out attacks in their homelands. (*Id.* ¶ 11(f)). About a year before the attack, the defendant began researching online how to build improvised explosive devices. (*Id.*)

Law enforcement officers conducted a judicially authorized search of the defendant's Brooklyn apartment shortly after the December 11 attack. (*Id.* ¶ 12). During that search, officers recovered, among other things, materials consistent with those the defendant had used to

2

**A000052**

construct the pipe bomb, including metal pipes, wires, pieces of Christmas tree lights, and metal screws. (*Id.* ¶¶ 12(a)-(c)). Officers also recovered the defendant's passport, which contained the following statement scrawled in all capital letters: "O AMERICA, DIE IN YOUR RAGE." (*Id.* ¶ 12(d)). Officers found that same message written inside a cardboard box in the defendant's apartment; the cardboard box also contained metal screws consistent with those found in the Subway Terminal following the defendant's attack. Finally, law enforcement recovered a laptop from the defendant's residence that contained a substantial volume of ISIS and terrorism-related materials, including (1) dozens of ISIS propaganda videos, including videos distributed by al-Hayat Media Center (an ISIS media outlet), depicting ISIS fighters engaging in violent combat operations such as suicide bombings and beheadings of captives; and (2) hundreds of lectures by radical jihadist leaders, including Anwar al-Awlaki, the now-deceased former leader of al Qaeda in the Arabian Peninsula.

While in custody in the days following his arrest, the defendant made additional, unprompted statements to law enforcement officers about his attack. For example, on December 14, 2017, the defendant told a law enforcement officer, "System is not working, think who will come after me," and repeatedly warned, "More is coming." On December 22, 2017, while incarcerated at the Metropolitan Correctional Center, the defendant began chanting "more is coming" to a correctional officer. He then told the officer: "you started this war, we will finish it. More is coming, you'll see."

## II.    The Charges

The Indictment charges the defendant in six counts, all of which stem from the defendant's perpetration of the December 11, 2017 attack:

3

**A000053**

- Count One: Providing and attempting to provide material support or resources to a designated foreign terrorist organization ("FTO"), namely, ISIS, in violation of 18 U.S.C. § 2339B;

- Count Two: Using and attempting to use a weapon of mass destruction, in violation of 18 U.S.C. § 2332a(a);

- Count Three: Bombing and attempting to bomb a place of public use and a public transportation system, in violation of 18 U.S.C. § 2332f(a)-(b);

- Count Four: Destroying and attempting to destroy property by means of explosive, in violation of 18 U.S.C. § 844(i);

- Count Five: Committing and attempting to commit a terrorist attack against a mass transportation system, in violation of 18 U.S.C. § 1992(a)-(c); and

- Count Six: Using and carrying a destructive device during and in relation to, and possessing a destructive device in furtherance of, the crimes of violence charged in Counts One through Five of the Indictment, in violation of 18 U.S.C. § 924(c).

## DISCUSSION

### I. Legal Standard for Motions to Dismiss Indictments

"Motions to dismiss indictments are disfavored." *United States* v. *Laurent*, 861 F. Supp. 2d 71, 109 (E.D.N.Y. 2011) (citing *United States* v. *De La Pava*, 268 F.3d 157, 165 (2d Cir. 2001)). "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling* v. *United States*, 418 U.S. 87, 117 (1974); *see also* Fed. R. Crim. P. 7(c). On a motion to dismiss an indictment, "[t]he allegations of an indictment are accepted as true." *United States* v. *Genovese*, 409 F. Supp. 2d 253, 255 (S.D.N.Y. 2005) (citing *United States* v. *Goldberg*, 756 F.2d 949, 950 (2d Cir. 1985)).

### II. Count Six Is Properly Alleged and Legally Sound

The defendant moves to dismiss the § 924(c) charge alleged in Count Six of the Indictment, arguing that (1) the § 2339B material-support offense charged in Count One does not

4

**A000054**

qualify as a "crime of violence" for purposes of § 924(c) in light of the Supreme Court's recent decision in *Sessions* v. *Dimaya*, 138 S. Ct. 1204 (2018); and (2) Count Six fails to state an offense because it is not based on conduct separate from the predicate crimes of violence charged in Counts Two through Five. (*See* Def. Mem. (Dkt. No. 21) at 2-11).

As explained below, the defendant's challenge to Count Six, which invokes principles of double jeopardy and multiplicity, is squarely foreclosed by multiple decisions of the Second Circuit, which has established that, based on the text and legislative history of § 924(c), the same conduct can both violate § 924(c) and constitute a predicate crime of violence underlying the § 924(c) charge. Just last year, the defendant in another explosives-related terrorism case in this District, *United States* v. *Rahimi*, 16 Cr. 760 (RMB), filed a nearly identical motion challenging the § 924(c) counts in that case, and Judge Berman denied it. The defendant's recycled version of that motion filed here is equally meritless and should also be denied.

The defendant's argument relating to Count One also fails, as § 924(c)(3)(B)'s definition of "crime of violence" is properly construed post-*Dimaya* such that Count One does qualify as a crime of violence. But in any event, the Court need not reach that issue—which implicates questions concerning the validity and construction of § 924(c)(3)(B) in the wake of *Dimaya* that are currently pending before the Second Circuit—because Count Six is also predicated on several offenses in addition to Count One that the defendant concedes are crimes of violence for purposes of § 924(c), irrespective of *Dimaya*.

A.    **The Defendant's Challenge to Count Six Fails as a Matter of Well-Established Law**

The defendant moves to dismiss Count Six, asserting that it "'fail[s] to state an offense.'" (Def. Mem. at 2 (quoting Fed. R. Crim. P. 12(b)(3)(B)(v))). The motion relies on wholly inapposite authority. While the defendant's arguments plainly sound in double jeopardy and

**A000055**

multiplicity, he avoids explicitly invoking those principles—perhaps because his contentions are foreclosed by binding precedent. The text and history of § 924(c), as interpreted by the Second Circuit, are clear and controlling: Congress intended that the same conduct could violate § 924(c) and constitute a predicate crime of violence, and that defendants who engage in such conduct would receive separate, consecutive punishments for their crimes. Accordingly, the defendant's motion to dismiss Count Six should be denied.

   **1.**   **Applicable Law**

     **a.**   **The Double Jeopardy Clause and Multiplicity**

The Double Jeopardy Clause of the Fifth Amendment "protects a criminal defendant from multiple prosecutions as well as multiple punishments for the same criminal offense." *United States* v. *Mohammed*, 27 F.3d 815, 819 (2d Cir. 1994). Double jeopardy challenges like the one at issue here are sometimes described in terms of "multiplicity." *See, e.g.*, *United States* v. *Chacko*, 169 F.3d 140, 145 (2d Cir. 1999). "An indictment is multiplicitous when it charges a single offense as an offense multiple times, in separate counts, when, in law and fact, only one crime has been committed." *Id.*

However, "[i]t is well settled that the legislature may impose multiple punishments for the same conduct without violating the Double Jeopardy Clause, so long as it expresses its intent to do so clearly." *Mohammed*, 27 F.3d at 819 ("Where the same conduct violates two statutory provisions, whether each violation is a separate offense is a question of legislative intent."); *see Chacko*, 169 F.3d at 146 ("[T]he touchstone is whether Congress intended to authorize separate punishments for the offensive conduct under separate statutes."). As the *Mohammed* court explained, the test articulated in *Blockburger* v. *United States*, 284 U.S. 299 (1932), for determining whether two offenses are separate for double-jeopardy purposes—which looks to

<div align="center">6</div>

<div align="right">

**A000056**

</div>

whether each offense includes at least one unique element—"is 'a rule of statutory construction to help determine legislative intent' and 'is not controlling when the legislative intent is clear from the face of the statute or the legislative history.'" 27 F.3d at 819 (quoting *Garrett* v. *United States*, 471 U.S. 773, 778 (1985)). Thus, when the legislative intent to impose multiple punishments for the same conduct is "clear from the face of the statute or the legislative history," the double jeopardy and multiplicity inquiry is concluded, and any challenge to the imposition of such punishments based on those principles necessarily fails. *Garrett*, 471 U.S. at 779; *see also Mohammed*, 27 F.3d at 819; *accord United States* v. *Khalil*, 214 F.3d 111 (2d Cir. 2000).

### b. Text and Legislative History of § 924(c)

Section 924(c) provides, in pertinent part:

> [A]ny person who, during and in relation to *any crime of violence* . . . (including a crime of violence . . . that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, *in addition to the punishment provided for such crime of violence*—[be punished pursuant to Sections 924(c)(1)(B)(ii) and 924(c)(1)(C)(ii)].

18 U.S.C. § 924(c)(1)(A) (emphasis added). Section 924(c) further provides that "no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person, *including any term of imprisonment imposed for the crime of violence*." *Id.* § 924(c)(1)(D)(ii) (emphasis added); *see also United States* v. *Arline*, 835 F.3d 277, 281 (2d Cir. 2016) ("A 'second or subsequent' conviction under § 924(c) may be charged in the same indictment as the initial § 924(c) charge.").

**A000057**

Congress amended Section 924(c) in 1984, in response to Supreme Court decisions interpreting a prior version of the statute. *See Mohammed*, 27 F.3d at 820. In connection with the 1984 amendment, the Senate Judiciary Committee concluded that

> subsection 924(c) should be completely revised to ensure that *all persons who commit Federal crimes of violence . . . receive a mandatory sentence, without the possibility of the sentence being made to run concurrently with that for the underlying offense* or for any other crime . . . .

S. Rep. No. 225, 98th Cong., 2d Sess. 313 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3491 (emphasis added).

Based on the text and history of the statute, the Second Circuit has held:

> A review of the plain language of section 924(c) and its legislative history leads us to conclude that the section was intended to impose an additional, consecutive sentence upon a defendant who commits *any* federal crime of violence while using or carrying a firearm. The use of the phrases "any crime of violence" in section 924(c) and "all persons who commit Federal crimes of violence" in the Senate report unequivocally convey this message.

*Mohammed*, 27 F.3d at 819 (quoting 18 U.S.C. § 924(c)) (emphasis in original).

### 2. Argument

#### a. The Court Need Not Reach the Question of Whether Count One Is a Crime of Violence to Resolve the Defendant's Motion

As an initial matter, to resolve the defendant's motion, the Court need not reach the question of whether the material-support offense charged in Count One qualifies as a crime of violence under § 924(c)(3)(B) after *Dimaya*. The § 924(c) charge in Count Six is also predicated on other offenses alleged in the Indictment—for example, using a weapon of mass destruction, in violation of 18 U.S.C. § 2332a (Count Two); bombing a place of public use and a public transportation system, in violation of 18 U.S.C. § 2332f (Count Three); and committing a terrorist attack against a mass transportation system, in violation of 18 U.S.C. § 1992 (Count

8

**A000058**

Five)—that indisputably qualify as crimes of violence for purposes of § 924(c), and the defendant does not argue otherwise. Each of those statutes includes as an element "the use, attempted use, or threatened use of physical force against the person or property of another," and therefore qualifies as a crime of violence under § 924(c)(3)(A), the validity of which is not in question. *See* 18 U.S.C. §§ 2332a (elements include use, attempted use, or threatened use of weapon of mass destruction against persons or property), 2332f (elements include delivering, placing, discharging, or detonating an explosive or other lethal device, or attempting to do so, in, into, or against a place of public use or public transportation system), 1992 (elements include placing or attempting to place a destructive substance or device in, upon, or near specified types of property associated with mass transportation); *see also United States* v. *Guevara*, 408 F.3d 252, 259 (5th Cir. 2005) (holding that § 2332a is crime of violence under U.S.S.G. § 4B1.2(a)(1), which is similar to § 924(c)(3)(A), as "Section 2332a contains, as an element, the threatened use of a weapon of mass destruction").[1]

In short, even setting aside Count One solely for the sake of argument on the instant motion, the § 924(c) charge in Count Six is independently supported by other predicate crimes of violence alleged in the Indictment. Thus, the only question that the Court needs to address is whether there is any merit to the defendant's argument that Count Six fails to state an offense on

---

[1] While the defendant does not dispute that 18 U.S.C. § 844(i) (Count Four) also qualifies as a crime of violence for purposes of § 924(c), the Government has not included that offense in the discussion above, as at least one court of appeals has concluded that § 844(i) does not qualify as a crime of violence under § 924(c)(3)(A), and that the offense qualifies as a crime of violence only under § 924(c)(3)(B), which the defendant here claims (incorrectly) is no longer valid after *Dimaya*. *See United States* v. *Salas*, 889 F.3d 681, 684 (10th Cir. 2018) (reasoning that § 844(i)'s elements do not require use of force against property "of another"). Irrespective of whether the *Salas* panel's conclusion was correct, which the Government does not concede, there is no need to address that issue in connection with the instant motion, as the offenses charged in Counts Two, Three, and Five plainly qualify as crimes of violence under § 924(c)(3)(A), as discussed above.

**A000059**

double jeopardy/multiplicity grounds because it is not based on conduct "separate" from the conduct underlying the predicate crimes of violence. (*See* Def. Mem. at 5-11). As explained below, that argument is also meritless.

### b.     Count Six Properly Alleges a Violation of § 924(c)

Count Six is properly alleged in the Indictment because it tracks the language of § 924(c) and fairly informs the defendant of the charge against which he must defend, including by providing the defendant with sufficient notice of the predicate crimes underlying the § 924(c) charge. *See* Fed. R. Crim. P. 7(c); *Hamling*, 418 U.S. at 117.[2] The Indictment also alleges sufficiently that the defendant's use, carrying, and possession of the destructive device at issue occurred during, in relation to, and in furtherance of those predicate crimes of violence. *See* 18 U.S.C. § 924(c)(1)(A). Accordingly, Count Six meets the pleading requirements of Rule 7(c).

### c.     Congress Intended § 924(c) to Impose Sentences Separate from and Consecutive to Predicate Crimes of Violence

The defendant nevertheless asserts that the Court should dismiss Count Six because "using a bomb and committing the charged crimes of violence are not 'two separate acts.'" (Def. Mem. at 6 (quoting *Rodriguez-Moreno*, 526 U.S. at 280)). But the defendant's purported "two separate acts" requirement does not exist. *See, e.g.*, *United States* v. *Salameh*, 261 F.3d 271, 277-78 (2d Cir. 2001) ("[T]here is generally no constitutional bar to the imposition, within a

---

[2] Numerous other terrorism cases have involved § 924(c) charges predicated on offenses charged in this case. *See, e.g.*, *United States* v. *Rahimi*, 2017 U.S. Dist. LEXIS 96686, at *2-5 (S.D.N.Y. 2017) (predicate violations of Sections 2332a, 2332f, and 844(i)); *United States* v. *Yousef*, 327 F.3d 56, 83-84 (2d Cir. 2011) (predicate violations of Sections 2332a and 844(i)); *In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93, 107 (2d Cir. 2008) (predicate violations of Sections 2332a and 844(i)); *United States* v. *Reid*, 369 F.3d 619, 620 (1st Cir. 2004) (predicate violation of § 2332a); *United States* v. *Tsarnaev*, 157 F. Supp. 3d 57, 71 (D. Mass. 2016) (predicate violations of Sections 2332a, 2332f, and 844(i)).

10

**A000060**

single criminal proceeding, of multiple punishments for the same criminal conduct.").[3]  Instead, as discussed above, the salient question is whether § 924(c) and the predicate crimes of violence are "separate offense[s]"—not separate acts—which is "a question of legislative intent." *Mohammed*, 27 F.3d at 820-21 (rejecting double-jeopardy argument where predicate crime for § 924(c) charge was carjacking in violation of 18 U.S.C. § 2119).  As the Second Circuit has recognized, the unambiguous congressional intent reflected in the text and history of § 924(c) establishes that a § 924(c) charge is a separate offense in relation to the predicate crimes of violence underlying the § 924(c) charge, and the defendant's motion to dismiss Count Six therefore must be denied.

In *Salameh*, the Second Circuit established that the argument advanced here, "which refers to what one might call the 'vertical' relationship between each § 924(c) count and its underlying crime of violence, has been foreclosed by a clear act of Congress," *i.e.*, the 1984 amendment to § 924(c) discussed above, *see supra* at 8.  *Salameh*, 261 F.3d at 278.  Also fatal to the defendant's argument is *United States* v. *Khalil*, 214 F.3d 111 (2d Cir. 2000).  In that case, the Second Circuit rejected a defendant's claim that his conviction under § 924(c) violated the Double Jeopardy Clause where the predicate crime of violence was a violation of 18 U.S.C. § 2332a—the statute charged in Count Two of the Indictment in this case.  *Khalil*, 214 F.3d at 120-21.  As in *Salameh*, the Second Circuit reasoned that "simply because two criminal statutes may be construed to proscribe the same conduct . . . does not mean that the Double Jeopardy

---

[3] In an effort to suggest something to the contrary, the defendant lifts isolated *dicta* out of context from *Rosemond* v. *United States*, 134 S. Ct. 1240, 1247 (2014), and *Rodriguez-Moreno*. (*See* Def. Mem. at 5-6).  Those cases examined § 924(c) in contexts wholly distinct from the present circumstances.  *Rosemond* addressed aiding and abetting liability under 18 U.S.C. § 2, *see* 134 S. Ct. at 1245, and *Rodriguez-Moreno* related to venue under § 924(c), *see* 526 U.S. at 282.  Neither case relates to the double-jeopardy holdings that foreclose the defendant's motion.

11

Clause precludes the imposition, in a single trial, of cumulative punishments pursuant to those statutes." *Id.* at 118 (citing *Missouri* v. *Hunter*, 459 U.S. 359, 368 (1983)).[4] The Second Circuit reiterated that "[w]here . . . a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the same conduct under *Blockburger* . . . a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." *Id.* at 119; *accord Mohammed*, 27 F.3d at 819. The *Khalil* court unambiguously concluded that § 924(c)'s express provisions requiring imposition of a sentence "in addition" to any punishment imposed for a predicate crime of violence, 18 U.S.C. § 924(c)(1)(A), constituted "explicit Congressional directives" and therefore left "no doubt" that the statute establishes an "offense that is *distinct from the underlying crime of violence*." *Khalil*, 214 F.3d at 120 (emphasis added); *accord United States* v. *Yousef*, 327 F.3d 56, 142 (2d Cir. 2011) (relying on *Salameh* to reject double-jeopardy argument based on § 924(c)). The Second Circuit's decisions in *Mohammed*, *Salameh*, and *Khalil* squarely control here, and foreclose the defendant's motion.[5]

---

[4] Quoting *Khalil*, the defendant's brief twice asserts that Congress "'obviously did not intend the crime of violence to be merged into the firearm offense.'" (Def. Mem. at 5, 7 (quoting 214 F.3d at 121)). That is correct, but in no way helpful to his argument. As discussed above, Congress "obviously"—and explicitly—provided for separate crimes and punishments, rather than merger, for violations of § 924(c) and predicate crimes of violence.

[5] Courts in other circuits have reached the same conclusion, further underscoring the meritless nature of the defendant's motion. *See, e.g.*, *United States* v. *Mathews*, 36 F.3d 821, 823 (9th Cir. 1994) (reasoning that "Congress intended to punish both the crime of violence effected by the use of the bomb under 18 U.S.C. § 844(i) and, cumulatively, to add the punishment for carrying the bomb in relation to this crime of violence" pursuant to § 924(c)); *United States* v. *Holdridge*, 30 F.3d 134, 1994 WL 399526, at *3 (6th Cir. 1994) (unpublished opinion) ("[T]he imposition of consecutive sentences under § 844(i) and § 924(c) does not violate the Double Jeopardy Clause."); *United States* v. *Quigley*, 798 F. Supp. 451, 457-58 (W.D. Mich. July 14, 1992) (concluding, based on legislative history of § 924(c), that "Congress clearly intended cumulative punishment with respect to *all* crimes of violence involving dangerous weapons, and therefore intended that violations of section 844(i) and 924(c) would be treated as separate offenses").

**A000062**

**d.**     **Non-Binding Interpretive Canons Afford No Basis for Relief**

In light of the Second Circuit's holdings interpreting § 924(c), the interpretive canons cited by the defendant offer him no refuge.  (*See* Def. Mem. at 8-11).  "[C]anons are not mandatory rules," and "other circumstances evidencing congressional intent can overcome their force."  *Chickasaw Nation* v. *United States*, 534 U.S. 84, 94 (2001).  For example, the Supreme Court's "preference for avoiding surplusage constructions is not absolute"; rather, it "prefer[s] the plain meaning since that approach respects the words of Congress."  *Lamie* v. *U.S. Trustee*, 540 U.S. 526, 536 (2004).  In *Mohammed*, 27 F.3d at 820-21, the Second Circuit expressly rejected the defendant's argument that § 924(c) counts "violate the rule that 'a more specific statute will be given precedence over a more general one'" (Def. Mem. at 8 (quoting *Corley* v. *United States*, 556 U.S. 303, 316 (2009))).  Finally, the rule of lenity also has no application here, as § 924(c) is unambiguous with respect to the issue presented.  *See, e.g.*, *United States* v. *Valle*, 807 F.3d 508, 540 (2d Cir. 2015) ("[W]here statutory . . . provisions unambiguously cover the defendant's conduct . . . the rule of lenity does not come into play." (internal quotation marks omitted)).  Accordingly, the defendant's scattershot references to various canons of interpretation do nothing to save his motion, which fails under the clear and controlling Second Circuit precedent discussed above.

**e.**     **The Predicate Crimes of Violence Involved "Separate Acts"**

As explained above, the defendant's argument is little more than an attempted end run around a line of controlling Second Circuit precedent—including *Mohammed*, *Salameh*, and *Khalil*—that squarely forecloses his motion.  But even on its face, the defendant's position does not withstand even cursory scrutiny.  Contrary to the defendant's conclusory assertion otherwise, the predicate crimes of violence underlying Count Six do allege—and require the Government to

13

**A000063**

prove—additional acts and conduct beyond that required to establish the § 924(c) violation charged in Count Six. For example:

- Count Two requires proof that the defendant used or attempted to use a weapon of mass destruction against "persons or property" located "within the United States," *see* 18 U.S.C. § 2332a(a)(2);

- Count Three requires proof that the defendant "place[d], discharge[d], or detonate[d]" a bomb (or attempted to do so) (1) in a "place of public use," (2) with intent to cause either "death or serious bodily injury" or "extensive destruction . . . likely to result in major economic loss," and (3) under certain additional circumstances, such as the "perpetrator is a national of another state," *see* 18 U.S.C. §§ 2332f (a), (b)(1); and

- Count Five requires proof that the defendant (1) placed or attempted to place a destructive device in, upon, or near "a mass transportation vehicle" with "intent to endanger the safety of any person, or with a reckless disregard for the safety of human life," (2) placed or attempted to place a destructive device in, upon, or near certain specified facilities used in connection with "the operation of . . . a mass transportation vehicle" with the intent or knowledge that doing so would damage a mass transportation vehicle, or (3) committed an act with "intent to cause death or serious bodily injury" to any person located on specified types of property relating to mass transportation, *see* 18 U.S.C. §§ 1992(a)(2), (a)(4), (a)(7).

Count Six, in turn, charges the defendant with possessing, carrying, and using a destructive device in connection with the distinct activities alleged in the underlying crimes of violence. *See Salameh*, 261 F.3d at 279 (affirming convictions under Sections 924(c) and 844 and noting "the separate, and separately culpable, nature of defendants' use and carriage of the bomb"); *Mathews*, 36 F.3d at 823 ("[The defendant's] action in transporting . . . the bomb to the alley where it was placed is the fact which makes him liable under [§ 924(c)] [and] it is a fact distinct from use of the bomb which makes him liable under 18 U.S.C. § 844(i)."). Accordingly, in addition to being legally foreclosed by the controlling precedent discussed above, even the factual premise of the defendant's challenge to Count Six is baseless.

14

**A000064**

**f.** **A Nearly Identical Motion Was Recently Rejected by Another Court in This District**

The defendant's motion recycles a nearly identical one that was recently rejected in another terrorism case in this District, *United States* v. *Rahimi*, No. 16 Cr. 760 (RMB) (S.D.N.Y.) ("*Rahimi*"). Rahimi was charged (and ultimately convicted after trial) with various offenses, including under § 924(c), stemming from his bombing and attempted bombing of the Chelsea neighborhood of Manhattan in fall 2016. The two § 924(c) counts in *Rahimi* (which related to the two bombs Rahimi transported, planted, and detonated or attempted to detonate in Manhattan) were predicated on violations of Sections 2332a, 2332f, and 844(i)—that is, the same statutes charged in Counts Two, Three, and Four of the Indictment in this case.[6] Rahimi filed a pretrial motion to dismiss the § 924(c) counts, which advanced a "separate acts" argument nearly identical to the argument advanced by the defendant here. *See Rahimi*, Dkt. No. 60 at 8-14.[7]

Judge Berman rejected that argument, stating that "[c]riminal charges which have been sustained in cases analogous to the Rahimi case compel this result," and citing *Salameh* and *Khalil*, among other cases. *United States* v. *Rahimi*, 2017 U.S. Dist. LEXIS 96686, at *2 (S.D.N.Y. 2017). As discussed above, those cases compel the same result here. After disposing of Rahimi's baseless argument sounding in "double jeopardy and/or multiplicit[y]," the *Rahimi* court found that the § 924(c) counts were properly alleged, as they "track the language of the federal statute(s) pursuant to which Defendant is charged," "state the elements of the crimes

---

[6] The *Rahimi* indictment did not include a charge under 18 U.S.C. § 1992.

[7] As discussed above, the defendant's motion also includes, in addition to the "separate acts" argument sounding in double jeopardy from Rahimi's motion, an argument that § 2339B (Count One of the Indictment) is not a crime of violence for purposes of § 924(c). Rahimi's motion did not include that argument—the *Rahimi* indictment did not involve a charge under § 2339B, and Rahimi's motion also predated the Supreme Court's decision in *Dimaya*.

15

**A000065**

charged, including the nature, time and place of the alleged offenses," and "fairly inform[] [the] defendant of the charge[s] against which he must defend." *Id.* at \*3. Accordingly, Judge Berman denied Rahimi's motion, concluding that the § 924(c) counts "readily withstand the Defense motion to dismiss." *Id.* at \*4-5. The defendant's nearly identical motion in this case should similarly be denied. While the Court need not reach the defendant's argument relating to Count One to resolve his motion, that argument also fails, as explained below.

### B. Count One Is a Crime of Violence and, in Any Event, the Court Need Not Reach That Issue

#### 1. Background: § 924(c), § 2339B, and *Dimaya*

Section 924(c) imposes a mandatory consecutive term of imprisonment when a defendant uses or carries a firearm during, or possesses a firearm in furtherance of, a drug trafficking crime or "crime of violence." 18 U.S.C. § 924(c)(1)(A). When, as in this case, the firearm is a "destructive device," which is defined to include any "explosive" or "bomb," *id.* § 921(a)(4), the mandatory minimum consecutive term of imprisonment is 30 years. *Id.* § 924(c)(1)(B)(ii). The statute defines "crime of violence" as a federal felony

> (A) [that] has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

*Id.* § 924(c)(3)(A)-(B). In this Circuit, the language of subsection (A), which focuses on whether the elements of the offense include the use of force, has been referred to as the "Force Clause," while the language of subsection (B), which focuses on whether the offense involved a substantial risk of force, has been referred to as the "Risk-of-Force Clause." *See United States* v. *Hill*, 890 F.3d 51, 2018 WL 2122417 (2d Cir. May 9, 2018).

16

**A000066**

Under the Second Circuit's current precedents, whether a § 924(c) count's predicate violation qualifies as a "crime of violence" (under either clause of § 924(c)(3)) is a question of law for the court, determined by applying the "categorical approach." *Hill*, 890 F.3d at 55; *see United States* v. *Ivezaj*, 568 F.3d 88, 95 (2d Cir. 2009); *United States* v. *Acosta*, 470 F.3d 132, 134-35 (2d Cir. 2006). "Under the categorical approach, courts identify the minimum criminal conduct necessary for conviction under a particular statute," examining only the statutory definition of the offense, and not the case-specific facts of the defendant's conduct in committing the offense. *Hill*, 890 F.3d at 55 (internal quotation marks omitted).

The material-support statute charged in Count One, 18 U.S.C. § 2339B, criminalizes "knowingly provid[ing] material support or resources to a foreign terrorist organization." 18 U.S.C. § 2339B(a)(1). The term "material support or resources" is defined as:

> any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials.

*Id.* § 2339A(b)(1).

To date, district courts that have considered the question of whether a violation of § 2339B qualifies as a "crime of violence" have found that it does, under the Risk-of-Force Clause of § 924(c)(3)(B) and the parallel residual clause of 18 U.S.C. § 16(b). *See, e.g.*, *United States* v. *Doe*, 145 F. Supp. 3d 167, 174, 179-82 (E.D.N.Y. 2015) (applying categorical approach and concluding that § 2339B qualifies as a crime of violence under § 16(b) for purposes of the Juvenile Justice and Delinquency Prevention Act, and noting that, while the Second Circuit has not addressed whether providing material support to an FTO qualifies as a "crime of violence," "district courts that have considered the issue have found that it does") (citing cases); *United*

17

*States* v. *Viglakis*, 2013 WL 4477023, at *7 (S.D.N.Y. 2013) (identifying § 2339B as predicate crime of violence underlying § 924(c) charge); *United States* v. *Goba*, 240 F. Supp. 2d 242, 250-51 (W.D.N.Y. 2003) (applying categorical approach and concluding that "providing material support or resources to a foreign terrorist organization involves a substantial risk that physical force against the person or property of another may occur," and that "§ 2339B is therefore a 'crime of violence'" for purposes of Bail Reform Act); *United States* v. *Lindh*, 212 F. Supp. 2d 541, 578-82 (E.D. Va. 2002) (concluding, based on categorical approach, that both substantive and conspiracy violations of § 2339B "are, by their nature, crimes of violence" under § 924(c)(3)(B), as "providing material support and resources to a terrorist organization creates a substantial risk that the violent aims of the terrorists will be realized" and "[v]iolence, therefore, is intrinsic to the crimes").

In *Dimaya*, decided on April 17, 2018, the Supreme Court held that the definition of a "crime of violence" in § 16(b)—the language of which is nearly identical to the Risk-of-Force Clause in § 924(c)(3)(B)—is unconstitutionally vague as incorporated into the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(F). 138 S. Ct. at 1212, 1223. The *Dimaya* Court determined that "[t]wo features" on which it had previously relied to invalidate the "residual clause" of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii),[8] were also present in § 16(b). *Dimaya*, 138 S. Ct. at 1216 (quoting *Johnson* v. *United States*, 135 S. Ct. 2551, 2557 (2015)). The Court explained that § 16(b), like ACCA's residual clause, "calls for a court to identify a crime's 'ordinary case' in order to measure the crime's risk" and creates "uncertainty about the level of risk that makes a crime 'violent.'" *Id.* at 1215.

---

[8] ACCA's residual clause defined a "violent felony" to include a felony that "involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii).

**A000068**

2.      **Count One Qualifies as a Crime of Violence Pursuant to the "Underlying-Conduct" Approach Properly Applied to § 924(c)(3)(B) After *Dimaya*, But the Court Need Not Reach That Issue to Resolve the Defendant's Motion**

The defendant argues that *Dimaya* requires invalidation of § 924(c)(3)(B)'s Risk-of-Force Clause, such that § 2339B no longer qualifies as a crime of violence because that statute does not have as an element "the use, attempted use, or threatened use of physical force against the person or property of another," and therefore does not constitute a crime of violence under the remaining Force Clause of § 924(c)(3)(A). (Def. Mem. at 3-4). But *Dimaya* does not require invalidation of § 924(c)(3)(B). Instead, the Supreme Court's decision permits the application of an "underlying-conduct" approach that looks to the defendant's actual conduct, in lieu of the categorical approach, to determine whether an offense qualifies as a crime of violence under the Risk-of-Force Clause. Pursuant to the underlying-conduct approach, the § 2339B offense charged in the Indictment—which is based on the defendant's perpetration of a terrorist bombing—unquestionably qualifies as a crime of violence. The defendant does not and cannot argue otherwise.

The Supreme Court did not hold in *Dimaya* that § 16(b) requires a categorical approach, and left open that question for § 924(c)(3)(B). A four-Justice plurality of the Court viewed § 16(b)—which, unlike § 924(c)(3)(B), is often applied to classify a conviction previously entered by another court in an otherwise unrelated prior proceeding—as "[b]est read" to require a categorical approach not dependent on the particular facts of a case. *Dimaya*, 138 S. Ct. at 1217 (opinion of Kagan, J.). The plurality observed, however, that the Government had not asked the Court in *Dimaya* to abandon the categorical approach in the § 16(b) context. *Id.* And the *Dimaya* majority went out of its way to emphasize that the "substantial risk" language in § 16(b) raised constitutional concerns only when assessed under the categorical approach. *Id.* at 1215-

19

**A000069**

16. Notably, the Court disavowed the view that the substantial-risk feature "is alone problematic," and emphasized that "'we do not doubt' the constitutionality of applying § 16(b)'s 'substantial risk [standard] to real-world conduct.'" *Id.* at 1215 (quoting *Johnson*, 135 S. Ct. at 2561).

Justice Gorsuch, concurring in part and concurring in the judgment, stressed that the Government had conceded the applicability of the categorical approach in *Dimaya*, and expressed his willingness to consider "in another case" whether "precedent and the proper reading of language" like § 16(b)'s in fact requires a categorical analysis. *Id.* at 1233 (opinion of Gorsuch, J.). And Justice Thomas, joined by Justices Kennedy and Alito, filed a separate dissenting opinion expressing the view that the Court "should abandon [the categorical] approach" entirely under § 16(b). *Id.* at 1242 (opinion of Thomas, J.).

In light of *Dimaya*, courts in this Circuit should reconsider the categorical approach previously applied to the determination of whether an offense qualifies as a crime of violence under the Risk-of-Force Clause, and adopt in its place the underlying-conduct approach that many courts have espoused since *Johnson* and that the opinions in *Dimaya* suggest could constitute a valid replacement for the categorical approach.[9] A non-categorical approach, which looks to the defendant's actual conduct in the case at hand rather than the "ordinary case" of his

---

[9] Some of the many opinions since *Johnson* questioning the need for the categorical approach in § 924(c) cases include *United States* v. *St. Hubert*, 883 F.3d 1319, 1334-37 (11th Cir. 2018); *United States* v. *Cravens*, 2017 WL 6559798, at *6-8 (10th Cir. 2017) (O'Brien, J., concurring); *United States* v. *Eshetu*, 863 F.3d 946, 960-61 (D.C. Cir. 2017) (Millet, J., concurring in part and in judgment); *Ovalles* v. *United States*, 861 F.3d 1257, 1265-66 (11th Cir. 2017); *In re Irby*, 858 F.3d 231, 234 (4th Cir. 2017); *United States* v. *Galati*, 844 F.3d 152, 154-55 (3d Cir. 2016), *cert. denied*, 138 S. Ct. 636 (2018); *United States* v. *Rodriguez*, 2018 WL 1744734, at *3 (M.D. Pa. 2018); *United States* v. *Henderson*, 2017 WL 3820960, at *3-6 (M.D. Ga. 2017); *United States* v. *Hernandez*, 228 F. Supp. 3d 128, 131 (D. Me. 2017); and *United States* v. *Correia*, 2017 WL 80245, at *1 n.1 (D. Mass. 2017).

20

**A000070**

crime, makes particular sense in the context of § 924(c)(3)(B).  Conviction under § 924(c) requires a jury to find (or the defendant to admit through a plea) that the defendant committed a specified crime of violence with a sufficient nexus to his use, carrying, or possession of a firearm, *United States* v. *Rodriguez-Moreno*, 526 U.S. 275, 280 (1999), which inherently requires a jury's consideration of, and determinations about, the unlawful course of conduct charged as a "crime of violence."

Unlike § 16(b) or ACCA's residual clause, § 924(c)(3)(B)'s definition of a "crime of violence" is never applied to a prior conviction, the specific facts of which may not be before the court.  Section 924(c) instead employs the term "crime of violence" to describe the conduct involved in the present offense charged against the defendant.  *See* 18 U.S.C. § 924(c)(1)(A); *Galati*, 844 F.3d at 155 (holding that categorical approach does not apply to § 924(c) for that very reason); *St. Hubert*, 883 F.3d at 1335 (§ 924(c) prosecution necessarily involves a "developed factual record"); *cf. Dimaya*, 138 S. Ct. at 1214 ("[W]e do not doubt the constitutionality of laws that call for the application of a qualitative standard such as 'substantial risk' to real-world conduct." (quoting *Johnson*, 135 S. Ct. at 2561)); *Johnson*, 135 S. Ct. at 2561 (noting that "dozens of federal and state criminal laws" use terms such as "substantial risk," and that "almost all" of them "require gauging the riskiness of conduct in which an individual defendant engages *on a particular occasion*" (emphasis in original)).

It follows that, where a § 924(c) charge relies on the Risk-of-Force Clause, whether the defendant's underlying conduct meets that test is a mixed question of law and fact that can and should be resolved by a jury at trial or admitted by the defendant in connection with a guilty plea.  *See United States* v. *Gaudin*, 515 U.S. 506, 513, 522-23 (1995) (noting that, with the exception of "pure questions of law," "[t]he Constitution gives a criminal defendant the right to

<div align="center">21</div>

<div align="right">**A000071**</div>

have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged" (emphasis omitted)). This approach eliminates the vagueness concerns identified in *Dimaya* by ensuring that the specifics of the crime actually committed by the defendant—rather than some hypothetical version of the offense—are presented to and found beyond a reasonable doubt by the jury. Such an approach also comports with modern interpretations of the Sixth Amendment jury trial right, which directs that fact-bound aspects of criminal offenses be determined by the jury. *See Apprendi* v. *New Jersey*, 530 U.S. 466, 490 (2000) (holding that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt"). Adopting the underlying-conduct approach for the Risk-of-Force Clause is also consistent with the canon of constitutional avoidance, which obligates a court "to construe [a] statute to avoid [constitutional] problems" if it is "fairly possible" to do so. *See INS* v. *St. Cyr*, 533 U.S. 289, 300 (2001) (internal quotation marks omitted).

Importantly, failing to find a constitutionally valid construction of the Risk-of-Force Clause would have real-world consequences that cannot be ignored. Operating by itself, a categorical approach to the Force Clause of § 924(c)(3)(A) based on the elements of the statute, if not tempered by the availability of a valid Risk-of-Force Clause applying to the actual facts at hand, risks effectively immunizing from § 924(c) liability those who commit heinously violent crimes like murder and even—as in this case—terrorist bombings in the course of violating a variety of federal statutes, including § 2339B. A determination that a person who provides support to a violent terrorist organization like ISIS by bombing a crowded subway terminal in Manhattan somehow has not committed a "crime of violence"—which is what accepting the defendant's challenge to Count One would mean—would be difficult to square with any

22

**A000072**

semblance of logic and would subvert the purposes underlying § 924(c). *See United States* v. *Walker*, 473 F.3d 71, 78 (3d Cir. 2007) ("Congress's 'overriding purpose' in passing Section 924(c) 'was to combat the increasing use of guns to commit federal felonies.'" (quoting *Simpson* v. *United States*, 435 U.S. 6, 10 (1978)); *United States* v. *Doctor*, 842 F.3d 306, 313 (4th Cir. 2016) (Wilkinson, J., concurring) ("The alluring theoretical terminology of the categorical approach has too often served to isolate [judges] in a judicial bubble, sealed conveniently off from the real-life dangers that confront American citizens in their actual lives."). Adopting the workable and constitutional underlying-conduct approach avoids that untenable result.

In sum, construing § 924(c)(3)(B)'s Risk-of-Force Clause to require that the determination of whether an offense qualifies as a "crime of violence" under that provision be based on the defendant's actual conduct comports with the text and context of the statute, is consistent with *Dimaya*, is supported by the canon of constitutional avoidance, and accords with logic and the policy underlying § 924(c). The Government has briefed this issue more fully in an appeal pending in the Second Circuit. *See* Gov't Supp. Br., *United States* v. *Barrett*, No. 14-2641 (2d Cir.), filed May 4, 2018. A copy of the Government's supplemental brief in *Barrett* is attached hereto as Exhibit A, and the Government's arguments set forth in that brief are incorporated by reference herein.

As explained in the Government's supplemental brief in *Barrett* (*see* Ex. A at 6-8), although the Second Circuit's existing precedents applied the categorical approach to § 924(c)(3)(B), in light of *Dimaya*, the Second Circuit may reconsider that analysis without in banc proceedings, and similarly nothing precludes this Court from addressing this issue. *See United States* v. *Gill*, 748 F.3d 491, 502 n.8 (2d Cir. 2014) ("[I]f there has been an intervening

<div align="center">23</div>

<div align="right">**A000073**</div>

Supreme Court decision that casts doubt on our controlling precedent, one panel of this Court may overrule a prior decision of another panel." (internal quotation marks omitted)); *United States* v. *Martoma*, 869 F.3d 58, 68-69 (2d Cir. 2017) ("Even if the effect of a Supreme Court decision is subtle, it may nonetheless alter the relevant analysis fundamentally enough to require overruling prior, inconsistent precedent." (internal quotation marks omitted)); *see also Shi Liang Lin* v. *U.S. Dep't of Justice*, 494 F.3d 296, 310 (2d Cir. 2007) ("While *stare decisis* is undoubtedly of considerable importance to questions of statutory interpretation, the Supreme Court ha[s] never applied *stare decisis* mechanically to prohibit overruling . . . earlier decisions determining the meaning of statutes.  We should not do so either." (internal quotation marks and citation omitted)).  Since *Dimaya*, district courts in other circuits that have considered whether the Risk-of-Force Clause requires application of a categorical approach have reached varying results.  *See, e.g.*, *United States* v. *Chavez*, 2018 WL 3609083, at \*9-17 (N.D. Cal. 2018) (concluding that categorical approach applies to § 924(c)(3)(B) and that clause is therefore unconstitutionally vague); *Chapman* v. *United States*, 2018 WL 3470304, at \*11-14 (E.D. Va. 2018) (concluding that § 924(c)(3)(B) is properly reinterpreted to require application of underlying-conduct approach, and that *Dimaya* therefore does not invalidate that clause).[10]

---

[10] The district court in *Chapman* also rejected the defendant's argument that existing Fourth Circuit precedents—which, like existing Second Circuit precedents, applied the categorical approach to § 924(c)(3)(B)—prevented the court from interpreting that clause to require a conduct-specific approach.  2018 WL 3470304, at \*12 n.14 (concluding that although Fourth Circuit has applied categorical approach to § 924(c)(3)(B), "it did so before *Dimaya* brought to light the constitutional concerns with such an interpretation," such that, "at the most, these Fourth Circuit cases stand for the proposition that the [categorical] approach was the best interpretation of § 924(c)(3)(B) before *Johnson* and *Dimaya*," and "[b]ecause the inquiry before [the district court] is materially different than the inquiry engaged in by the Fourth Circuit in [its existing precedents], these cases do not foreclose [the district court] from adopting a conduct-specific approach to the residual clause [of § 924(c)(3)(B)]).  The same is true here.

**A000074**

In any event, the Court need not reach the issue of whether Count One qualifies as a crime of violence, because the § 924(c) charge in Count Six is also predicated on other offenses alleged in the Indictment that indisputably qualify as crimes of violence for purposes of § 924(c) under the Force Clause, and the defendant does not argue otherwise. *See supra* at 8-10. As discussed above, the defendant's argument that Count Six nonetheless fails on double-jeopardy grounds is meritless, and his motion therefore fails as a matter of law.

## CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss Count Six of the Indictment should be denied without a hearing.

Dated: August 7, 2018
New York, New York

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By:                          /s/               
Shawn G. Crowley/Rebekah Donaleski/George D. Turner
Assistant United States Attorneys
212-637-1034/2423/2562

25

**A000075**

# 14-2641

## United States Court of Appeals

### FOR THE SECOND CIRCUIT
### Docket No. 14-2641

———◄•►———

UNITED STATES OF AMERICA,

*Appellee,*

—v.—

DWAYNE BARRETT, also known as Sealed Defendant 3, also known as Tall Man,

*Defendant-Appellant,*

FAHD HUSSAIN, also known as Ali, also known as Moe, TAMESHWAR SINGH, also known as Sealed Defendant 5, SHEA DOUGLAS, JERMAINE DORE, also known as St. Kitts, also known as Blaqs, TAIJAY TODD, also known as Sealed Defendant 4, also known as Biggs, DAMIAN CUNNINGHAM, also known as Jaba,

———————

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## SUPPLEMENTAL BRIEF FOR
## THE UNITED STATES OF AMERICA

GEOFFREY S. BERMAN,
*United States Attorney for the
Southern District of New York,
Attorney for the United States
of America.*
One St. Andrew's Plaza
New York, New York 10007
(212) 637-2200

KARL METZNER,
MICHAEL D. MAIMIN,
*Assistant United States Attorneys,
Of Counsel.*

A000076

## TABLE OF CONTENTS

PAGE

Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

POINT I—The Current Categorical Approach and
Grounds for Panel Reconsideration . . . . . . . . . .  6

POINT II—Section 924(c)(3)(B) Should Be
Interpreted To Require An Underlying-
Conduct Approach . . . . . . . . . . . . . . . . . . . . . . . .  8

    A.   The Text and Context of § 924(c)(3)(B)
Support An Underlying-Conduct
Approach . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

    B.   The Reasons For Applying The
Categorical Approach To Other Statutes
Do Not Apply To § 924(c)(3)(B) . . . . . . . . .  14

POINT III—The Failure to Ask The Jury to Find
that the Conspiracy to Commit Hobbs Act
Robbery in Count One Was A "Crime of
Violence" Was Demonstrably Harmless . . . . .  22

    A.   Standard of Review. . . . . . . . . . . . . . . . . . .  22

    B.   Discussion . . . . . . . . . . . . . . . . . . . . . . . . . .  25

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  30

**A000077**

ii

PAGE

**TABLE OF AUTHORITIES**

*Cases*:

*Apprendi v. New Jersey,*
    530 U.S. 466 (2000). . . . . . . . . . . . . . . . . . . . . . . . 18

*Ayotte v. Planned Parenthood,*
    546 U.S. 320 (2006). . . . . . . . . . . . . . . . . . . . . . . . 19

*Chambers v. United States,*
    555 U.S. 122 (2009). . . . . . . . . . . . . . . . . . . . . . . . 19

*Corley v. United States,*
    556 U.S. 303 (2009). . . . . . . . . . . . . . . . . . . . . . . . 12

*Estate of Cowart v. Nicklos Drilling Co.,*
    505 U.S. 469 (1992). . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Irby,*
    858 F.3d 231 (4th Cir. 2017) . . . . . . . . . . . . . . . 18

*INS v. St. Cyr,*
    533 U.S. 289 (2001). . . . . . . . . . . . . . . . . . . . . . . . 7

*Johnson v. United States,*
    135 S. Ct. 2551 (2015). . . . . . . . . . . . . . . . . . *passim*

*Johnson v. United States,*
    520 U.S. 461 (1997). . . . . . . . . . . . . . . . . . . . . . . . 23

*Johnson v. United States,*
    779 F.3d 125 (2d Cir. 2015) . . . . . . . . . . . . . . . . . 9

*Leocal v. Ashcroft,*
    543 U.S. 1 (2004). . . . . . . . . . . . . . . . . . . . . . . . 15, 16

**A000078**

iii

PAGE

*Lotes Co. v. Hon Hai Precision Indus. Co.,*
    753 F.3d 395 (2d Cir. 2014) . . . . . . . . . . . . . . . . . 8

*Mathis v. United States,*
    136 S. Ct. 2243 (2016). . . . . . . . . . . . . . . . . . . . . 10

*Moncrieffe v. Holder,*
    569 U.S. 184 (2013). . . . . . . . . . . . . . . . . . . . 15, 16

*Neder v. United States,*
    527 U.S. 1 (1999). . . . . . . . . . . . . . . . . . . . . 25, 29

*Nijhawan v. Holder,*
    557 U.S. 29 (2009). . . . . . . . . . . . . . . . . . . . . 9, 15

*Ovalles v. United States,*
    861 F.3d 1257 (11th Cir. 2017) . . . . . . . . . . . . . 18

*Rosemond v. United States,*
    134 S. Ct. 1240 (2014). . . . . . . . . . . . . . . . . . . . 24

*Sessions v. Dimaya,*
    138 S. Ct. 1204 (2018). . . . . . . . . . . . . . . . 3, 5, 11

*Shepard v. United States,*
    544 U.S. 13 (2005). . . . . . . . . . . . . . . . . . . . 16, 17

*Shi Liang Lin v. United States Dep't of Justice,*
    494 F.3d 296 (2d Cir. 2007) . . . . . . . . . . . . . . . . 8

*Simpson v. United States,*
    435 U.S. 6 (1978). . . . . . . . . . . . . . . . . . . . . . . . 19

*Skilling v. United States,*
    561 U.S. 358 (2010). . . . . . . . . . . . . . . . . . . . . . . 6

*Taylor v. United States,*
    495 U.S. 575 (1990). . . . . . . . . . . . . . . . . . . *passim*

**A000079**

Case 14-2641, Document 225, 09/04/2018, 2395470, Page5 of 39

iv

PAGE

*United States ex rel. Attorney General v.*
　　*Delaware & Hudson Co.,*
　　213 U.S. 366 (1909). . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Acosta,*
　　470 F.3d 132 (2d Cir. 2006) . . . . . . . . . . . . . . . 6, 8

*United States v. Carr,*
　　424 F.3d 213 (2d Cir. 2005) . . . . . . . . . . . . . . . . 25

*United States v. Correia,*
　　2017 WL 80245 n.1 (D. Mass. Jan. 9, 2017) . . . . 18

*United States v. Cravens,*
　　2017 WL 6559798 (10th Cir. Dec. 19, 2017) . . . . 18

*United States v. Crosby,*
　　397 F.3d 103 (2d Cir. 2005) . . . . . . . . . . . . . . . . 23

*United States v. Davis,*
　　726 F.3d 357 (2d Cir. 2013) . . . . . . . . . . . . . . . 13

*United States v. Davis,*
　　875 F.3d 592 (11th Cir. 2017) . . . . . . . . . . . . . . 20

*United States v. Doctor,*
　　842 F.3d 306 (4th Cir. 2016) . . . . . . . . . . . . . . . 21

*United States v. Doe,*
　　297 F.3d 76 (2d Cir. 2002) . . . . . . . . . . . . . . 23, 24

*United States v. Eshetu,*
　　863 F.3d 946 (D.C. Cir. 2017). . . . . . . . . . . . . . . 18

*United States v. Frady,*
　　456 U.S. 152 (1982). . . . . . . . . . . . . . . . . . . . . . . 25

**A000080**

v

PAGE

*United States v. Fuertes,*
805 F.3d 485 (4th Cir. 2015) . . . . . . . . . . . . . . . 20

*United States v. Galati,*
844 F.3d 152 (3d Cir. 2016) . . . . . . . . . . . . . . . 18

*United States v. Gansman,*
657 F.3d 85 (2d Cir. 2011) . . . . . . . . . . . . . . . . 25

*United States v. Gaudin,*
515 U.S. 506 (1995). . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Gill,*
748 F.3d 491 (2d Cir. 2014) . . . . . . . . . . . . . . . 7

*United States v. Hayes,*
555 U.S. 415 (2009). . . . . . . . . . . . . . . . . . . . . 9, 21

*United States v. Henderson,*
2017 WL 3820960 (M.D. Ga. Aug. 31, 2017). . . . 18

*United States v. Henry,*
325 F.3d 93 (2d Cir. 2003) . . . . . . . . . . . . . . . . 23

*United States v. Hernandez,*
228 F. Supp. 3d 128 (D. Me. 2017). . . . . . . . . . . 18

*United States v. Hill,*
832 F.3d 135 (2d Cir. 2016) . . . . . . . . . . . 2, 3, 4, 6

*United States v. Ivezaj,*
568 F.3d 88 (2d Cir. 2009) . . . . . . . . . . . . . . . . 6

*United States v. Jenkins,*
849 F.3d 390 (7th Cir. 2017) . . . . . . . . . . . . . . 20

*United States v. Martoma,*
869 F.3d 58 (2d Cir. 2017) . . . . . . . . . . . . . . . . 7

**A000081**

vi

PAGE

*United States v. McCollum,*
  885 F.3d 300 (4th Cir. 2018) . . . . . . . . . . . . . . . 20

*United States v. Olano,*
  507 U.S. 725 (1993). . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Prado,*
  815 F.3d 93 (2d Cir. 2016) . . . . . . . . . . . . . . . 23, 24

*United States v. Rivera,*
  679 F. App'x 51 (2d Cir. 2017) . . . . . . . . . . . . . . 22

*United States v. Robinson,*
  844 F.3d 137 (3d Cir. 2016) . . . . . . . . . .  16, 17, 18

*United States v. Rodriguez,*
  2018 WL 1744734 (M.D. Pa. Apr. 11, 2018) . . . . 18

*United States v. Santana,*
  552 F. App'x 87 (2d Cir. 2014) . . . . . . . . . . . . . . 24

*United States v. St. Hubert,*
  883 F.3d 1319 (11th Cir. 2018) . . . . . . . .  9, 17, 18

*United States v. Thomas,*
  274 F.3d 655 (2d Cir. 2001) . . . . . . . . . . . . . . . . 22

*United States v. Villafuerte,*
  502 F.3d 204 (2d Cir. 2007) . . . . . . . . . . . . . . . . 24

*United States v. Viola,*
  35 F.3d 37 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . 23

*United States v. Walker,*
  473 F.3d 71 (3d Cir. 2007) . . . . . . . . . . . . . . . . . 19

A000082

vii

PAGE

*Statutes, Rules & Other Authorities*:

8 U.S.C. § 1326(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . 17

18 U.S.C. § 16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 15

18 U.S.C. § 1951 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. § 921(a)(33)(A) . . . . . . . . . . . . . . . . . . . . . . 9

18 U.S.C. § 924(c) . . . . . . . . . . . . . . . . . . . . . . . *passim*

18 U.S.C. § 3553(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . 11

Fed. R. Crim. P. 52(a). . . . . . . . . . . . . . . . . . . . . . . . 25

A000083

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
UNITED STATES OF AMERICA,                  :

    -against-                              :      18 Cr. 16 (RJS)

AKAYED ULLAH,                              :

    Defendant.                             :

-------------------------------------------------------x

## REPLY MEMORANDUM OF LAW IN SUPPORT OF AKAYED ULLAH'S MOTION <u>TO DISMISS THE 18 U.S.C. § 924(c) CHARGE</u>

> David E. Patton
> Federal Defenders of New York, Inc.
> Attorney for Defendant
>   Akayed Ullah
> 52 Duane Street, 10th Floor
> New York, New York 10007
> Tel.: (212) 417-8700
>
>     Amy Gallicchio
>     Julia Gatto
>       *Of Counsel*

TO:   Geoffrey S. Berman
       United States Attorney
       Southern District of New York
       One St. Andrew's Plaza
       New York, New York 10007

          Attn.: Shawn Crowley
              George Turner
              Rebekah Donaleski
              Assistant United States Attorneys
              Southern District of New York

**A000084**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT ................................................................................................................... 2

    I.    Because Count Six fails to state an offense under 18 U.S.C. § 924(c),
          it  must be dismissed. ......................................................................................... 2

        a.   Section 924(c) requires a separate and distinct crime of violence. ................... 4

        b.   The Government's "Double Jeopardy" argument must be rejected.................. 7

        c.   The decision in *United States v. Rahimi* does not compel the denial
           of Mr. Ullah's motion. ................................................................................ 9

    II.   Count One is not a crime of violence after *Dimaya*. ....................................... 11

CONCLUSION ............................................................................................................... 15

**A000085**

## TABLE OF AUTHORITIES

**Cases**

*Bennett v. United States,*
868 F.3d 1 (1st Cir. 2017) ................................................................... 4

*Castillo v. United States,*
530 U.S. 120 (2000) ............................................................................. 4

*Corley v. United States,*
556 U.S. 303 (2009) ......................................................................... 5, 6

*Descamps v. United States,*
570 U.S. 254 (2013) ........................................................................... 14

*Evans v. Zych,*
644 F.3d 447 (6th Cir. 2011) ............................................................. 13

*Hylton v. Sessions,*
897 F.3d 57, 2018 WL 3483561 (2nd Cir. 2018) ................................. 3

*Johnson v. United States,*
559 U.S. 133 (2010) ........................................................................... 14

*Leocal v. Ashcroft,*
543 U.S. 1 (2004) ......................................................................... 14, 15

*Life Techs. Corp. v. Promega Corp.,*
137 S. Ct. 734 (2017) ........................................................................... 6

*Moncrieffe v. Holder,*
569 U.S. 184 (2013) ........................................................................... 14

*Rosemond v. United States,*
134 S. Ct. 1240 (2014) ................................................ 1, 2, 4, 5, 7, 8, 9

*Sessions v. Dimaya,*
138 S. Ct. 1204 (2018) ............................................... 2, 11, 12, 14, 15

*Simpson v. United States,*
435 U.S. 6 (1978) ................................................................................ 4

*Taylor v. United States,*
495 U.S. 575 (1990) ........................................................................... 14

*Torres v. Lynch,*
136 S. Ct. 1609 (2016) ................................................................... 4, 14

**A000086**

*United States v. Acosta*,
  470 F.3d 132 (2d Cir. 2006) (per curiam) ........................................................ 13

*United States v. Amparo*,
  68 F.3d 1222 (9th Cir. 1995) ........................................................ 13

*United States v. Bushey*,
  617 F.Supp. 292 (D. Vt. 1985) ........................................................ 4

*United States v. Fish*,
  758 F.3d 1 (1st Cir. 2014) ........................................................ 4

*United States v. Fuertes*,
  805 F.3d 485 (4th Cir. 2015) ........................................................ 13

*United States v. Hill*,
  ___ F. 3d ___, 2018 WL 2122417 (2d Cir. May 9, 2018) ........................................................ 12

*United States v. Ivezaj*,
  568 F.3d 88 (2d Cir. 2009) ........................................................ 12-13

*United States v. Jennings*,
  195 F.3d 795 (5th Cir. 1999) ........................................................ 13

*United States v. Kennedy*,
  133 F.3d 53 (D.C. Cir. 1998) ........................................................ 13

*United States v. Khalil*,
  214 F.3d 111 (2d Cir. 2000) ........................................................ 2, 8, 10

*United States v. McGuire*,
  706 F.3d 1333 (11th Cir. 2013) ........................................................ 13

*United States v. Mohammed*,
  27 F.3d 815 (2d Cir. 1994) ........................................................ 2, 7, 8

*United States v. Prickett*,
  839 F.3d 697 (8th Cir. 2016) ........................................................ 13

*United States v. Robinson*,
  844 F.3d 137 (3d Cir. 2016) ........................................................ 13

*United States v. Rodriguez-Moreno*,
  526 U.S. 275 (1999) ........................................................ 1, 2, 4, 5, 6, 7, 8, 9

*United States v. Salameh*,
  261 F.3d 217 (2d Cir. 2001) ........................................................ 2, 7, 8, 10, 11

iii

**A000087**

*United States v. Serafin,*
562 F.3d 1105 (10th Cir. 2009) ................................................................. 13

*United States v. Smith,*
502 F.3d 680 (7th Cir. 2007) .................................................................... 10

*United States v. Taylor,*
848 F.3d 476 (1st Cir. 2017) .................................................................... 13

*United States v. Windley,*
864 F.3d 36 (1st Cir. 2017) ................................................................. 4, 13

*United States v. Salas*
889 F.3d 681 (10th Cir. 2018) ............................................................ 2, 3, 12

## **Statutes**

18 U.S.C. § 844 ....................................................................... passim

18 U.S.C. § 924(c) ................................................................... passim

18 U.S.C. § 2332a ......................................................................... 3, 8

18 U.S.C. § 2339B ....................................................................... 8, 11

18 U.S.C. § 16 .......................................................................... 12, 14

18 U.S.C. § 2119 ............................................................................. 8

18 U.S.C. §2332f .............................................................................. 8

**A000088**

## PRELIMINARY STATEMENT

The opening memorandum established that Count Six of the indictment fails to allege a "crime of violence" separate from the use of a bomb and, as such, must be dismissed. In its Opposition, the Government says the requirement of a separate and distinct crime of violence "does not exist", Opp. Br. at 10, but fails to cite even one case endorsing its position. Instead, the Government focuses its argument on Double Jeopardy and multiplicity issues that Mr. Ullah did not raise.

The text of § 924(c) plainly requires the use of a bomb not "during and in relation to," or "in furtherance of," the use of that same bomb but, rather, in relation to a "separate," *Rosemond v. United States*, 134 S. Ct. 1240, 1247 (2014), and "distinct," *United States v. Rodriguez-Moreno*, 526 U.S. 275, 280 (1999), crime of violence. None is alleged here. Count Six must be dismissed. Fed. R. Crim. P. 12(3)(B)(v).

**A000089**

## ARGUMENT

**I.** **Because Count Six fails to state an offense under 18 U.S.C. § 924(c), it must be dismissed.**

"Elements of a crime must be charged in an indictment." *United States v.O'Brien*, 560 U.S. 218, 224 (2010). One element of a § 924(c) offense is the commission of a crime of violence that is "separate," *Rosemond*, 134 S. Ct. at 1247, and "distinct," *Rodriguez-Moreno*, 526 U.S. at 280, from, simply, using a bomb. Because Count Six fails to allege such conduct, it fails to state a § 924(c) offense.

The Government claims the requirement of a separate and distinct crime of violence "does not exist." Opp. Br. at 10. But the cases the Government cites are Double Jeopardy cases, not ones addressing the elements of § 924(c). *See* Opp. Br. at 10-12 (citing *United States v. Salameh*, 261 F.3d 271 (2d Cir. 2001); *United States v. Mohammed*, 27 F.3d 815 (2d Cir. 1994); *United States v. Khalil*, 214 F.3d 111 (2d Cir. 2000)). Nothing in the cases the Government cites undoes the Supreme Court's recognition that § 924(c) is a "combination crime" requiring "two separate acts." *Rosemond*, 134 S. Ct. at 1248. There is "no doubt that § 924(c) describes a firearm offense that is distinct from the underlying crime of violence." *Khalil*, 214 F.3d at 120.

Notably, the Government does not include Count Four, charging a violation of 18 U.S.C. 844(i), in its discussion of qualifying predicate crimes of violence in relation to §924(c). It acknowledges that the 10th Circuit in *United States v. Salas*, 889 F.3d 681 (10th Cir. 2018), recently held (on plain error review), following the decision in *Sessions v. Dimaya,* 138 S. Ct, 1204 (2018), that § 844(i) only qualifies as

**A000090**

a crime of violence under the now unconstitutionally vague §924(c)(3)(B). See Opp. Br. at 9 n. 1. In *Salas*, the Court held (and the Government in *Salas* agreed), "that the first definition, known as the 'elements clause,' does not apply here because §844(i) arson does not require, as an element, the use of force against the property 'of another'; for example, § 844(i) may apply to a person who destroys his or her own property." *Salas,* 889 F.3d at 684.

The Second Circuit has not addressed this issue but, in light of the sound reasoning in *Salas*, the Court should find that §844(i) no longer qualifies as a predicate crime of violence in light of *Dimaya*.[1] Under the applicable categorical approach, § 844(i) does not have, as an element, the use of physical force against the property "of another," as § 924(c)(3)(A)'s force clause requires. Rather, one can violate § 844(i) by destroying one's own property—for example, by burning one's

---

[1] While this issue was not raised in the opening memorandum, there is no prejudice to the Government who obviously was aware of the decision in *Salas*. Furthermore, the Court can permit the Government to file a sur reply memorandum should further briefing be required.

Though similarly not raised in the opening memorandum, following the same reasoning of *Salas*, Count Two, charging violations of 18 U.S.C. § 2332(a)(2)(A)-(D), likewise, no longer qualifies, post-*Dimaya,* as a predicate crime of violence under § 924(c)(3)(A). The statute prohibits a person to use, threaten, or attempt or conspire to use, a weapon of mass destruction "against *any* person or property within the United States" (emphasis added). Like § 844(i), § 2332(a)(2) does not require that the property be "of another." While we have not identified any cases demonstrating a realistic probability that § 2332(a) would apply to the use of a destructive device against one's own property, there is no such requirement when, as is the case here, "the statutory language itself, rather than the application of legal imagination to that language creates that realistic probability . . . ," *Hylton v. Sessions*, 897 F.3d 57, 2018 WL 3483561 at *5 (2nd Cir. 2018) (citations omitted).

As the Government points out regarding § 844(i), Opp. Br. p. 9 n. 1, irrespective of whether § 844(i) and now § 2332(a) are crimes of violence, the Court can conduct its analysis of the question of whether § 924(c) requires a separate and distinct crime of violence in relation to the charges contained in the remaining Counts Three and Five.

3

**A000091**

own failing business for the insurance proceeds—removing this offense from § 924(c)(3)(A)'s sweep. *See Torres v. Lynch*, 136 S. Ct. 1609, 1630 (2016). In addition, one can violate § 844(i) with a reckless mens rea, short of the intentional conduct that § 924(c)(3)(A) demands. *See United States v. Windley*, 864 F.3d 36, 39 (1st Cir. 2017); *Bennett v. United States*, 868 F.3d 1, 8 (1st Cir. 2017). The same result obtains without *Dimaya*: even if valid, § 924(c)(3)(B) also requires intentional conduct, not mere recklessness. *See United States v. Fish*, 758 F.3d 1, 9–10 (1st Cir. 2014).

As will be discussed further herein, Count One likewise is no longer a crime of violence in light of *Dimaya*.

a. Section 924(c) requires a separate and distinct crime of violence.

Despite the fact that the Supreme Court has stated repeatedly that §924(c) requires a crime of violence separate from the use of a firearm, the Government refuses to accept it. *See Rodriguez-Moreno*, 526 U.S. at 280 (Section 924(c) "contains two distinct conduct elements—as is relevant to this case, the 'using and carrying' of a [bomb] and the commission of a [crime of violence]"); *Rosemond*, 134 S. Ct. at 1247; *Castillo v. United States*, 530 U.S. 120, 125 (2000); *Simpson v. United States*, 435 U.S. 6, 10 (1978); *see also United States v. Bushey*, 617 F.Supp. 292, 294 n.3 (D. Vt. 1985).

The *Rodriguez-Moreno* Court's holding is not "isolated *dicta* out of context." Opp. Br. at 8 n.3. While the case did indeed "relate[] to venue under Section 924(c)," *id.*, in deciding whether venue was proper, the *Rodriguez-Moreno* Court was

4

**A000092**

required to "identify the conduct constituting the offense," and, in so doing, observed that the commission of a crime of violence was "an essential conduct element of the § 924(c)(1) offense." 526 U.S. at 279-80 ("[W]e interpret § 924(c)(1) to contain two distinct conduct elements—as is relevant to this case, the 'using and carrying' of a gun and the commission of a [crime of violence].").

The Supreme Court in *Rosemond*, reaffirmed this holding. *See* 134 S. Ct. at 1248 (§ 924(c) "is, to coin a term, a combination crime. It punishes the temporal and relational conjunction of two separate acts," namely using a firearm to further a crime distinct from "just [] using" a firearm); *see also id.* at 1246 (§ 924(c) is a "two-element crime"). The fact that *Rosemond* addressed "aiding and abetting liability," Opp. Br. at 8 n.3, is inapposite: assessing whether a crime has been aided and abetted requires understanding "commission of the crime" itself, and commission of a § 924(c) offense requires "two separate acts." *Rosemond*, 134 S. Ct. at 1245, 1248.

The text of § 924(c) dictates the requirement of a distinct crime of violence by punishing not just using a bomb but doing so "during and in relation to" or "in furtherance of "a crime of violence." Congress could have written § 924(c) to cover any use of a bomb. But "Congress did not write the statute that way." *Corley v. United States*, 556 U.S. 303, 315 (2009). The Government's reading of § 924(c) makes the "in relation to" language meaningless because Mr. Ullah's alleged use of a bomb was not "in relation to" a crime of violence; it *was* the crime of violence. The Government's reading not only ignores *Rodriguez-Moreno* and *Rosemond*, but also violates the rule that courts "should favor an interpretation that gives meaning to

5

**A000093**

each statutory provision." *Life Techs. Corp. v. Promega Corp.*, 137 S. Ct. 734, 740 (2017). The Government claim that this rule should yield to "plain meaning," Opp. Br. at 13, only helps Mr. Ullah: given the "in relation to" language, the plain meaning of § 924(c) is that the use of a bomb must be related not to the use of that same bomb (which is nonsensical), but to a separate crime of violence. *See Corley*, 556 U.S. at 314; *Rodriguez-Moreno*, 526 U.S. at 280 & n.4.

The Government disputes this, arguing that the alleged crimes of violence charged in Counts Two, Three and Five require the additional conduct of, for example, using a bomb against targets "within the United States," with "intent to cause either death or serious bodily injury," or "intent to endanger the safety of any person, or with a reckless disregard for the safety of human life," and "under additional circumstances, such as the 'perpetrator is a national of another state.'" Opp. Br. at 14 (citations omitted). These are *mens rea* and jurisdictional elements that are immaterial to the wholly separate question of whether the Government has adequately alleged § 924(c)'s "two distinct conduct elements—as is relevant to this case, the 'using and carrying' of a [bomb] and the commission of a [crime of violence]." *Rodriguez-Moreno*, 526 U.S. at 280.

The use of a bomb is alleged here, but a violent crime with a conduct element other than using that bomb is not. The sole conduct alleged is using a bomb. The Government fails to cite even one case endorsing its using-a-bomb- while-using-a-bomb theory and points to no authority sustaining the kind of indictment here.

6

**A000094**

In contrast, Mr. Ullah has identified the Supreme Court rulings recognizing what the Government denies: a proper § 924(c) count alleges a "combination crime" consisting of "two separate acts" rather than "just [] using" a bomb. *Rosemond*, 134 S. Ct. at 1248. Count Six fails this test, as it does not allege conduct separate and distinct from using a bomb.

b.  <u>The Government's "Double Jeopardy" argument must be rejected.</u>

Ignoring the plain language of § 924(c) and case law interpreting it, the Government creates and then attacks a non-existing Double Jeopardy issue. Opp. Br. at 11-12 (citing *Salameh*, *Mohammed*, and *Khalil*). Besides the obvious point that Mr. Ullah has not raised a Double Jeopardy objection, the fact is that none of these cases does away with § 924(c)'s requirement that the use of a firearm be "separate," *Rosemond*, 134 S. Ct. at 1247, and "distinct," *Rodriguez-Moreno*, 526 U.S. at 280, from the crime of violence.

In *Salameh*, 261 F.3d at 277, and *Mohammed*, 27 F.3d at 818, the defendants argued that their § 924(c) sentences violated the Double Jeopardy Clause for punishing them for the same conduct as their crime-of-violence sentences. The Supreme Court rejected that argument, explaining "there is generally no constitutional bar to the imposition . . . of multiple punishments for the same criminal conduct" so long as "Congress has clearly articulated that intent," which Congress did when amending § 924(c) in 1984. *Salameh*, 261 F.3d at 277-78; *see* 18 U.S.C. § 924(c)(1)(A) (1984 amendment making clear that § 924(c) applies even if the underlying "crime of violence . . . provides for an enhanced punishment if

7

**A000095**

committed by the use of a deadly or dangerous weapon or device"). Neither *Salameh*, *Mohammed*, nor the 1984 amendment changed § 924(c)'s requirement that the "conduct element" of the crime of violence be "distinct," *Rodriguez-Moreno*, 526 U.S. at 280, and "separate," *Rosemond*, 134 S. Ct. at 1247, from mere use of a bomb.

The Government also claims that *Mohammed* forecloses Mr. Ullah's argument that the § 924(c) charges "violate the rule that a more specific statute will be given precedence over a more general one." Opp. Br. at 13 (citations omitted). But the *Mohammed* Court said the rule did not apply because there was "no conflict" between § 2119's penalties for carjacking and § 924(c)'s instruction that a carjacking committed with a gun should receive additional punishment. 27 F.3d at 821. Here, by contrast, there is a conflict because Congress has not prescribed additional penalties on top of those that §§ 2339B, 2332a, 2332f, 844(i), and 1992(a) already provide for a crime whose only conduct element is the use of a bomb. Those statutes were written to address the specific offenses alleged here, whereas § 924(c) covers the kind of "combination crime," requiring "two separate acts," *Rosemond*, 134 S. Ct. at 1248, that Mr. Ullah's indictment does not charge.

*Khalil* is equally unavailing. There, the Court rejected a Double Jeopardy challenge (which, again, Mr. Ullah has not made) to a § 924(c) conviction, because the § 924(c) penalty was based on § 2332a convictions for "conspiring to use a bomb and threatening to do so," neither of which "required proof of the active employment or the actual conveyance of the weapon." 214 F.3d at 120. Here, of course, use of a

8

**A000096**

bomb is the sole conduct element of the crime-of-violence and § 924(c) charges alike: the use of a bomb is here alleged to be the conduct that violates both the crime-of-violence element and use of a bomb element. The Government's Double Jeopardy cases thus have nothing to do with the sufficiency of § 924(c) charges that fail to allege conduct distinct from the use of a bomb and are of no use.

In sum, regardless of whether the charges against Mr. Ullah violate the Double Jeopardy Clause, they "fail[] to state an offense," Fed. R. Crim. P. 12(b)(3)(B)(v), because they omit an essential element of § 924(c): conduct "separate," *Rosemond*, 134 S. Ct. at 1247, and "distinct," *Rodriguez-Moreno*, 526 U.S. at 280, from mere use of a bomb. The problem here is that the charged § 924(c) offense is *not* distinct from the underlying crimes of violence: it is the same thing. As such, it must be dismissed. Fed. R. Crim. P. 12(b)(3)(B)(v).

c.  <u>The decision in *United States v. Rahimi* does not compel the denial of Mr. Ullah's motion.</u>

The arguments made by Mr. Ullah are indeed similar to those made in *United States v. Rahimi*, No. 16 Cr. 760 (RMB). And so is the Government's opposition. The question with respect to Count Six is identical the that posed in *Rahimi*.

In ruling against Mr. Rahimi, Judge Berman stated that he was compelled to deny the motion to dismiss the §924(c) counts based on charges sustained in analogous cases, citing *United States v. Dye*, 538 F. App'x 654 (61h Cir. 2013), cert den.134 S.Ct. 1504 (Mar. 3, 2014); *United States v. Garcia*, 2011WL4634153

9

**A000097**

(E.D.Cal. Oct. 3, 2011), aff'd 768 F.3d 822 (9th Cir. 2014); *United States v. Smith*, 502 F.3d 680 (7th Cir. 2007), cert den. 552 U.S. 1206 (Feb. 19, 2008); *United States v. Khalil*, 214 F.3d 111 (2d Cir. 2000); and *United States v. Salameh*, 261F.3d271, 279 (2d Cir. 2001).

The lack of precedential value that *Khalil* and *Salameh* offer has already been sufficiently discussed herein.   The remaining cases cited by Judge Berman in *Rahimi* do not address the issues raised by Mr. Ullah with respect to the § 924(c) charge and, similarly, provide no precedential value at all.   Furthermore, to the extent *Dye*, *Garcia,* and *Smith* provide any guidance (which they do not), they only address § 844(i) in relation to § 924(c) and none of the other charges that Mr. Ullah faces in Counts One, Two, Three, and Five.    All of those cases were decided before *Dimaya* and, as the 10th Circuit in *Salas* found, § 844(i) does not qualify as a crime of violence under § 924(c)(3)(A), the only remaining constitutionally valid provision defining a crime of violence.

In *Dye,* the defendant was charged with § 924(c) and § 844(i) for setting fire to a bar and firebombing a city building.  He was convicted at trial and on appeal, argued, in part, that the 924(c) charge should be dismissed because cumulative punishment under the two statutes violated the Double Jeopardy clause.  Rye did not raise and the Court did not decide the question of whether § 844(i) was a separate crime of violence.

In *Garcia,* the defendant was also charged with and convicted of § 924(c) and § 844(i).  This case does not at all address the issues raised by Mr. Ullah.  Garcia

10

**A000098**

alleged that the 844(i) count on its own was duplicitous because it alleged two separate bombings. The court rejected this argument and denied the motion to dismiss the 844(i) count finding that the "indictment use[d] a conjunctive pleading style that has been approved by the Ninth Circuit." *Garcia*, 2011WL4634153 at *1.

Likewise, the defendant in *Smith* was charged with and convicted of § 844(i) and § 924(c). Like Dye and Garcia, he did not raise at trial or on appeal any of the issues raised here by Mr. Ullah with respect to the § 924(c) charge. He argued that his conviction under 18 U.S.C. § 844(i) and 18 U.S.C. § 924(c)(1)(A) punished him twice for the same conduct and thus violated the Fifth Amendment protection against Double Jeopardy. As stated repeatedly, Mr. Ullah has not raised a Double Jeopardy objection.

*Dye*, *Garcia*, *Smith*, *Khalil, and Salameh* are far from "analogous" to Mr. Ullah's case and do not compel the denial of his motion.

## II. Count One is not a crime of violence after *Dimaya*.

Clearly recognizing that Count One of the Indictment, charging a violation of 18 U.S.C. § 2339B, does not qualify as a crime of violence under §924(c)(3)(A), the Government advocates for the survival of §924(c)(3)(B), the residual clause, despite the clear decision to the contrary in *Sessions v. Dimaya,* 138 S. Ct. 1204 (2018). Relying on the argument made by the dissent in *Dimaya*, the Government erroneously maintains that *Dimaya* "does not require invalidation of §924(c)(3)(B)," Opp. Br. at 19, and asserts that "the Supreme Court's decision permits the application of an 'underlying-conduct' approach that looks to the defendant's actual

11

**A000099**

conduct, in lieu of the categorical approach, to determine whether an offense qualifies as a crime of violence", *id.*, under the residual clause.

First, there can be no doubt that *Dimaya* confirms that the residual clause of 18 U.S.C. § 924(c) is void for vagueness. The residual clauses at § 16(b) and §924(c)(3)(B) are identical: each labels, as a "crime of violence," any felony that, "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." The Supreme Court held in *Dimaya,* that trying to decipher this language consistently under the categorical approach is hopeless: it "requires a court to picture the kind of conduct that the crime involves in the ordinary case, and to judge whether that abstraction presents some not-well-specified-yet-sufficiently-large degree of risk. The result is that § 16(b) produces . . . more unpredictability and arbitrariness than the Due Process Clause tolerates." 138 S. Ct. at 1216 (internal punctuation and citations omitted). The same is true of the identical residual cause at § 924(c)(3)(B), which is subject to the identical categorical approach. As already mentioned, the Tenth Circuit recently held, "*Dimaya* compels the conclusion that § 924(c)(3)(B) is unconstitutional." *Salas*, 889 F.3d 681, 687.

Second, nothing in *Dimaya* casts doubt on the well-established rule in the Second Circuit that the categorical approach applies to 18 U.S.C. § 924(c). *See United States v. Hill*, ___ F. 3d ___, 2018 WL 2122417, at *3 (2d Cir. May 9, 2018) ("To determine whether an offense is a crime of violence [under § 924(c)], courts employ what has come to be known as the 'categorical approach.'"); *United States v.*

12

**A000100**

*Ivezaj*, 568 F.3d 88, 95 (2d Cir. 2009) (same); *United States v. Acosta*, 470 F.3d 132, 135 (2d Cir. 2006) (per curiam) (same).

This District is not alone: 10 of the 11 other circuits apply the categorical approach in § 924(c) cases. *See United States v. Taylor*, 848 F.3d 476, 491 (1st Cir. 2017); *United States v. Fuertes*, 805 F.3d 485, 498 (4th Cir. 2015); *United States v. Jennings*, 195 F.3d 795, 797 (5th Cir. 1999); *Evans v. Zych*, 644 F.3d 447, 453 (6th Cir. 2011); *United States v. Williams*, 864 F.3d 826, 828 (7th Cir. 2017); *United States v. Prickett*, 839 F.3d 697, 698 (8th Cir. 2016); *United States v. Amparo*, 68 F.3d 1222, 1225 (9th Cir. 1995); *United States v. Serafin*, 562 F.3d 1105, 1107-08 (10th Cir. 2009); *United States v. McGuire*, 706 F.3d 1333, 1336-37 (11th Cir. 2013) (O'Connor, Sup. Ct. J., ret.); *United States v. Kennedy*, 133 F.3d 53, 56 (D.C. Cir. 1998). The Third Circuit is the outlier. It has adopted an idiosyncratic approach to § 924(c) that no one – including the government – has embraced. *See United States v. Robinson*, 844 F.3d 137, 141-44 (3d Cir. 2016).

Acknowledging but ignoring precedent, the Government proposes that "courts in this Circuit should reconsider the categorical approach . . . and adopt in this place the underlying-conduct approach." Opp. Br. at 20. The Government claims that *Dimaya* is an intervening Supreme Court decision that "casts doubt on" the rule that the categorical approach applies in § 924(c) cases. Opp. Br. at 23-24. In so claiming, it identifies nothing in *Dimaya* that "casts doubt on" the rule that the categorical approach applies in § 924(c) cases. On the contrary, the *Dimaya* Court expressly denied the dissent's request to abandon the categorical approach.

**A000101**

The *Dimaya* Court held, "The dissent . . . [asks] to jettison the categorical approach in residual-clause cases. The Court decline[s] to do so." 138 S. Ct. at 1216 (citing *Johnson*, where "[t]he dissent [also] issued the same invitation," *Dimaya*, 138 S. Ct. at 1216, which the Court also declined). Time and again, the Court has stuck to the categorical approach. *See also Mathis v. United States*, 136 S. Ct. 2243 (2016); *Descamps v. United States*, 570 U.S. 254 (2013); *Moncrieffe v. Holder*, 569 U.S. 184 (2013); *Johnson v. United States*, 559 U.S. 133 (2010); *Taylor v. United States*, 495 U.S. 575 (1990).

And contrary to the government's claim that "[t]he Supreme Court did not hold in that § 16(b) requires a categorical approach," Opp. Br. at 19, six justices said the approach applies. One of them (Justice Gorsuch) expressed openness to revisiting the issue, but none of the other five did.

In Part I of the *Dimaya* opinion, Justices Kagan, Ginsburg, Breyer, Sotomayor and Gorsuch said: "The question, we have explained, is not whether 'the particular facts' underlying a conviction posed the substantial risk that § 16(b) demands. . . . The § 16(b) inquiry instead turns on the 'nature of the offense' generally speaking." 138 S. Ct. at 1211 (citation omitted). The Chief Justice agreed: "Under our decisions," § 16(b) "ask[s] the sentencing court to consider whether a particular offense, defined without regard to the facts of the conviction, poses a specified risk." *Id.* at 1235 (Roberts, C.J., dissenting).

The Court cited its prior – and unanimous – ruling in *Leocal v. Ashcroft*, 543 U.S. 1 (2004), where it explained:

14

**A000102**

[T]he statute directs our focus to the "offense" of conviction. *See* . . . § 16(b) (defining the term as "*any other offense* that is a felony and that, *by its nature*, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense" (emphasis added)). This language requires us to look to the elements and the nature of the offense of conviction, rather than to the particular facts relating to petitioner's crime.

*Id.* at 7 (emphasis in original).

Though three justices – Kennedy, Thomas and Alito – argue against the categorical approach, *see Dimaya*, 138 S. Ct. at 1254-59 (Thomas, J., dissenting), and Justice Gorsuch is "open to different arguments . . . in another case," *id.* at 1233 (Gorsuch, J., concurring), a majority of the Court stands by it.

In short, nothing in *Dimaya* "casts doubt on" the longstanding rule that the categorical approach applies in § 924(c) cases. As a result, Count One cannot qualify as a crime of violence for purposes of § 924(c).

## CONCLUSION

For the foregoing reasons, the Court should dismiss Count Six.

Dated: New York, New York
August 17, 2018

Respectfully submitted,

Federal Defenders of New York

By: /s/ Amy Gallicchio
Amy Gallicchio
Julia Gatto
Attorneys for Defendant
 Akayed Ullah
52 Duane Street - 10th Floor
New York NY 10007
Tel: (212) 417-8700

15

**A000103**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



UNITED STATES OF AMERICA

-v-

AKAYED ULLAH,

Defendant.

18-cr-16 (RJS)
ORDER

RICHARD J. SULLIVAN, District Judge:

On January 10, 2018, a grand jury returned an indictment of Defendant Akayed Ullah

containing six counts:

(1)    Provision of Material Support and Resources to a Designated Foreign Terrorist
       Organization, in violation of 18 U.S.C. § 2339B;

(2)    Use of a Weapon of Mass Destruction, in violation of 18 U.S.C.
       §§ 2332a(a)(2)(A)–(D);

(3)    Bombing a Place of Public Use and a Public Transportation System, in violation
       of 18 U.S.C. §§ 2332f(a)(1)(A)–(B), 2332f(b)(1)(B), and 2332f(b)(1)(E);

(4)    Destruction of Property by Means of Fire or Explosive, in violation of 18 U.S.C.
       § 844(i);

(5)    Terrorist Attack Against Mass Transportation Systems, in violation of 18 U.S.C.
       §§ 1992(a)(2), (a)(4)(B), (a)(7), (a)(10), (b)(1), and (c)(1); and

(6)    Use of a Destructive Device During and in Furtherance of a Crime of Violence, in
       violation of 18 U.S.C. §§ 924(c)(1)(A) and (c)(1)(B)(ii).

(Doc. No. 6 (the "Indictment").)  Defendant entered a plea of not guilty to all six counts on January

11, 2018.  (Doc. No. 12.)

On July 17, 2018, Defendant moved to dismiss Count Six of the Indictment pursuant to

Federal Rule of Criminal Procedure 12(b)(3)(B)(v) for failure to state an offense.  (Doc. No. 20;

*see also* Doc. No. 21 ("Mem.").)  Count Six charges Defendant with violating 18 U.S.C. § 924(c),

**A000104**

which punishes "any person who, during and in relation to any crime of violence . . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." 18 U.S.C. § 924(c)(1)(A). As defined in the statute, the term "firearm" includes bombs and other destructive devices. 18 U.S.C. § 921(a)(3)–(4). The phrase "crime of violence" is defined as any felony that either "(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another" or "(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3). The former clause is referred to as the "elements clause," *Villanueva v. United States*, 893 F.3d 123, 127 (2d Cir. 2018), and the latter clause is commonly known as the "residual clause" or the "use-of-force clause," *United States v. Hill*, 890 F.3d 51, 54 n.5 (2d Cir. 2018).

Defendant advances two arguments in his motion. First, he asserts that Count One cannot properly serve as a predicate offense for a conviction on Count Six because Count One – Provision of Material Support and Resources to a Designated Foreign Terrorist Organization, in violation of 18 U.S.C. § 2339B – could qualify as a crime of violence only under the residual clause of Section 924(c), which Defendant argues is unconstitutionally vague. (Mem. at 3 (citing *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018).) Second, Defendant contends Section 924(c) requires the commission of a crime of violence that is separate and distinct from the use of a firearm (Mem. at 5–6), and that none of Counts Two through Five qualify as such. Specifically, Defendant maintains that, as charged, Counts Two, Three, Four, and Five all involve the use of a bomb, and therefore may not support Section 924(c) liability since "the use of a firearm under § 924(c) is an act separate from the crime of violence." (Mem. at 5; *see also* Tr. at 5:20–24 ("924(c) is a combination of statutes consisting of two separate actions – an underlying crime of violence and a distinct use of

2

**A000105**

a firearm in furtherance of that crime. It is not using a bomb while using a bomb.").) The government opposed Defendant's motion on August 7, 2018 (Doc. No. 24 ("Opp'n")), and Defendant filed a reply in support of his motion on August 17, 2018 (Doc. No. 25 ("Reply")). The Court held oral argument regarding Defendant's motion on August 30, 2018. (Doc. No. 26 ("Tr.").)

However, on September 10, 2018, the Second Circuit issued its opinion in *United States v. Barrett*, --- F.3d ---, 2018 WL 4288566 (2d Cir. 2018). *Barrett* holds that the residual clause of Section 924(c) is not void for vagueness in the context of pending prosecutions because the statute permits "a conduct-specific identification of a predicate offense as a crime of violence." *Id.* at *12. To that end, *Barrett* instructs courts to ask the jury to determine whether the defendant's "real-world conduct," *id.* at *13, was the sort that "by its nature, involve[d] a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," 18 U.S.C.§ 924(c)(3)(B). On the same day, the Court ordered the parties to file supplemental letter briefs addressing the impact of *Barrett* on this case. (Doc. No. 29.) Defendant filed his brief on September 14, 2018 (Doc. No. 31 ("Def. Supp. Br.")), and the government responded on September 19, 2018 (Doc. No. 32 ("Gov't Supp. Br.")). In his brief, Defendant concedes that, in light of *Barrett*, "Count Six cannot be dismissed," but he asks the Court to "limit the predicates upon which it is based." (Def. Supp. Br. at 2.) Defendant again advances two arguments in support of his position, which the Court will address in turn.

First, Defendant reiterates the second argument set out in his motion to dismiss – that Section 924(c) is a "combination crime" which cannot be proven where the underlying offense charged necessarily involved the use of a firearm, and that Counts Two through Five all necessarily involved the use of a bomb. (*Id.* at 2–3.) Although the Court agrees that Defendant has articulated

3

**A000106**

the correct legal framework, he is wrong that every offense charged in Counts Two through Five requires the use of a firearm.

To obtain a conviction under Section 924(c), the government must establish that the defendant (1) used a firearm, (2) committed a crime of violence, and (3) used the firearm "during and in relation to" the crime of violence." *United States v. Rodriguez-Moreno*, 526 U.S. 275, 280 (1999). Thus, Defendant is right that Section 924(c) is a "combination crime," which "punishes the temporal and relational conjunction of two separate acts, on the ground that together they pose an extreme risk of harm." *Rosemond v. United States*, 572 U.S. 65, 75 (2014); *see also Muscarello v. United States*, 524 U.S. 125, 132–33 (1998). Accordingly, because it requires the temporal connection of two acts that would otherwise not necessarily be related, it follows that Section 924(c) cannot support liability for a crime that necessarily involves the use of a firearm. In other words, to be convicted under Section 924(c), a defendant must have (1) committed a crime falling within the scope of Section 924(c) but which does not necessarily require the use of a firearm and (2) actually used or carried a firearm in connection with that underlying offense. *See Rosemond*, 572 U.S. at 75 ("[Section] 924(c) establishes a freestanding offense distinct from any that might apply just to using a gun – say, for discharging a firearm in a public park."); *Rodriguez-Moreno*, 526 U.S. at 280.

However, Defendant's assertion that Counts Two, Three, Four, and Five require the use of a bomb is incorrect.[1] Count Two charges Defendant with using a "weapon of mass destruction" against a person or property in the United States. 18 U.S.C. § 2332a(a)(2). The statute defines the term "weapon of mass destruction" to include "any destructive device" – a term that includes bombs – but also includes "poison gas," "any weapon involving a disease organism," and "any

---

[1] Defendant concedes that Count One can serve as a predicate offense for a conviction under Section 924(c). (Def. Supp. Br. at 3.)

4

**A000107**

weapon that is designed to release radiation or radioactivity at a level dangerous to human life." 18 U.S.C. § 2332a(b)(2). Though the offense charged in Count Three is titled "Bombings of Places of Public Use, Government Facilities, Public Transportation Systems, and Infrastructure Facilities," the criminal offense it alleges can be committed through the use of an "explosive or other lethal device"; the latter term encompasses any weapon that has "the capability to cause death, serious bodily injury, or substantial damage to property through the release . . . of toxic chemicals, biological agents, or toxins." 18 U.S.C. §§ 2332f(a)(1), (e)(9). Thus, use of a bomb is not a prerequisite for conviction under Section 2332f. Count Four – Destruction of Property by Means of Fire or Explosive, in violation of 18 U.S.C. § 844 – requires only that the Defendant have used "fire" to attempt to destroy property. Although the statute criminalizes using a bomb for that purpose, it is not limited to such a device, nor does it require one. And the provisions charged in Count Five, 18 U.S.C. § 1992a(a)(2), (4), and (7), can be violated through the use of "any biological agent or toxin," *id.* §§ 1992a(a)(2), (4), or any "weapon" capable of causing death or serious injury, "including a pocket knife with a blade of less than 2 ½ inches in length," 18 U.S.C. § 1992a(a)(7), (d)(2). On its face, then, Section 1992a does not require the use of a bomb. Accordingly, none of Counts Two, Three, Four, or Five necessarily requires that Defendant have used a bomb or other firearm to violate the statute, and all may serve as predicate offenses for a conviction on Count Six.

Second, with an eye towards the possible reversal of *Barrett* by the *en banc* Second Circuit or the Supreme Court, Defendant argues that, "[s]hould the Court deny [his] motion to limit the predicates underlying Count Six, it should decide the legal question of whether Counts One, Two, and Four are crimes of violence under the elements clause." (*Id.* at 3–4; *see also id.* at 1–2 ("[W]e believe that *Barrett* was incorrectly decided . . . .").) In response to Defendant's second argument,

5

**A000108**

the government warrants that it "will not request the Court to instruct the jury" that the offenses charged in Counts One, Two, and Four "qualify as crimes of violence" under the elements clause; instead, it will ask only for an instruction on the residual clause in relation to those counts. (Gov't Supp. Br. at 2–3.) The Court therefore need not reach the merits of Defendant's statutory-construction argument.

\*   \*   \*

For the reasons set forth above, Counts One, Two, Three, Four, and Five are all capable of serving as the predicate offense for a conviction on Count Six. Thus, Defendant's motion to dismiss Count Six is DENIED and his alternative motion to limit the predicate offenses for Count Six is also DENIED.

Because Counts Three and Five qualify under the elements clause as crimes of violence within the scope of Count Six (see Def. Supp. Br. 3–4; Gov't Supp. Br. 2–3), the Court will instruct the jury accordingly. Further, the Court will instruct the jury to determine whether the offenses charged in Counts One through Five qualify as crimes of violence under the residual clause. The parties shall prepare their proposed jury instructions and verdict forms accordingly.

The Clerk of Court is respectfully directed to terminate the motions pending at docket numbers 20 and 31.

SO ORDERED.

Dated:     October 4, 2018
           New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

6

A000109

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x

UNITED STATES OF AMERICA,                          :

          -against-                              :          18 Cr. 16 (RJS)

AKAYED ULLAH,                                     :

          Defendant.                           :

----------------------------------------------------------x

## AKAYED ULLAH'S MEMORANDUM OF LAW IN OPPOSITION TO THE GOVERNMENT'S MOTIONS *IN LIMINE* AND IN SUPPORT OF DEFENSE MOTIONS *IN LIMINE*

David E. Patton
Federal Defenders of New York, Inc.
Attorney for Defendant
  Akayed Ullah
52 Duane Street, 10th Floor
New York, New York 10007
Tel.: (212) 417-8700

Amy Gallicchio
Julia Gatto
  *Of Counsel*

TO:    Geoffrey S. Berman
       United States Attorney
       Southern District of New York
       One St. Andrew's Plaza
       New York, New York 10007

          Attn.:  Shawn Crowley
               George Turner
               Rebekah Donaleski
               Assistant United States Attorneys
               Southern District of New York

**A000110**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ......................................................................................1

ARGUMENT ..............................................................................................................2

    I.    The Court Should Preclude the Terrorist Propaganda Materials as Irrelevant or
         Unfairly Prejudicial and Cumulative Under Rule 403 ..............................................2

    II.   The Court Should Preclude the Testimony of the Government's "Terrorism
         Expert" ........................................................................................................5

          A.    The Government's Expert Notice is Deficient ...........................................5

          B.    The Proposed Testimony is Irrelevant or Unfairly Prejudicial,
               Misleading to the Jury, and Needlessly Cumulative ..................................7

    III.  The Court Should Suppress a Small Portion of Mr. Ullah's Post-Arrest
         Statement .....................................................................................................9

CONCLUSION ..........................................................................................................12

**A000111**

## <u>PRELIMINARY STATEMENT</u>

This memorandum of law on behalf of Akayed Ullah responds to the Government's Motions *in Limine* of September 27, 2018 (MIL) seeking two evidentiary rulings from the Court in advance of trial. He also submits this memorandum of law in support of his motion to preclude certain testimony and to suppress a portion of his post arrest statement to law enforcement.

We oppose the Government's first request, seeking admission of "Terrorist Propaganda Material" (TPM). Such evidence is inadmissible as irrelevant under Federal Rule of Evidence 401 or inadmissible under Rule 403 as unfairly prejudicial and/or cumulative. This is especially true given the numerous admissions made by Mr. Ullah to law enforcement regarding the inspiration and motivation for his actions.

We do not oppose the Government's second request that the Court take judicial notice at trial of ISIS as a Foreign Terrorist Organization (FTO), however, the parties anticipate entering into a stipulation to that effect, thereby, obviating a need for judicial notice.

Mr. Ullah moves *in limine* to preclude the testimony of the Government's proposed terrorism expert, Aaron Zelin. First, Mr. Ullah asserts that the Government's expert notice is deficient and not in compliance with Federal Rule of Criminal Procedure 16(a)(1)(G) and second, that the proposed testimony is inadmissible as irrelevant under Rule 401 or inadmissible under Rule 403 as unfairly prejudicial and likely to mislead the jury.

Mr. Ullah next moves to suppress a small portion of one of his post- arrest statements made before he was *Mirandized.* The statement was made in response to police questioning and is not subject to the "public safety" exception.

A000112

## ARGUMENT

**I.    The Court Should Preclude the Terrorist Propaganda Materials as Irrelevant or Unfairly Prejudicial and Cumulative Under Rule 403**

The Government seeks to introduce at trial "a small subset of the pro-ISIS and terrorist propaganda videos and audio files recovered from the Laptop, which was used by the defendant and recovered from the defendant's residence," which it labels "Terrorist Propaganda Materials" (TPM). MIL, at 4.[1]  The Government provided the Court and defense with a compact disc containing nine video excerpts, a subset of which it seeks to introduce.[2]

The Government claims two purposes for which the TPM evidence is relevant. "*First*, the [TPM] constitute direct evidence of Ullah's motivations for the December 11 attack, and specifically his intent to provide support to ISIS, an element of the material–support offense charged in Count One [ ]," MIL at 10.  "Second, the Terrorist Propaganda Materials are highly probative of Ullah's knowledge that ISIS was a designated FTO or has engaged in 'terrorist activity' or 'terrorism,' which is an element of the charged material-support offense charged in Count One." *Id.* 12 (citing 18 U.S.C. § 2339B(a)(1)).

We do not dispute that the TPM is generally admissible for both purposes under Rule 401's broad definition of relevance and has been admitted by other courts for such purposes. However, the Government must first prove that the TPM is relevant.  Unless the Government

---

[1] Mr. Ullah intended to move to preclude the introduction of audio files of lectures by Anwar al-Awlaki referenced in the Governments motion and listed as GX 1211 and 1212 in its exhibit list.  However, on October 1, 2018, the Government informed defense counsel that it no longer intends to offer that evidence.

[2] On October 2, 2018, the Government informed defense counsel that, should the Court permit the admission of some or all of the video excerpts, it does not intend to play the audio portion of the video.

**A000113**

can establish that Mr. Ullah viewed the videos in question, they are irrelevant pursuant to Rule 401 to either of the two purposes cited for its admission by the Government. In its moving papers, the Government alleges that during a search of Mr. Ullah's apartment a laptop that contained the videos in question was recovered. They claim that the laptop was "used by the defendant," MIL at 4, but, without proof of that fact, the proposed evidence is inadmissible as irrelevant.

Even if relevance is sufficiently established by the Government, the minimally probative value of the TPM is substantially outweighed by the obvious danger of unfair prejudice it would create and such evidence would be "needlessly [ ] cumulative." *See* Fed. R. Evid. 403. In this case, the Government has an abundance of other evidence to achieve its two purposes and does not need nine sensational and prejudicial videos to support its theory that Mr. Ullah was motivated to act by his affinity for ISIS.

According to the Government, Mr. Ullah admitted to law enforcement, "that he had been inspired by ISIS to carry out the bombing, that he 'did it for the Islamic State,' and that he carried out the attack in part because of the United States' policies in the Middle East. The defendant also described videos and lectures he had viewed on line leading up to the attack, including lectures by al-Awlaki, and videos that described various ways to conduct attacks to 'terrorize America,' such as bombings and truck attacks." MIL at 3-4. Furthermore, according to the discovery previously provided by the Government, Mr. Ullah made these declarations on numerous occasions to many law enforcement officers. In fact, he was very cooperative and forthcoming about his actions and what inspired them. One law enforcement officer commented in a written report that Mr. Ullah showed an "eagerness to talk and demonstrated a clear desire to explain and justify his actions and motivations relative

3

**A000114**

to the event." Unlike the videos that the Government seeks to introduce, Mr. Ullah's statements are direct evidence of his motivation and intent.

Regarding the Government's second purpose for which they assert that the TPM evidence is relevant, Mr. Ullah's many and varied statements that the Government intends to introduce will sufficiently satisfy that concern. His statements make it abundantly clear that he was well aware that ISIS is a FTO and/or engaged in terrorist activities. The Government doesn't need nine videos to drive that point home.

Should the Court be inclined to allow the Government to offer the proposed video evidence, the Court should limit the volume of material the government seeks to introduce and edit the admitted evidence to remove inflammatory material. *See generally, United States v. Abu-Jihaad*, 630 F.3d 102, 133 (2d Cir. 2010) (upholding district court's evidentiary ruling on similar evidence and applauding court's decision to "review[] the films in their entirety before approving only selected excerpts for display to the jury" and ensuring that "depictions of violence . . . were limited"). The Government has made efforts to do so but many of the video excerpts still contain scenes of terrifying large scale explosions and car bombings and individuals wielding large knives and firing machine guns and rocket launchers.

No one will dispute that ISIS is a violent organization but allowing the jury to see too much of the TPM will inevitably taint Mr. Ullah with the ISIS's deserved stain, even though he is not responsible for that organization's conduct or any of the conduct depicted in the video excerpts. The Court must be careful about admitting evidence that will inflame the jury's expected prejudice against ISIS to the point of denying Mr. Ullah a fair trial.

4

**A000115**

Finally, should the Court allow some or all of the proposed video evidence, it should instruct the jury that the TPM evidence is probative only of Mr. Ullah's state of mind and for no other purpose. The Court should instruct the jury that Mt. Ullah is not on trial for committing the acts depicted in the TPM, for holding certain religious or political views, or for sympathizing with ISIS. *See Holder v. Humanitarian Law Project*, 130 S. Ct. 2705, 2722 & 2730 (2010) ("Under the material-support statute, plaintiffs may say anything they wish on any topic. . . . [T]he statute [also] does not penalize mere association with a foreign terrorist organization."). The Court should specifically caution the jury that Mr. Ullah has a First Amendment right to hold these views and that the same Amendment guarantees his right to view and possess the TPM. *See United States v. Kaziu*, 559 F. App'x 32, 35 (2d Cir. 2014) (approving of district court's similar instructions).

## II.     The Court Should Preclude the Testimony of the Government's "Terrorism Expert"

### A. The Government's Expert Notice is Deficient

On August 7, 2018, the Government provided notice pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G) of its intention to call Aaron Y. Zelin as an expert witness in "militant jihadist groups, including the Islamic State and al-Sham ("ISIS")." The notice provides the following:

> Mr. Zelin is expected to offer testimony relating to militant jihadist groups and foreign terrorist organizations, principally ISIS, including regarding the following topics: ISIS's history, structure, strategic goals, geographic locations, and means and methods; current and historical sources of and influences on ISIS's ideology; ISIS's exertion of control over certain territories, and ISIS's maintaining an active presence in other territories, including Bangladesh; key events and figures in ISIS's history, including Mohammed al-Adnani and Abu Bakr al-Baghdadi; ISIS's efforts and methods, including through the Internet, to recruit supporters; ISIS's planning, carrying out, and claiming responsibility for terrorist operations

5

**A000116**

and attacks in the United States and Europe, among other places; ISIS's use of social media platforms and other mediums to issue propaganda and terrorism-related content, including calls for supporters to travel overseas to join, train with, and fight for ISIS, and for its supporters to commit terrorist attacks, including "lone wolf" attacks, against westerners; instances in which ISIS has, through public pronouncements and promotional materials, motivated and inspired supporters to commit lone wolf terrorist attacks, including in the United States and Europe; al Qaeda in the Arabian Peninsula ("AQAP"); AQAP's history, practices, and ideology; Anwar al-Awlaki, a former senior leader of AQAP; and ISIS supporters drawing inspiration from AQAP's ideology and propaganda, and from the lectures and teachings of al-Awlaki. In addition to the foregoing, Mr. Zelin is expected to testify about the meaning and significance of certain terms, images, symbols, and other content associated with ISIS and militant jihadist ideology, including terms, images, symbols, and other content located in the defendant's electronic devices, online accounts, journals, and other materials recovered during the investigation of this case. Mr. Zelin's qualifications and the bases and reasons for his anticipated testimony are reflected in the attached CV (Exhibit A) and trial transcripts (Exhibit B).

Federal Rule of Criminal Procedure 16(a)(1)(G) requires the Government to give to the defendant a written summary of any testimony that the government intends to use under Federal Rules of Evidence 702, 703, or 705. "The summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." *Id.*

The above disclosure does not satisfy rule 16(a)(1)(G) requirements. It merely provides a laundry list of general topics Mr. Zelin is expected to testify about. It does not disclose the witness's "opinion" about any of those topics or any other topic, let alone the bases and reasons for such.

Furthermore, the disclosure does not sufficiently provide a summary of the proposed testimony regarding "terms, images, symbols, and other content located in the defendant's electronic devices, online accounts, journals, and other materials recovered during the investigation of this case." The notice fails to even identify what the "terms, images,

6

**A000117**

symbols, and other content" are.  In the absence of this information, it is impossible for defense counsel to prepare a focused and effective cross-examination, which is the very purpose of Rule16's disclosure requirement.

As such, the Government's disclosure runs afoul of the plain language and purposes of Rule 16(a)(1)(G), *i.e.*, "to minimize [the] surprise that often results from unexpected testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." *United States v. Cruz*, 363 F.3d 187, 196 n.2 (2d Cir. 2004).

Given the inadequacy of the disclosure, it is difficult to assess the relevancy, prejudicial impact, or helpfulness of Mr. Zelin's testimony.  In light of this inadequacy, the Court should preclude the testimony of Mr. Zelin or, alternatively, order the Government to supplement its notice to disclose the actual opinions that Mr. Zelin intends to offer and the basis for those opinions.  Additionally, the Court should order the Government to provide a written summary of the proposed testimony and opinions regarding the "terms, images, symbols, and other content located in the defendant's electronic devices, online accounts, journals, and other materials recovered during the investigation of this case" and the opinions related thereto.

### B. The Proposed Testimony is Irrelevant or Unfairly Prejudicial, Misleading to the Jury, and Needlessly Cumulative

Mr. Zelin's testimony should also be excluded, first, because it is irrelevant pursuant to Rule 401 and, second, because any probative value it may have "is substantially outweighed by a danger of . . . unfair prejudice … misleading the jury . . . or needlessly presenting cumulative evidence" Fed. R. Evid. 403.

Mr. Zelin's testimony is arguably relevant to only one charge in the indictment, Count

One. Based on the Government's Rule 16 disclosure and transcripts of prior testimony provided by the Government, the proposed testimony goes way beyond what is necessary to support the charge in Count One. The defense intends to stipulate that ISIS is a designated foreign terrorist organization and, as such, its history and origins are irrelevant. The Government proposes that Mr. Zelin will, in part, testify about Abu Bakr al-Baghdadi and his speeches "promoting the return of the Islamic caliphate", "declaring himself to be its caliph," and calling "for ISIS supporters to kill non-Muslims, in any manner possible, in the United States and other western countries." MIL at 5 -6. In the absence of any evidence that Mr. Ullah viewed such speeches, this type of testimony is likewise irrelevant and, for obvious reasons, highly inflammatory. This is true for the rest of Mr. Zelin's proposed testimony about other ISIS propaganda calling "for followers to commit terrorist attacks, including lone-wolf attacks—like the defendant's December 11 attack—against westerners." MIL at 6. Likewise, any testimony about the recruitment of foreign fighters to motivate them to leave their homelands and join ISIS overseas completely irrelevant in that there is not a scintilla of evidence that Mr. Ullah engaged in such behavior.

As already stated, the Government has sufficient evidence from the admissions of Mr. Ullah himself about what videos and lectures he viewed and what inspired his actions. Since Mr. Zelin cannot opine about Mr. Ullah's state of mind or his intent, his testimony will not help the jury "understand the evidence or to determine a fact in issue." *See* Fed. R. Evid. 702. Testimony about the history of FTOs and individuals affiliated with them will not help the jury to decide any element of the offenses charged, such as intent. Mr. Zelin's testimony will only serve to instill fear in and inflame the passions of the jury. Any probative value (which, again, it does not have) is substantially outweighed by the danger of a significant prejudicial

**A000119**

effect, the high risk that the testimony will confuse and mislead the jury, and that it will be needlessly cumulative. *See* Rule 403.

Should the Court be inclined to allow the Government to offer the testimony of Aaron Zelin, the Court should limit the scope of his testimony so to minimize the prejudice it undoubtedly will cause.

### III. The Court Should Suppress a Small Portion of Mr. Ullah's Post-Arrest Statement

Following Mr. Ullah's arrest, Mr. Ullah made several statements to law enforcement, the majority of which were made either: (1) in response to "public safety" questions, or (2) after Mr. Ullah was read and waived his *Miranda* rights. The defense has not and does not intend to move to suppress the admission of these statements. However, a careful review of all of Mr. Ullah's interrogations has uncovered a small number of statements (spanning about minute in time) elicited from Mr. Ullah in violation of his Constitutional rights and which are not subject to the "public safety" exception. These statements were made after Mr. Ullah's arrest, before he was *Mirandized*, and in response to police questioning that were unrelated to any immediate safety concerns. We move to suppress those statements.

The defense acknowledges that its motion to suppress is made outside of the deadline previously set by the Court for the filing of Rule 12 Pretrial Motions. Rule 12(c)(3) provides that "[i]f a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely. But a court may consider the defense, objection, or request if the party shows good cause." The Advisory Committee Notes to Rule 12 defines "good cause" as "a flexible standard that requires consideration of all interests in the particular case." Advisory Committee Notes, 2014 Amendments. Subsection (c)(3)'s waiver was "designed to make possible and to encourage the making of motions *prior to trial,* whenever possible, and in a

9

**A000120**

single hearing rather than in a series of hearings." Advisory Committee Notes, 1974 Amendment (emphasis added). Alternatively, Rule 12(c)(2) provides that "[a]t any time before trial, the court may extend or reset the deadline for pretrial motions."

Here, the cause for the late motion is that defense counsel missed the issue on its first review of Mr. Ullah's post-arrest statements and when preparing for trial, we discovered it. While we acknowledge that this motion is late, it is still made far in advance of trial and is a purely legal issue that can be resolved on the papers without a hearing. In light of the "flexible standard" and the purpose of Rule 12(c)(3), we ask that the Court consider this motion, or alternatively, reset the deadlines for pretrial motions so that the instant motion is timely.

The questioning and statements at issue are recorded and captured on the attached CD (Exhibit A), beginning at timestamp 00:10 and concluding at 1:22. As the Court can hear, the statements are elicited *after* the conclusion of questioning by the first interrogating law enforcement agent. That agent asked questions designed to determine whether there were other explosives at large in the community or any other immediate safety concern. After the first agent asked and Mr. Ullah answered the question, "Are you sure now there is nothing else that is going to hurt anyone else?," a *second* police officer asked Mr. Ullah a series of questions, wholly unrelated to public safety, including: "Did you do this for any particular group?;" What group?;" "And did you do it in response to any particular call?" Mr. Ullah answered these questions without having been informed of his *Miranda* rights. After

10

**A000121**

answering these questions, Mr. Ullah then was *Mirandized* for the first time.[3]

There will be no dispute that the statements at issue were the product of custodial interrogation of an arrested subject whom had not, as of yet, been advised of his rights. Such statements are presumptively coerced and not admissible. *Miranda v Arizona*, 384 U.S. 436 (1966); *Dickerson v. United States,* 530 U.S. 428 (2000). In *New York v. Quarles,* the Supreme Court recognized a "narrow exception to the *Miranda* rule" where arresting officers ask a defendant "questions necessary to secure their own safety or the safety of the public." 467 U.S. 649, 658-59 (1984). The public safety exception, however, does not give arresting officers *carte blanche* to interrogate suspects, even where the circumstances raise legitimate safety concerns. To the contrary, "the exception is limited by the fact that pre-*Miranda* questions… may not be investigatory in nature or 'designed solely to elicit testimonial evidence from a suspect.'" *United States v. Estrada,* 430 F.3d 606, 612 (2d Cir. 2005) (quoting *Quarles,* 467 U.S. at 658–59). To fall within the public safety exception, the questioning "must have some rational relationship to defusing the perceived danger" and "generally target[] a safety concern." *United States v. Newton,* 369 F.3d 659, 679 n. 8 (2d Cir. 2004); *Estrada,* 430 F.3d at 613.

Here, the questioning by the second officer regarding Mr. Ullah's motivations for the alleged attack did not target or address a safety concern. There was no urgency to determine who influenced Mr. Ullah or what propaganda inspired him. Whether or not Mr. Ullah was influenced by ISIS or a "call" to action had no immediate bearing on the public safety. As

---

[3] Suppression of these statements would have no impact on Mr. Ullah's opposition to the Government's request to introduce TPM or his motion to preclude the testimony of Aaron Zelin because the numerous admissions referenced in the argument, *see* supra page 5, are not the subject of this motion. The vast majority of Mr. Ullah's statements were made post-*Miranda*.

11

**A000122**

such, the second officer's questions were purely investigatory probing and, by their nature, the type that must be preceded by *Miranda* warnings. Because they were not, Mr. Ullah's statements in response to the second officer's questioning must be suppressed.

## **CONCLUSION**

For the foregoing reasons, the Court should preclude the Government from introducing the proposed TPM and from offering the testimony of Aaron Zelin. Additionally, the Court should suppress the portion of Mr. Ullah's statement that does not fall within the public safety exception to the *Miranda* rule.

Dated: New York, New York
October 5, 2018

                                        Respectfully submitted,
                                        FEDERAL DEFENDERS OF NEW YORK


                        By:      /s/ Amy Gallicchio
                                 Amy Gallicchio
                                 Julia Gatto
                                 Attorneys for Akayed Ullah
                                 52 Duane Street - 10th Floor
                                 New York NY 10007
                                 Tel: (212) 417-8700

12

**A000123**

# EXHIBIT A

**A000124**



FEDERAL DEFENDERS OF NEW YORK, INC.

52 Duane Street
New York, NY 10007
www.federaldefendersny.org
(212) 417-8700

October 5, 2018

1 of 1

United States v. Akayed Ullah
18 Cr. 16 (RJS)
Exhibit A

**A000125**

**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

November 2, 2018

*VIA ECF*
Honorable Richard J. Sullivan
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

    Re:    *United States v. Akayed Ullah*, 18 CR 16 (RJS)

Dear Judge Sullivan:

    We write in advance of this afternoon's charge conference to highlight the key areas of dispute between the parties as it relates to the jury instructions. At the charge conference, we intend to orally argue our Rule 29 Motion and to discuss the charge more fully, but we thought it prudent to set forth the issues and our arguments.

    **I.**    **Count One – Material Support of a Foreign Terrorist Organization in violation of 18 U.S.C. § 2339B**

    The Indictment returned by the Grand Jury charges Mr. Ullah with knowingly and intentionally providing "material support or resources …, namely, services and personnel (including himself)" to ISIS.

    The parties disagree as to how the jury should be instructed on Count One's first element in two respects:

    First, the government has asked for an instruction regarding the definition of "material support or resources" that includes "services and personnel" (the forms of support charged in the Indictment) and forms of material support or resources that were not charged in the Indictment.

**A000126**

Judge Richard Sullivan                                                    Page **2** of **7**
November 2, 2018

   In re: *United States v. Ullah*, 18 CR 16 (RJS)

Specifically, the government has sought a charge that would instruct the jury
that material support or resources can include "currency or monetary
instruments or financial securities or financial securities, financial services,
lodging, training, expert advise or assistance, safehouses, false documentation
or identification, communications equipment, facilities, weapons, lethal
substances, explosives, and transportation." If the jury is instructed as
proposed by the government, Mr. Ullah could be convicted on a charge the
grand jury never made against him. *See, e.g., Stirone v. United States,* 361
U.S. 212 (1960). These types of resources are distinct from "services." *See
Holder v. Humanitarian Law Project,* 561 U.S. 1, 24 (2010). What is more, the
jury will be confused by the inclusion of forms of support about which they
heard no evidence. The jury should be instructed as to "services and personnel"
and no other form of support or resource.

   Second, the government's proposed definitions for the forms of support
at issue here—personnel and services—are woefully inadequate. The
government proposes instructing the jury that "the word 'personnel' includes
the Defendant himself. It can also include other people." It proposes no
definition for services. The defendant's proposal uses the statutory definition
for personnel:

> The word "personnel" means one or more individuals
> (which can include the defendant himself) to work
> under ISIS's direction or control or to organize,
> manage, supervise, or otherwise direct the operation of
> ISIS. Persons who act independently of ISIS to
> advance ISIS's goal or objectives are not working
> under ISIS's control or at the direction of ISIS. So if
> you find that Mr. Ullah acted independently of ISIS,
> he did not provide personnel to ISIS.

18 U.S.C. 2339B(h)

And a similar limitation applies to services. The defendant's proposed
definition for services is adopted from the Supreme Court's decision in *Holder*,
561 U.S. at 24:

**A000127**

Judge Richard Sullivan                                   Page **3** of **7**
November 2, 2018

In re:  *United States v. Ullah*, 18 CR 16 (RJS)

> The word "service" carries its ordinary meaning: the performance of work commanded or paid for by another; here, ISIS. Only work performed in coordination with, or at the direction of, ISIS meets the definition of service. If you find that Mr. Ullah acted independently of ISIS, he did not provide services to ISIS.

The Court should instruct the jury using the defendant's definitions drawn from the statute and the relevant Supreme Court case.

> **II.** **Count Five – Terrorist Attack Against a Mass Transportation System, in violation of 18 U.S.C. § 1992(a)(2), (a)(4)(B), (a)(7), and (b)(1).**

The parties have little agreement regarding the appropriate instruction on Count Five. Below is the authority supporting the defendant's proposal:

> A. **Definition of "near" in "in, upon or near"**

In the government's first theory of guilt under this count, the government must prove beyond a reasonable doubt that Mr. Ullah knowingly placed a destructive device "in, upon, or near railroad on-track equipment or a mass transportation vehicle" with intent to endanger the safety of any person or with reckless disregard the safety of human life." § 1992(a)(2).

The word "near" is undefined in the statute but is defined in dictionaries as "*at* or to or within a short distance or interval," Oxford American Dictionary, and "close to," Webster's Ninth Collegiate Dictionary (emphasis added). These dictionary definitions are themselves quite indefinite. There is a difference between "at" and "within a short distance." The Court should instruct the jury that near in this case means "at" or "next to," applying the canon of statutory construction "*noscitur a sociis*," that a word "is known by the company it keeps." *McDonnell v. United States*, 136 S.Ct. 2355, 2368 (2016); *Jarecki v. G.D. Searle*, 367 U.S. 1579, 1582 (1961). This canon "is often

Judge Richard Sullivan                                                Page **4** of **7**
November 2, 2018

        In re:   *United States v. Ullah*, 18 CR 16 (RJS)

wisely applied where a word is capable of many meanings in order to avoid the
giving of unintended breath to Acts of Congress." *McDonnell*, 136 S. Ct. at
2368, *quoting Jarecki*, 367 U.S. at 307.

        This canon holds that where a statutory term is a word used in many
contexts and with "various shades of meaning," but is one of a series of words
in the statute, it "gathers meaning from the words around it." *Jarecki*, 367
U.S. at 307(where three words in conjunction, "exploration, discovery, and
prospecting," all described income-producing activity in the oil and gas and
mining industries, application of the maxim suggested a narrow reading of the
otherwise broad word discovery to mean the discovery of mineral resources). In
*McDonnell*, the Supreme Court applied the maxim to the terms "question" and
"matter," which, having broad meanings on their own, it construed narrowly to
be similar to the terms "cause, suit, proceeding or controversy," the terms they
joined, and held not to include a meeting, telephone call, or event. 136 S. Ct. at
2368-69.

        Here the word "near," a relative term with many shades of meaning,
should be narrowed by its placement in the phrase "in, upon, or near" to mean
"at" or "next to." The series of words clearly requires the device to be placed in
the immediate proximity of ("at") on-track equipment or a mass transportation
vehicle.

    B. **The aggravator of §1992 (b) applies only to the charges under
       subsection (a)(2) and (4)(B) and not to the charge under
       subsection (a)(7).**

        Section 1992 (b) provides for an aggravated offense, increasing the
maximum sentence from 20 years to life for anyone who commits an offense
under subsection (a) in a circumstance in which "*the* railroad on-track
equipment or mass transportation vehicle was carrying a passenger or
employee at the time of the offense" (emphasis added). This applies to the
charges alleged under subsection (a)(2), "placing ... a destructive device *in,
upon or near* railroad on track equipment or *a mass transportation vehicle*,"
and subsection (a)(4)(B), "placing ... a destructive device in upon or near any
garage, terminal, structure, track," etc... "used in the operation of, or in

**A000129**

Judge Richard Sullivan                                                    Page **5** of **7**
November 2, 2018

In re:   *United States v. Ullah*, 18 CR 16 (RJS)

support of the operation of, a mass transportation vehicle," "*with intent to, or knowing or having reason to know, such activity would likely derail, disable, or wreck a mass transportation vehicle*." (emphasis added). These two statutory sections punish attacks on a mass transportation vehicle, *i.e.*, a train and/ or subway car, and subsection (b) punishes more severely an attack against a vehicle that contains passengers or employees

The third theory charged in Count Five, however, is charged under §1992 (a)(7), which punishes any act, including the use of a dangerous weapon, with the intent to cause death or serious bodily injury to any person who is on property described in (4)(A)or(B). The property described in those sections includes, as relevant here, "a garage, terminal, structure, track, ... or facility used in the operation of, or in support of the operation of a mass transportation vehicle." This subsection punishes any act intended to kill or seriously injure anyone who is on the property of a garage, terminal, structure, or facility used to operate mass transportation vehicles. Unlike subsections (a)(2) and (a)(4)(B), it does not prohibit an attack on a vehicle.

Therefore, subsection (b)'s aggravator for committing the crime under circumstances in which "*the* railroad on-track equipment or mass transportation vehicle was carrying a passenger or employee," does not relate to any such vehicle or equipment in subsection (a)(7). Application of this section to subsection (a)(7) would beg the question: which vehicle? It clearly does not refer to any vehicle in the terminal, but a specific vehicle, because it does not say any but specifies "*the* vehicle." It refers to the vehicle involved in those subsections of (a) that prohibit an attack on a vehicle, either by placing a device "in, upon, or near" the vehicle or by placing a device in the terminal with intent to derail, disable, or wreck a vehicle. Subsection (a)(7), by contrast, prohibits any act against a person in the terminal, and requires no attack on a vehicle.

The only possible argument for applying the aggravator to subsection (a)(7) is that it purports to apply anyone who "commits an offense under subsection (a) in circumstance in which" the vehicle was carrying a passenger or employee. The argument would be that it refers to subsection (a) in general and therefore sweeps in every offense in subsection (a). But some subsections

**A000130**

Judge Richard Sullivan                                              Page **6** of **7**
November 2, 2018

      In re:   *United States v. Ullah*, 18 CR 16 (RJS)

of (a) refer to vehicles and some do not. For example, subsections (a)(3) and (9) do not prohibit attacks on vehicles but prohibit other acts, such as placing a toxic substance in a terminal, structure, or facility, and conveying false information concerning an attempt to violate the section. The aggravator of subsection (b)(1) does not logically apply to these offenses either.

### III.    Count Four – Destruction of Property by Means of Fire or Explosives in Violation of 18 U.S.C. 844(i)

18 U.S.C. § 844(i), which proscribes malicious damage or destruction by means of an explosive, provides for an enhanced penalty where "personal injury results to any person … as a direct or proximate result of conducted prohibited by this subsection." This aggravating factor increases the minimum penalty from 5 to 7 years' imprisonment and the maximum penalty from 20 to 40 years' imprisonment. The government has sought a special interrogatory regarding personal injury. However, the aggravating factor was not charged in the Indictment and, as a result, cannot properly be submitted to the jury now. *Apprendi v. New Jersey,* 530 U.S. 466 (2000).

### IV.    Definition of Intentionally

The parties' joint request to charge inadvertently failed to include a definition for "intentionally." The defendant proposes:

> Before you can find that a defendant acted intentionally, you must be satisfied beyond a reasonable doubt that the defendant acted deliberately and purposefully. That is, a defendant's acts must have been the product of his conscious, objective decision, rather than the product of mistake or accident. A defendant need not have been aware of the specific law or rule that his conduct may have violated.

Sand 3A-1 and 3A-4; Charge of the Hon. John Gleeson, *United States v. Medunjanin,* 10 CR 19 (JG) (E.D.N.Y.); the Hon. Nicholas Garaufis, *United States v Pugh,* 15 CR 116 (NGG) (E.D.N.Y.).

**A000131**

Judge Richard Sullivan                                    Page **7** of **7**
November 2, 2018

     In re:  *United States v. Ullah*, 18 CR 16 (RJS)


Respectfully submitted,
/s/ AMY GALLICCHIO
Amy Gallicchio
Julia Gatto
Colleen P. Cassidy
Assistants Federal Defender

cc:    AUSAs Shawn Crowley/George Turner/Rebekah Donaleski

**A000132**



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 3, 2018

By ECF
The Honorable Richard J. Sullivan
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

     **Re:**    *United States* **v.** *Akayed Ullah*, 18 Cr. 16 (RJS)

Dear Judge Sullivan:

At yesterday's conference, the Court directed the Government to address whether the jury should be instructed on an attempt theory as to Count One and regarding personal injury on Count Four. For the reasons set forth below, the Government respectfully submits that an attempt theory on Count One is legally proper, supported by the evidence at trial, and will be argued by the Government in summation. With respect to Count Four, the Government will not seek a special interrogatory regarding personal injury.

With respect to Count One, the defendant provided ISIS with personnel – himself – and a service – a terrorist attack in its name – when he bombed the Port Authority on December 11, 2017 (the "Attack"). However, based on the evidence at trial, a reasonable jury also could conclude that the defendant only attempted to provide both forms of material support to ISIS, but did not succeed in doing so. Indeed, the defense's opening statement and cross-examination of Dr. Zelin underscore the appropriateness of instructing the jury on attempt. The Government plans to argue an attempt theory on Count One in its summation, and agrees with the Court's attempt instruction on Count One as set forth in the draft charge circulated to the parties.

As to "personnel," the defense suggested to the jury during its opening statement and through cross-examination of Dr. Zelin that while the defendant may have shared some of ISIS's beliefs, he was not an ISIS member and did not become an ISIS member by carrying out the Attack. (Tr. 32, 407-10). For example, the defense elicited from Dr. Zelin that ISIS did not claim responsibility for the Attack, whereas ISIS has claimed responsibility for the attacks of other supporters – in particular, those who have killed others – who were thereafter viewed as part of the group. (Tr. 393-94, 418). Dr. Zelin further testified that ISIS likely did not claim responsibility for the Attack because the defendant did not die after detonating his bomb and was instead arrested. (Tr. 408-09; *see also* Tr. 366-67 (Dr. Zelin testifying that ISIS views supporters who carry out suicide attacks as "part of their cause" and "soldiers of the caliphate")). A jury reasonably could conclude from this testimony that the defendant attempted to provide himself to ISIS and join the group by carrying out a suicide attack – and that he took a substantial step towards that goal by detonating the pipe bomb – but that he did not actually provide personnel to

**A000133**

ISIS because he did not succeed in killing and martyring himself at its direction. Accordingly, the jury is properly instructed on attempt with respect to the "personnel" prong of Count One.

For similar reasons, an attempt instruction is also proper on Count One's "service" prong. The evidence at trial could lead a reasonable jury to conclude that while the defendant carried out the bombing as part of an attempt to serve ISIS, he did not successfully provide his intended service. For example, while the Attack succeeded in terrorizing Americans, the defendant did not succeed in providing ISIS the service of killing and maiming others. (*See* Tr. 407 (Dr. Zelin explaining that "[t]he goal of the attack is to kill other people")).

The Government therefore respectfully submits that the attempt instruction on Count One in the Court's draft charge is appropriate. As noted, the Government plans to argue both substantive and attempt theories to the jury on Count One.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney
Southern District of New York

By: _____/s/_____
Shawn Crowley / Rebekah Donaleski / George Turner
Assistant United States Attorneys
(212) 637-1034 / 2423 / 2562

Cc: Defense Counsel (by ECF)

**A000134**

**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

November 3, 2018

*VIA ECF AND EMAIL*
Honorable Richard J. Sullivan
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

Re:     *United States v. Akayed Ullah*, 18 CR 16 (RJS)

Dear Judge Sullivan:

We write to respond to the government's letter dated today in which it continues to ask that the jury be instructed on an "attempt theory" as to Count One. The government's "attempt theory" is legally unsound and not one that can be made to the jury. The government's letter also highlights why the defendant's proposed definition of "service" must be included in the jury instruction.

Additionally, we write in connection with our pending Rule 29 motion and request to charge on Count Five, Theory One (18 U.S.C. § 1992(a)(2)). The government disclosed yesterday that its current theory for Count Five, Theory One is that the defendant placed a destructive device in a mass transportation vehicle by boarding the subway while carrying the disconnected device under his clothes. We object to this theory being submitted to the jury and move under Rule 29 for a judgment of acquittal on this count.

### I.     The Jury Should Not Be Instructed On An Attempt Theory As To Count One.

As articulated by the government, the government intends to argue that Mr. Ullah provided to ISIS personnel (himself as a bomber) and services (the deflagration of the device). One of the key questions for the jury is whether these acts were done at the direction, under the control, or in coordination

**A000135**

Judge Richard Sullivan                                                   Page **2** of **7**
November 3, 2018

      In re:   *United States v. Ullah*, 18 CR 16 (RJS)

with ISIS. *See* 18 U.S.C. § 2339B(h) ("Individuals who act entirely independent of the foreign terrorist organization to advance its goals or objectives" may not be "prosecuted under this section in connection with the term 'personnel.'"); *Holder v. Humanitarian Law Project,* 561 U.S. 1. 24 (2010) (The term "service" in § 2339B "refers to concerted activity" (as opposed to "independent activity") and carries its "ordinary meaning," *i.e.* "'the performance of work commanded or paid for by another: a servant's duty: attendance on a superior'; or 'an act done for the benefit or at the command of another.'"); *see also Estate of Parsons v. Palestinian Authority*, 631 F.3d 118, 243 (D.C. Cir. 2011) (adopting *Humanitarian Law Project*'s definition of "service" and interpreting it to mean conduct done "at a terrorist's behest").

      In other words, assuming that the jury finds that Mr. Ullah acted as a bomber and deflagrated the device, then the jury's inquiry will be whether he did it at ISIS's direction or in coordination with ISIS. If the jury determines that his conduct was directed by or coordinated with ISIS, then the crime has been completed. If it determines that his conduct was not, then Mr. Ullah did not violate the statute. There is no room for an attempt theory here, because Mr. Ullah cannot attempt to make ISIS direct him or coordinate with him. Either ISIS directed him or it did not. But, the government's newest theory improperly argues that Mr. Ullah attempted to act in concert with ISIS even if ISIS did not intend to act in concert with him. Its theory is akin to arguing that an individual is guilty of attempting to participate in a bank robbery conspiracy where he wanted to find someone to do a robbery with, but where he never found anyone to agree to do the robbery with him. Just as those facts could not legally support an attempted conspiracy charge, nor can the government's articulated theory support an attempted material support charge.

      As such, we ask that the Court not instruct the jury on an attempt theory as to Count One.

**A000136**

Judge Richard Sullivan                                          Page **3** of **7**
November 3, 2018

In re:  *United States v. Ullah*, 18 CR 16 (RJS)

**II.     The government's new theory for Count Five, that Mr. Ullah "placed" the destructive device in the subway car that he travelled in from Brooklyn, should be precluded and only Theory Three should be submitted to the jury.**

Just yesterday, in the face of a Rule 29 motion on its theory that Mr. Ullah placed a destructive device "near" a subway car in the passageway between the Port Authority and Times Square subway stations (Theory One of Count Five), the government changed its theory. To the surprise of defense counsel and the Court, it announced a new theory for Count Five, that the defendant "placed" a destructive device in a mass transportation vehicle by boarding the subway in Brooklyn while carrying the unconnected device under his clothes. We object to the submission of this theory to the jury on two grounds and move under Rule 29 for a judgment of acquittal on this theory of Count V. First, this theory was never charged by the Grand Jury and would constitute an amendment of the indictment. Second, there is no view of the evidence in which Mr. Ullah could be said to have "placed" the destructive device on the subway in which he traveled with the requisite intent. The only theory in Count Five that is legally sufficient is Theory Three.

**A.  The Government May Not Amend the Charges Brought by the Grand Jury.**

Count Five, as charged in the indictment, alleges a single act as the offense that Mr. Ullah committed in three different ways, under §1992(a)(2),(4)(B),and(7): the detonation and attempted detonation of an IED in the tunnel between the two subway stations. This is the theory that was presented to the Grand Jury and this is what it charged. Count Five of the indictment alleges that Mr. Ullah "(a) placed and attempted to place a destructive substance and a destructive device in, upon, and near a mass transportation vehicle …, (b) placed and attempted to place [the device] in, upon, and near a garage, terminal, structure, track, electromagnetic guideway, supply, and facility used in the operation of…a mass transportation vehicle …, and (c) committed and attempted to commit an act, including the use of a dangerous weapon, with the intent to cause death and serious bodily injury to

**A000137**

Judge Richard Sullivan                                          Page 4 of **7**
November 3, 2018

      In re:  *United States v. Ullah*, 18 CR 16 (RJS)

persons who were on or in a garage, terminal, structure, track, …, to wit,
ULLAH detonated and attempted to detonate an IEP in the vicinity of the Port
Authority Bus Terminal which terminal was then in use by subway cars and
buses."

      Now, at the end of trial, because the evidence does not establish that
the device was detonated anywhere near a mass transportation vehicle, the
government is dropping subsection (b) (Theory Two), which requires intent to
wreck or derail a subway car. However, in an effort to salvage subsection (a)
(Theory One), it has changed its theory entirely to the allegation that Mr.
Ullah "placed" the device when he boarded the subway in Brooklyn carrying
the unconnected device under his clothing.

      The government cannot simply change the basic offense alleged by the
Grand Jury. Submission of the government's new theory to the jury under
Count Five would be an amendment of the indictment, which is
unconstitutional and violates Mr. Ullah's right to be tried only for the offense
charged by the Grand Jury. See Stirone v. United States, 361 U.S. 212, 215-
16(1960); United States v. Milstein, 401 F.3d 53, 65 (2d Cir. 2005).

      "[A]fter an indictment has been returned its charges may not be
broadened through amendment except by the grand jury itself." Stirone v.
United States, 361 U.S. at 215-16. "When the trial evidence or the jury charge
has 'broaden[ed] the possible bases for conviction from that which appeared in
the indictment,' the indictment has been constructively amended" a *per se*
violation of the defendant's Fifth Amendment rights. United States v.
Milstein, 401 F.3d at 65, quoting United States v. Miller, 471 U.S. 130, 138
(1985). Put another way, a constructive amendment is established where
"either the proof at trial or the trial court's jury instructions so altered an
essential element of the charge that, upon review, it is uncertain whether the
jury was convicted of conduct that was the subject of the grand jury's
indictment." United States v. Frank, 156 F.3d 332, 337 (2d Cir. 1998). In
addition to the question whether the grand jury actually charged the same
offense as that the government now presents, the indictment must have
provided fair notice of the offense charged. If the indictment does not "fairly
inform the defendant of the charge against which he must defend" because the

**A000138**

Judge Richard Sullivan                                                     Page **5** of **7**
November 3, 2018

     In re:   *United States v. Ullah*, 18 CR 16 (RJS)

government has changed its theory after the indictment was brought, it is a constructive amendment. See United States v. Rigas, 490 F.3d 208, 228 (2d Cir. 2007).

In this case, all of the hallmarks of constructive amendment are present in the government's new theory of placement under Count Five. The grand jury did not charge this theory; it is not the subject of the indictment. To the contrary, the indictment charges a single act as the offense: that the defendant "detonated and attempted to detonate an IED in the vicinity of the Port Authority Bus Terminal." The government's new theory, that Mr. Ullah violated 1992(a)(2) by boarding the subway in Brooklyn while carrying the unconnected device under his clothes, broadens the bases for conviction. Finally, the specific offense alleged in the indictment, the detonation of the device in the terminal, provides no notice that the government would also try to prove that Mr. Ullah "placed" the device in a mass transportation vehicle when he boarded the subway while carrying the device much earlier. See Milstein, 401 F.3d at 61-65 (indictment allegations of misbranding pharmaceuticals did not provide notice of altered theory that the drugs were unsterile and therefore mislabeled as if they were sterile). If the government's theory is submitted to the jury, Count Five will actually charge two separate offenses, not a single offense. The first offense would be Mr. Ullah "placing" the device on the subway when he boarded it in Brooklyn. The second offense would be commission of the "act" of deflagration in the passageway. The indictment provides no notice of this.

The government's new theory should not be submitted to the jury because it constructively amends the indictment. Although this would be a *per se* Fifth Amendment violation, see Milstein, 401 F.3d at 65, the defendant would also be prejudiced by this. For example, if the defense had known that the government was planning to allege that Mr. Ullah placed the device on the subway by boarding the subway while carrying the unconnected device, and that this act in itself posed a substantial risk to human life of which he was aware and disregarded (a necessary element), defense counsel could have cross-examined the government's bomb expert or consulted its own expert about the actual danger posed by an unconnected device of this type.

**A000139**

Judge Richard Sullivan                                                                   Page **6** of **7**
November 3, 2018

In re:   *United States v. Ullah*, 18 CR 16 (RJS)

### B. The Evidence Is Insufficient as a Matter of law to prove that Mr. Ullah "Placed" the Device in the Subway Car In which He Traveled.

The term "places," as in " whoever… places any… destructive device," is not defined in 18 U.S.C. 1992(a)(2). The verb "to place" is defined in the Oxford American Dictionary as "to put into a particular place or rank or position or order," in Webster's Ninth New Collegiate Dictionary as "to put in or as if in a particular place." It means something different from "to carry" or "to transport." See <u>Muscarello  v. United States</u>, 524 U.S. 125, 128 (1998)("carries" means to convey on one's person or in a vehicle and "transport" includes carrying but is broad enough to include shipping). Both of these terms are used in the United States Criminal Code. See. e.g. 18 U.S.C. 924(c)(1) (whoever uses or carries a firearm….); 18 U.S.C. 926A(prohibits "transporting" a firearm).

If Congress intended this statute to punish one who merely carried or transported, rather than placed, a destructive device on a mass transportation vehicle, it would have done so. This statute is entitled "Terrorist attacks and other violence against railroad carriers and against mass transportation system on land, on water, or through the air" and that is what Congress intended to capture: conduct that constitutes an attack, e.g. the placement of a destructive device in, upon, or near such a vehicle. The acts prohibited in this section are affirmative acts of violence:

(1)     Wrecks, derails, sets fire to, or disables…
(2)     Places any biological agent or toxin, destructive substance, or destructive device on in or near…
(3)     Places or releases a hazardous material or a biological agent or toxin near…
(4)     Sets fire to, undermines, makes unworkable or hazardous to work on or use…
(5)     Removes an appurtenance from, damages, or otherwise impairs the operation of a …signal system
(6)     Disables or incapacitates a dispatcher, driver, or captain
(7)     Commits an act …with intent to cause or serious bodily injury

**A000140**

Judge Richard Sullivan                                                Page **7** of **7**
November 3, 2018

     In re:  *United States v. Ullah*, 18 CR 16 (RJS)

Section 1992 does not prohibit the transporting or carrying of such devices or substances.

     Finally, the evidence is legally insufficient to establish that when Mr. Ullah boarded the subway in Brooklyn carrying the unconnected device under his clothing, that there was in that act a substantial and unjustifiable risk of harm to human life, and that Mr. Ullah knew of that risk and deliberately disregarded it. These are all necessary, at a minimum, to prove that when Mr. Ullah boarded the subway while wearing the unconnected device, he placed the device in the subway with the intent to endanger the safety of any person or with reckless disregard for the safety of human life. §1992(a)(2).

     In sum, the only theory that should be submitted to the jury under Count Five is that alleged under §1992(a)(7). For the reasons stated in our letter dated November 2, 2018, and on the record at the charge conference that day, the aggravating element of subsection (b)(1) does not apply to that section and should not be submitted to the jury.


Respectfully submitted,
/s/ AMY GALLICHIO
Amy Gallichio
Julia Gatto
Colleen Cassidy
Assistant Federal Defenders

cc:    AUSAs Shawn Crowley/George Turner/Rebekah Donaleski

**A000141**



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 3, 2018

By ECF
The Honorable Richard J. Sullivan
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

> Re:     *United States* **v.** *Akayed Ullah*, **18 Cr. 16 (RJS)**

Dear Judge Sullivan:

The Government respectfully submits this letter in response to the defendant's letter motion for a directed verdict with respect to Count Five, dated November 3, 2018 (Dkt. 52). The defendant contends that the Government's theory with respect to 18 U.S.C. § 1992(a)(2) ("Section (a)(2)")—that the defendant is guilty of that offense because he "placed" a destructive device on the subway with reckless disregard for human life—constructively amends the Indictment. The defendant's argument misunderstands the relevant law and ignores the fact that the defendant was explicitly charged with that conduct in the Indictment. The defendant's remaining argument with respect to the meaning of the word "place" is similarly misguided. The Court should deny the defendant's motion for a directed verdict with respect to Section (a)(2) of Count Five.

Additionally, and for the reasons set forth below, the Court should reject the defendant's argument that the statute's aggravating provision, 18 U.S.C. § 1992(b)(1), does not apply to subsection (a)(7).

## I.     The Indictment Has Not Been Constructively Amended

### A.     Applicable Law

"A constructive amendment occurs when the charge upon which the defendant is tried differs significantly from the charge upon which the grand jury voted." *United States v. Dove,* 884 F.3d 138, 146 (2d Cir. 2018). "To prevail on a constructive amendment claim" under the Fifth Amendment's Grand Jury Clause, "a defendant must demonstrate that the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which so modify *essential elements* of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment." *United States v. D'Amelio*, 683 F.3d 412, 416 (2d Cir. 2012) (emphasis in original and quotation marks omitted); *see also Dove*, 884 F.3d.at 146.

**A000142**

As long as "the defendant was given notice of the core of criminality to be proven at trial," this Court "has consistently permitted significant flexibility in proof." *D'Amelio*, 683 F.3d at 417. As "proof at trial need not, indeed cannot, be a precise replica of the charges contained in an indictment," *United States v. Heimann*, 705 F.2d 662, 666 (2d Cir. 1983), it is well established that "not all modifications constitute constructive amendments." *United States v. Salmonese*, 352 F.3d 608, 621 (2d Cir. 2003). The "core of criminality" of which a defendant must have notice is defined as "the essence of a crime, in general terms," and not "the particulars of how a defendant effected the crime." *D'Amelio*, 683 F.3d at 417-18. Thus, "there is no constructive amendment when the proof at trial does no more than supply the particulars" of the crime. *United States v. Daugerdas*, 837 F.3d 212, 225 (2d Cir. 2016).

An indictment has not been constructively amended where the allegations in the indictment and the proof at trial both relate to a "single set of discrete facts," or form "part of a single course of conduct" with the same "ultimate purpose." *D'Amelio*, 683 F.3d at 419-21. By contrast, an indictment may be found to have been constructively amended when there is a "substantial likelihood" that "the jury convicted based on a complex of facts distinctly different from that which the grand jury set forth in the indictment." *Id.* at 416, 419.

## B. Discussion

The defendant argues that the "hallmarks of constructive amendment are present" because the Government's theory with respect to Section (a)(2) was not "the subject of the indictment." (Dkt. 52 at 5). He is wrong. The defendant was explicitly charged in Count Five with "plac[ing] a destructive device in, upon, and near a mass transportation vehicle" which was "carrying passengers and employees at the time of the offense" with the "intent to endanger the safety of persons, and with a reckless disregard for the safety of human life" in connection with the December 11 attack, which is precisely what the trial evidence has shown. (Dkt. 6). His motion for a directed verdict with respect to Section (a)(2) fails as a matter of law.

Nonetheless, the defense argues that because Count Five's "to wit" clause describes the defendant's December 11 attack in general terms, that the Government is somehow foreclosed from proving the defendant's guilt with respect to Section(a)(2). But it is of no moment that Count Five's "to wit" clause does not explicitly detail every contour of the defendant's attack: the Second Circuit has "never suggested that a 'to wit' clause binds the government to prove the exact facts specified in a criminal indictment." *United States v. Bastian*, 770 F.3d 212, 221 (2d Cir. 2014). The Indictment specifically charged the defendant in Count Five with "plac[ing] a destructive device in, upon, and near a mass transportation vehicle" in connection with the December 11 attack, which was "part of a single course of conduct" with the same "ultimate purpose." *D'Amelio*, 683 F.3d at 419-21. The defense was surely on notice, then, that the core of criminality with respect to Count Five included his travel on the subway while carrying a bomb. *See id.* at 417-18 (The "core of criminality" of which a defendant must have notice is defined as "the essence of a crime, in general terms," and not "the particulars of how a defendant effected the crime."); *see also United States v. Skelly*, 442 F.3d 94, 99 (2d Cir. 2006) (no constructive amendment where the indictment generally alleged that the defendant employed a variety of fraudulent sales practices but did not specify the particular sales practice proved at trial). Therefore, even if the Government's theory with respect to Section (a)(2) were "new"—

and it is not—the defendant's conduct with respect to the December 11 attack was the "subject of the grand jury's indictment" and he has failed to show any constructive amendment. *United States v. Banki*, 685 F.3d 99, 119 (2d Cir. 2012), *as amended* (Feb. 22, 2012) (finding no constructive amendment "even assuming there was a change in theory at trial to the extent the government suggested an additional motive for the false statements" where the proof at trial related to the same false statements in the indictment and there was no "uncertainty" that the defendant was convicted of "conduct that was the subject of the grand jury's indictment." (internal citations omitted)).

The defendant's claims of prejudice as a result of his "surprise" over a claimed "new theory" are simply not credible. The defendant was on notice of the core of criminality with respect to Section (a)(2) through the explicit charges in the Indictment, the discovery produced over the pendency of this action, the Government's opening statement and the testimony elicited at trial. Discovery produced to the defendant prior to trial included (i) surveillance footage documenting the defendant's travel from his home in Brooklyn, on the subway, to the Port Authority Bus terminal on December 11, 2017; (ii) data from the Metropolitan Transit Authority ("MTA") showing that the defendant traveled by subway from Brooklyn to Manhattan on the morning of his attack; and (iii) MTA records showing that there were passengers and employees present on the A train the defendant took from Brooklyn to the Port Authority Bus Terminal. The Government also opened on the fact that the defendant carried the bomb on the subway with a reckless disregard for human life, which is directly relevant to the defendant's guilt on Section (a)(2). *See* Tr. 25-26 ("The defendant left his apartment in Brooklyn and rode the subway into Manhattan. His ride lasted just about an hour. And to everyone else on the subway that morning, the defendant looked like a normal commuter. But the defendant wasn't a normal commuter. He was a terrorist with a bomb strapped to his chest -- a bomb filled with shrapnel. A bomb that could have exploded at any moment.").

The defendant claims that he has been prejudiced because he could have cross-examined Agent Rigopoulos, the Government's explosives expert, regarding the "actual danger" posed by the defendant's bomb, but his argument misses the mark. The Government elicited testimony from Agent Rigopoulos regarding the unstable nature of the defendant's device, which goes to prove his reckless disregard for human life in carrying the bomb on the subway. *See* Tr. 558 (testimony that low explosives like the defendant used were "sensitive to heat, shock, friction, impact, and electrostatic damage"), 585 (testimony that the defendant's device could have exploded if it was "dropped or propelled" or subject to "friction"). Such testimony is directly relevant to Section (a)(2), yet the defense sat through Agent Rigopoulos' testimony on this topic and made the tactical decision not to cross-examine him regarding this aspect—or any aspect— of his testimony. This decision provides no basis now for the defendant's claim of prejudice, because he has suffered none.

The defendant has failed to demonstrate that Count Five has been constructively amended, and his motion should be denied in this respect.

## II.    The Evidence Demonstrates that the Defendant "Placed" the Device in the Subway Car

The defense contends that the defendant can only be found guilty of Section (a)(2) if he detonated the bomb while riding the subway, or if he removed the bomb from his body and physically "placed" it on the train.   This argument misconstrues the evidence and the Government's theory with respect to this Section (a)(2).

As an initial matter, the Government is not arguing that the defendant merely "carried" the device on a subway.  (Dkt. 52 at 6.)  The evidence at trial established that the defendant made himself part of the bomb.  He acted as the "switch," —when he touched the wire to the battery, the bomb detonated. Tr. 573-74.  Thus, when the defendant stepped onto the subway with the bomb strapped to his chest, he "placed" a destructive device—of which he was a part—in and upon a mass transportation vehicle.  He certainly was not required, as the defense suggests, to remove the bomb from his body and put it on the floor of the train to be guilty of Section (a)(2).  As the Court noted yesterday, this makes little sense, as removing the bomb from his body would have rendered it *less* likely to detonate. Tr. 735.

Nor is it necessary under Section (a)(2) for the defendant to have detonated the bomb in or upon a subway car.  The statute requires only that the bomb be "placed," not that it be detonated, discharged, or used.   Indeed, the defense concedes that "to place" means "to put into a particular place."  (Dkt. 52 at 6; citing Oxford American Dictionary).  The jury clearly can conclude from the evidence presented that the defendant "put" his suicide bomb on a mass transportation vehicle when he boarded the subway.

Finally, the evidence plainly established facts from which the jury can conclude that the defendant acted with reckless disregard for human life.  The defendant carried a live, unstable bomb on a subway car.  The evidence established that the bomb could have exploded in any number of ways, including if it had been dropped or subjected to force. Tr. 585-86.  The jury can also infer from the evidence presented—including the defendant's placement of the fuzing system in his pocket—that the bomb could have exploded if the defendant were jostled and the wires touched the battery.  This evidence is more than sufficient for a jury to conclude that the defendant acted with reckless disregard for the safety of everyone around him.

## III.    The Aggravating Element Applies to Subsection (a)(7)

Finally, and for the reasons articulated by the Government at yesterday's charge conference, § 1992(b)(1) —the aggravating provision—applies to § 1992(a)(7) and the jury should be charged accordingly.   Subsection (b)(1) provides enhanced penalties when a person commits a terrorist attack or other violence against mass transportation systems, and, at the time of the offense, there is a mass transportation vehicle carrying at least one person or employee.  As the Court noted yesterday, subsection (b) applies to any "offense under section (a)," including § 1992(a)(7). It does not, as the defense argues, apply only to those subsections that proscribe attacks on a near a mass transportation vehicle.  The defense's interpretation of the subsection (b)(1) would mean the aggravated penalty *never* applies to subsections (a)(3), (a)(8), and (a)(9).  (*See* Dkt. 50 at 5-6).  But this narrow reading of subsection (b)(1) is directly contradicted by the

plain language of the statute.  Put simply, had Congress intended for the aggravator to apply only to some of the offenses listed in section (a), they would have drafted the statute that way.

The aggravating provision plainly applies to subsection (a)(7), including in the circumstances present here.  Subsection (a)(7) prescribes the "use of a dangerous weapon, with the intent to cause death or serious bodily injury to any person who is on property described in subparagraphs (A) or (B) of paragraph (4)," which includes, as relevant here, a "terminal . . . or facility used in the operation of, or in support of, a mass transportation vehicle."  18 U.S.C. § 1992(a)(7), (a)(4)(B).  The Government intends to argue that the defendant detonated his bomb —*i.e.*, used a dangerous weapon with intent to cause death or serious bodily injury to everyone in the subway tunnel—*i.e.*, a terminal or facility used in the operation of a mass transportation vehicle.  With respect to the aggravating element, at the time the defendant detonated the bomb, the mass transportation vehicle that the terminal was being used to operate was carrying at least one passenger or employee.  Specifically, testimony at trial established that, at 7:18 a.m. —the precise moment the defendant set off the bomb—there were two A trains in the Port Authority terminal, both of which carried at least one employee and thousands of passengers.  Tr. 623; GX 1105.  Indeed, the defendant had just exited an A train and entered the tunnel from the A/C/E/ subway platform when his bomb exploded.  Tr. 59-62; GX 140.  Thus, the aggravating provision properly applies to subsection (a)(7) on the evidence presented here, and the jury should be so charged.

<div style="margin-left: 40%;">

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney
Southern District of New York

By: _____/s/_____
Shawn Crowley / Rebekah Donaleski / George Turner
    Assistant United States Attorneys
    (212) 637-1034 / 2423 / 2562

</div>

Cc:  Defense Counsel (by ECF)

**A000146**

**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

November 4, 2018

*VIA ECF AND EMAIL*
Honorable Richard J. Sullivan
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

Re:  *United States v. Akayed Ullah*, 18 CR 16 (RJS)

Dear Judge Sullivan:

We write to note our objections to the Court's proposed jury instruction, circulated to the parties this afternoon.

## I.  Count One

The Court's instruction on Count One (Material Support to a Foreign Terrorist Organization) includes a definition of the term "services." The first two sentences are drawn from the Supreme Court's decision in *Holder v. Humanitarian Law Project,* 561 U.S. 1, 24 (2010). We have no objection to that language. The defendant, however, strongly objects to the following two sentences currently included in the jury charge:

> A person provides or attempts to provide "services," as that term is defined in the statute, when a person performs work commanded or paid for by another or done for the benefit of another – here, ISIS. Only work performed in coordination with, at the direction of, or for the benefit of ISIS meets the definition of service.  In this case, there has been much discussion by the lawyers about whether ISIS invited attacks such as the one alleged here and whether the Defendant was motivated by such an invitation.  If you find that ISIS did, in fact, invite its followers and sympathizers to engage in such attacks, and if you find that the Defendant engaged in conduct that was

**A000147**

Judge Richard Sullivan                                        Page **2** of **4**
November 4, 2018

     In re:  *United States v. Ullah*, 18 CR 16 (RJS)

motivated, in whole or in part, by such an invitation, that would be sufficient to meet the definition of "services" in the statute.

By instructing the jury in this manner, the Court is making the jury's factual determination for it. It is up to the jury, and the jury alone, whether the ISIS' propaganda videos are evidence of "direction, control, or coordination." It is not a legal question. Nor is there is any legal authority establishing that "an invitation" is *per se* proof of "direction, control, or coordination." While the prosecution is free to argue that it is, the Court is not free to direct the jury that it is.

Furthermore, we object to the inclusion of the language "there has been much discussion by the lawyers…." The "discussion" on the matter was limited to one witness, Dr. Aaron Zelin. It is improper to suggest to the jury that this one witness' testimony was more significant than any other witness' testimony. And, reference to what the lawyers "discussed" will be confusing to the jury. It appears to allude to discussions that took place off the record and may result in the jury speculating as to out of court statements. At best, the jury will think the Court is referring to the lawyers' *questioning* (although the jury is being instructed on the lawyers' *discussions*), but even that interpretation is problematic and will result in confusion. The jury has been properly instructed that the lawyers' questioning is not evidence for them to consider during their deliberations. But, by referencing the lawyers' conduct as to one witness, the Court appears to suggest that here, and here alone, the lawyers' questioning bears weight.

We also object to the use of the word "attack" in the two sentences. The use of the word, again, endorses the government's version of events. The defense contends it was not an "attack." Also, in light of the evidence admitted, the word will confuse deliberations and could result in a verdict unsupported by the evidence. For example, there was evidence that the ISIS propaganda videos referenced "attacks" to be conducted on the "front lines" in Syria and Iraq. A jury could interpret the charge to instruct a guilty verdict where: (1) ISIS "invited" foreign fighters to "attack"; (2) Mr. Ullah did not follow this "invitation" to "attack"; and (3) Mr. Ullah engaged in a domestic act entirely

**A000148**

Judge Richard Sullivan                                          Page **3** of **4**
November 4, 2018

In re:  *United States v. Ullah*, 18 CR 16 (RJS)

independent of ISIS. Such conduct is not a violation of the material support statute, but the jury instruction incorrectly directs the jury that it is.

## II.     Count Five

Count Five, Theory One requires the jury, *inter alia,* to determine whether the government has established beyond a reasonable doubt that the Defendant "placed a destructive substance or destructive device in, upon, or near a mass transportation vehicle…." Over our objection, the government will be permitted to argue to the jury that evidence showing that Mr. Ullah traveled with an unconnected device on a train car satisfies its burden as to this element. The Court has included in its instruction the government's theory at page 28 of the charge: "Under this theory, the government contends that the Defendant violated the statute when he boarded and rode the subway with a destructive device." We object to the inclusion of this sentence. Again, the government is free to argue its novel theory in its summation, but the Court should not marshal the evidence for the government's argument. Each side has a theory as to guilt or non-guilt as to each Count, but nowhere in the instruction are those theories spelled out for the jury, other than here. And here, the jury will be instructed *only* on the government's theory. The jury will likely interpret it as an endorsement by the Court of the government's argument. The sentence should be deleted from the final charge or, at a minimum, it must be balanced with the following language: "The defense contends that the government has failed to meets its burden of proof on this element because *carrying* a disconnected device under one's clothes on a mass transportation vehicle is not *placing* a device in, upon, or near a mass transportation vehicle."

## III.    Count Six

For the reasons stated on the record at the charge conference, we object to the following language in Count Six's instruction: "I instruct you that, as a matter of law, Counts Three and Five qualify as crimes of violence within the meaning of this Count.  So, if you find the Defendant guilty of either or both of Counts Three and Five, then the government has satisfied the first element of Count Six."

**A000149**

Judge Richard Sullivan                                    Page **4** of **4**
November 4, 2018

   In re: *United States v. Ullah*, 18 CR 16 (RJS)

   We ask that it be deleted and, the following paragraph be inserted before the jury is instructed on Count Six's second element:

> If you find that Element One of Count Six is satisfied as to a particular count—that is, whether the offense, as committed, involved a substantial risk that physical force might be used against the person or property of another, only then must you determine whether the second element—that I am about to explain to you—has been proven beyond a reasonable doubt as to that particular count. But for Counts Three and Five and only Counts Three and Five you should move on to the second element regardless of your determination as to the first element. For all other Counts – Counts One, Two and Four – you need only reach the second element if you have determined the first element has been satisfied.

Respectfully submitted,
/s/ AMY GALLICHIO
Amy Gallicchio
Julia Gatto
Colleen Cassidy
Assistant Federal Defenders

cc:  AUSAs Shawn Crowley/George Turner/Rebekah Donaleski

**A000150**

iat1ull1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA

      v.                          18 CR 16 (RJS)

AKAYED ULLAH,

                              Trial

          Defendant.

------------------------------x

                          New York, N.Y.
                          October 29, 2018
                          9:41 a.m.

Before:

       HON. RICHARD J. SULLIVAN

                         District Judge,
                           and a Jury

       APPEARANCES

GEOFFREY S. BERMAN
United States Attorney for the
     Southern District of New York
SHAWN G. CROWLEY
REBEKAH A. DONALESKI
GEORGE D. TURNER
     Assistant United States Attorneys

FEDERAL DEFENDERS OF NEW YORK, INC.
     Attorneys for Defendant
BY:  AMY GALLICCHIO
     JULIA GATTO
     COLLEEN P. CASSIDY

Also Present:

     JOHN MAURER – Special Agent, FBI
     MICHAEL DELUCA – Paralegal, U.S. Attorney
     JASON T. FISCHER – Paralegal, Federal Defenders
     CHIRAAYHU GOSRANI – Paralegal, Federal Defenders

**A000151**

iat1ull1

(Case called)

THE COURT: All right. Good morning. Let me take appearances. For the government?

MS. CROWLEY: Good morning, your Honor. Shawn Crowley, Rebekah Donaleski, and George Turner for the government. Joining us at counsel table is paralegal Michael DeLuca, and right behind him is Special Agent John Maurer from the FBI.

THE COURT: Okay. Good morning to each of you. Thank you.

And for the defendants?

MS. GALLICCHIO: Yes. Good morning, your Honor. For Mr. Ullah, Federal Defenders by Amy Gallicchio, Julia Gatto and Colleen Cassidy. Also joining us at counsel table is paralegal --

THE COURT: Maybe you can pull that mic up a little bit.

MS. GALLICCHIO: For Mr. Ullah, Federal Defenders by Amy Gallicchio, Julia Gatto, and Colleen Cassidy. Also joining us at counsel table is Chiraayhu Gosrani, a paralegal at our office; and our technical assistant, Jason Fischer.

THE COURT: Okay. All right. Good morning to all of you.

Have a seat. Thanks.

And Mr. Ullah, good morning to you.

iat1ull1

THE DEFENDANT:  Good morning.

THE COURT:  Okay.  So we probably won't have a jury for another at least 45 minutes to an hour.  But nonetheless, I think it's good for us to make sure we've cleared up any lingering issues.

So I guess it was Friday I got a letter from the parties indicating their desire that I ask a couple of questions related to last week's mail bomb, attempted mail bombs, so I'm fine with that.  I don't think it would be a problem.  So I've inserted those into the voir dire.

And then I guess over the weekend we had the incident in Pittsburgh at a synagogue.  I don't know that that requires any special questions, but I'm sure it's on people's minds a bit.  I just think, look, I had an organized crime case last year.  Not a major case, candidly, but I had jurors who just wondered, not sure I'm comfortable having my name spoken about publicly in a courtroom.  So I think it's just human nature. So I wanted to run by you folks, if somebody raises a concern about that, I'm inclined to say what I said to the juror in that organized crime case, which is just, look, in this courthouse we've been handling big cases for a long time.  We take security very, very seriously.  You needn't worry about that.  This is a safe place.  And I want you to just focus on whether you can be fair and impartial.  That's really the bottom line.  I think that's probably appropriate to any

**A000153**

iat1ull1

concern, whether it's born from mail bombs or Pittsburgh or the nature of this attack, or alleged attack, or anything else. So --

MS. GALLICCHIO: Yes, I would agree, your Honor, but I think I would ask the Court just that only if a juror raises the question of security should the Court bring it up.

THE COURT: Yes, okay. I was otherwise going to stick close to the script. And I'm not going to read the script, but I'll go through it, and the nature of those topics. There won't be a major discussion, but if somebody raises a question, then I'll probably make that point to the assembled group.

Okay. Anything else we should be chatting about? Any other issues that have come up since last week?

MS. CROWLEY: Just one point of clarification, your Honor. I believe it was mentioned at the end of the final pretrial conference that a member of the press or members of the press may want to participate, or at least observe sidebars during jury selection. Your Honor said that it's the Court's practice to allow that to happen. We just wanted to clarify -- I think the defense is in agreement with us here -- that it would just be one reporter who would be participating, or observing the sidebars.

THE COURT: Well, it depends how many reporters there are and how many want to. I mean, generally, I'm not going to allow 30 people back there. So in the past, I know judges in

**A000154**

iat1ull1

this courthouse, myself included, have, when there's more than a critical mass of reporters, asked them to basically figure out who their representatives should be, and they typically manage to figure out two or three. I think two or three would probably be fine. I don't think more than that. We're not going to have room.

MS. CROWLEY: Your Honor, that's our experience as well, that the press pool works together and that they can pick usually one person to go back and observe, and that would be our preference and I think the defense's preference as well.

MS. GALLICCHIO: So we agree with the government with respect to that, but also, I'm just concerned about the optics as well, in terms of like, when we do get up to walk to the back, that someone from the audience, clearly from the press, comes with us.

THE COURT: No, they won't come with you. They'll come through the back side over there. There's another door that takes them through a hallway that runs parallel to the courtroom.

MS. GALLICCHIO: Oh, okay.

THE COURT: My law clerk will escort the press representative, or representatives, to the jury room that way. Everybody will be assembled before we bring any prospective juror.

MS. GALLICCHIO: Great. Okay. Thank you.

**A000155**

iat1ull1

THE COURT:  Okay.  All right.  So that was a good question, and we had an answer.

Anything else?  Any issues with respect to the witnesses that are expected?  The order hasn't changed since we were last together?

MS. CROWLEY:  No, your Honor.  We provided the defense with the order for the first eight witnesses that we intend to call and the exhibits for the first three witnesses.  I understand that the defense has no objection to any of the exhibits we intend to introduce through the first three witnesses.

THE COURT:  Okay.  All right.  So that's it.

Okay.  Well, I shouldn't be surprised, because we've got pros on all sides and we've been thinking about this for a while.  But you have water?  I'd say the first thing I should tell you is, these are treacherous.  I don't know that there's any particularly good way to do it, but I think you have to lift it to pour.  Otherwise the ice comes charging out, pressure builds up, and then everybody in the courtroom goes to see who has spilled it all, and nobody listens to a witness at that point and nobody's paying attention to anything in the courtroom except seeing if there were paper towels.  I did it at our last trial, and I did it right.  It's just that there was too much ice.  So it was the law clerk's fault.

Anyway, so just be careful with that.  If you need

**A000156**

iat1ull1

more, we'll get more at the break.  Important to stay hydrated during a trial.  Also, it's flu season, I learned this weekend, so stay hydrated.

Okay.  So I think then we've got some time.  Nobody's using technology in the opening, right?

MS. CROWLEY:  Right.

THE COURT:  Okay.  So I don't know how far we'll get today.  I have 75 jurors.  The plan when they get here is to put them on this side of the courtroom.  I'll ask everybody else to move to this side.  If we can't fit even in that space, then we'll take probably two or so rows from what's my right side as well.  Okay?  Once we start pulling names out of the wheel, then we've got the entire jury box and that will open up some space.

How many do we have in the box?  Twenty-one?  Okay. So that will give us 21 extra seats.  For the first preliminary questions it may be tight.  Okay?

Great.  So I'll see you in a bit.  As soon as we get word that the jury's coming, we'll let you know.

Once they're all here, they'll be assembled in the hallway and then I'll give you a heads up to get ready, and then once they're in the room, I will then come in.  I think that's a better way to introduce myself to the jury.  Not to be waiting here as they come in and sort of mumble and have low conversations.  It's better to come in grandly.  So that's what

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

**A000157**

iat1ull1

I'll do.

          Okay.  Thanks.

          (Recess)

          (Jury selection ensued)

**A000158**

**CERTIFICATE OF SERVICE**

I certify that a copy of this six volume appendix has been served by CM/ECF on the United States Attorney/S.D.N.Y.; Attention: **REBEKAH DONALESKI, ESQ.**, Assistant United States Attorneys, One St. Andrew's Plaza, New York, NY 10007.

Dated:  New York, New York
          October 4, 2021

　　　　　　　　　　　　　　　　　　　　　　/s/　　　　　　　　　　　
**COLLEEN P. CASSIDY**